UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANE AYERDI, individually and on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ZETA GLOBAL HOLDINGS CORP. and DOTDASH MEREDITH, INC.,<br><br>*Defendants*. | Case No. 1:25-cv-05780-PAE |
| A.P., R.E.A. and K.G., on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ZETA GLOBAL CORPORATION and ZETA GLOBAL HOLDINGS, CORPORATION,<br><br>*Defendants*. | Case No. 1:25-cv-05823-PAE |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' JOINT MOTION
TO CONSOLIDATE RELATED ACTIONS AND
<u>APPOINT INTERIM CO-LEAD CLASS COUNSEL</u>

## INTRODUCTION

There are currently two data privacy class action lawsuits against Zeta Global Holdings Corporation ("Zeta Global") pending in this District before this Court.[1]

The first action, *Ayerdi v. Zeta Global Holdings Corp.*, No. 1:25-cv-05780-PAE (the "*Ayerdi* Action"), was filed on July 14, 2025, and the second action, *A.P., et al. v. Zeta Global Corporation*, No. 1:25-cv-05823-PAE (the "*A.P.* Action"), was filed on July 15, 2025 (collectively, the "Actions"). The complaints in the Actions contain substantially similar factual allegations against Defendants regarding the alleged unlawful collection, retention, and use of private data (personally identifiable information combined with highly sensitive data) for advertising purposes. Both Actions bring overlapping claims, are predicated on substantially similar legal theories, name the same core Defendant ("Zeta Global" as referenced here includes the holding company and the operating company collectively), and assert claims on behalf of overlapping classes.[2]

Because the disposition of each Action will turn on the adjudication of many of the same issues and the same conduct, these Actions are related and should be consolidated under Rule 42 of the Federal Rules of Civil Procedure.[3] The Actions easily satisfy the prerequisites for consolidation as: (1) they involve common issues of fact or law; (2) consolidation will result in a

---

[1] These two actions each have an additional defendant not named in the other action; Dotdash Meredith, Inc. ("Dotdash") is named as a defendant in the *Ayerdi* Action and Zeta Global Corp., Zeta Global Holding Corp.'s operating company, is named a defendant in the *A.P.* Action.

For the avoidance of doubt, the "Zeta Global Holdings, Corporation" entity named in the *A.P.* Action is intended to refer to, and is, the same entity as "Zeta Global Holdings Corp."

[2] Counsel in the Actions did not coordinate their respective filings and prepared their respective complaints wholly unaware that counsel in the other action was preparing a similar complaint.

[3] In the *A.P.* Action, Plaintiffs filed a Statement of Relatedness on July 15, 2025 (ECF No. 3) and the *A.P.* Action was referred to this Court as possibly related on July 16, 2026.

more efficient process for this Court, counsel, the parties, and the witnesses who will be called upon to testify at deposition and at trial; and (3) no prejudice will result to the parties. The consolidated action will proceed against Zeta Global Holdings Corp., Zeta Global Corp., and Dotdash ("Defendants").[4]

To further promote economy and efficiency, plaintiffs Diane Ayerdi, A.P., R.E.A. and K.G. (collectively, the "Plaintiffs") move for the appointment of Gary E. Mason of Mason LLP and Amanda Fiorilla of Lowey Dannenberg, P.C. as Interim Co-Lead Counsel under Rule 23(g) of the Federal Rules of Civil Procedure, as well as for the appointment of an Executive Committee consisting of Blake Hunter Yagman of Spiro Harrison & Nelson LLC, Danielle L. Perry of Mason LLP, and Israel David of Israel David LLC to effectively prosecute the proposed consolidated action.

## I.     BACKGROUND

The Actions allege privacy violations stemming from Defendants' unlawful collection, retention, and use of personal data to create behavioral profiles of consumers through numerous types of online tracking systems. *See Ayerdi* Action, ECF No. 1 ¶¶ 1–7; *A.P.* Action, ECF No. 1 ¶¶ 4–8. Plaintiffs allege that Defendants collect this personal data and organize it into highly sensitive dossiers on over 235 million putative class members without consent.[5] *See Ayerdi* Action,

---

[4] Plaintiffs' counsel has conferred with counsel for Zeta Global, who stated that Zeta does not oppose this motion but "disagrees with the allegations" and "reserves all rights to oppose Plaintiffs' ability to certify a class or otherwise meet the requirements of Rule 23."

[5] These dossiers contain, on average, between 1,700 to 2,500 different data points on each putative class member, including information regarding online content consumption, real-world movement (through mobile applications and GPS-like navigation systems), purchase and transaction history, financial health and household data, demographics (such as age, gender, ethnicity, and income), culture-specific data, propensities to buy certain brands or products, psychographic information (such as behavioral alignment with particular ideologies, personalities, values and attitudes), TV engagement and viewership, and firmographic/professional information. *See Ayerdi* Action, ECF No. 1 ¶¶ 19, 38; *A.P.* Action, ECF No. 1 ¶ 71. Defendants also collect highly sensitive attributes, including political preferences, religious identities, LGBTQ+ status, and specific health condition information. *See A.P.* Action, ECF No. 1 ¶ 72.

ECF No. 1 ¶¶ 25–26. Unbeknownst to Plaintiffs and putative class members, Defendants profit from the disclosure, sharing, and sale of these consumer profiles to digital storefronts who are seeking to use these profiles to target advertisements on internet users across the United States. *See Ayerdi* Action, ECF No. 1 ¶¶ 32–44, 71; *A.P.* Action, ECF No. 1 ¶¶ 71–75.

The complaints in the Actions assert similar claims to redress privacy injuries to putative class members related to the collection and disclosure of this quantifiably profitable personal data. Collectively, the Actions assert federal and state law claims on behalf of three classes (a nationwide class, a California state sub-class and a New York state sub-class) for damages, declaratory judgment, and injunctive relief pursuant to: the Electronic Communications Privacy Act (18 U.S.C. § 2511); the California Invasion of Privacy Act (CIPA §§ 631, 632, 638.51); the California Consumer Privacy Act (Cal. Civ. Code § 1798.150(a)(1)); the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et. seq*.); Article 1 (§ 1) of California's Constitution under California's Right to Privacy; California's common law doctrines of Intrusion Upon Seclusion and Public Disclosure of Private Facts; New York's General Business Law §§ 349 and 350; and California and New York's common law doctrine of Unjust Enrichment. *See, Ayerdi* Action, ECF No. 1 ¶¶ 91–92, 100–183; *A.P.* Action, ECF No. 1 ¶¶ 111–112, 124–163.

## II.     ARGUMENT

### A.     The Court Should Consolidate the Actions

Rule 42(a) of the Federal Rules of Civil Procedure authorizes a court to consolidate separate actions if the actions involve common questions of fact or law. *See* Fed. R. Civ. P. 42(a). The Court "has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (the power to consolidate related actions falls within the inherent authority of every court "to

3

control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for the litigants"). Specifically, courts are to consider:

> Whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives.

*Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 25 (2d Cir. 2014) (quoting *Celotex Corp.*, 899 F.2d at 1285). Federal Rule of Civil Procedure 42(a) does not require that class action complaints be identical before they can be consolidated. *See*, *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 464 (S.D.N.Y. Nov. 30, 2023) (Engelmeyer, J.) (consolidation was warranted under Rule 42(a) where three class action complaints shared the same core basis for claims, overlapping defendants with similar alleged conduct and essentially the same theory of economic harm, despite minor differences in factual allegations and class periods); *Pinkowitz v. Elan Corp., PLC*, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002). As long as any confusion or prejudice does not outweigh efficiency concerns, consolidation is appropriate. *See*, *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

As such, the plaintiffs in the *Ayerdi* Action and *A.P.* Action seek to consolidate their cases into the lowest filed docket number, 1:25-cv-05780-PAE, and to have the consolidated action renamed as "*In re Zeta Global Data Privacy Litigation*."

### a. The Actions Share Numerous Common Factual and Legal Issues

The only requirement set out in Rule 42(a) for consolidation is that the cases involve "common question[s] of law or fact." Fed. R. Civ. P. 42(a).

Here, the Actions arise out of the same factual predicate: that Defendants surreptitiously and without the class members' consent collect personal data through various tracking

4

technologies and create more invasive inferences based on such data, then package that data to create profiles of individuals that advertisers across the internet can access and use for targeted advertising utilizing machine learning algorithms and artificial intelligence to predict purchasing behavior with eerie precision. Both Actions name the same core Defendant (Zeta Global), assert some overlapping causes of action (including violations of CIPA, New York's General Business Law § 349, and unjust enrichment), have overlapping classes (both Actions contain a California state class or sub-class), and seek similar relief. *See* Section II. In sum, the cases involve "common question[s] of law or fact." Fed. R. Civ. P. 42(a).

Courts around the country routinely consolidate data privacy cases when this occurs. *See*, *Boelter v. Hearst Commc'ns, Inc.*, No. 1:15-cv-03934 (S.D.N.Y.), ECF No. 66 (consolidating data privacy class actions involving unlawful disclosure of subscription information); *In re Warner Music Grp. Data Breach*, No. 1:20-cv-07473 (S.D.N.Y.), ECF No. 34 (consolidating data breach cases involving invasion of privacy, unjust enrichment, GBL claims); *In re CityMD Data Priv. Litig.*, No. 2:24-cv-06972 (D.N.J.), ECF No. 63 (consolidating data privacy cases involving surreptitious collection of protected health information through online tracking); *Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501 (N.D. Cal.), ECF No. 85 (same); *Stewart v. Prac. Res. LLC*, 2022 WL 17155996 (N.D.N.Y. Nov. 22, 2022) ("Crucial factual and legal questions regarding the [d]ata [b]reach and its causes and consequences are common to both actions. . . [a]ccordingly the Court consolidates the . . . actions[.]"). The Court should do the same here given the Actions challenge the same conduct by the same core Defendant and allege substantially similar causes of action.

      **b.**    **Consolidation Will Further the Convenience of the Parties and Witnesses**

In this case, consolidation is highly appropriate as there are virtually no costs in consolidation, only substantial benefits. For example, Plaintiffs anticipate that they will seek to depose the same individuals and will seek the production of substantially the same documents. Without consolidation, there will be duplicative discovery demands and overlapping, competing and (perhaps) inconsistent motion practice. Consolidation will solve this problem by enabling a single judge with all the parties present to formulate a pretrial plan that will minimize witness inconvenience and overall expense for all parties. *See*, *Stevens v. Hanke*, No. 20 CIV. 4765 (JPC), 2022 WL 489054, at *3 (S.D.N.Y. Feb. 17, 2022) (granting consolidation to avoid "duplicative discovery").

In this instance, the savings in time and expense that will result from consolidation will benefit Plaintiffs, Defendants, and this Court.

      **c.**    **Consolidation Will Not Prejudice Any Party**

None of the parties in the actions will be prejudiced by consolidation. The two complaints have both been recently filed and none of the cases has proceeded to a point where consolidation would create undue delay or any prejudice.

**B.**    **Appointment of Interim Co-Lead Counsel Is in the Best Interests of the Putative Classes**

The utility of appointing interim class counsel in representative lawsuits such as this one has consistently been recognized by federal courts. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management.").

Rule 23(g)(3) authorizes the Court to "designate interim class counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). As the Committee Notes to the 2003 amendments to Rule 23 emphasize, designation of interim class counsel prior to certification is appropriate because:

> [I]t will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It may also be important to make or respond to motions before certification. . . . [Rule 23(g)(3)] authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made.

Rule 23(g)(1) directs the Court to appoint interim class counsel who will "fairly and adequately represent the interests of the class." Rule 23(g)(1) further states that the Court must consider the following factors in appointing interim class counsel:

> [T]he work counsel has done in identifying or investigation potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; (iv) and the resources counsel will commit to representing the class.

The appointment of Gary E. Mason of Mason LLP and Amanda Grace Fiorilla of Lowey Dannenberg, P.C. as Interim Co-Lead Counsel satisfies the requirements of Rule 23(g)(1). The appointment of Blake Hunter Yagman of Spiro Harrison & Nelson LLC, Danielle Perry of Mason LLP, and Israel David of Israel David LLC as an Executive Committee would further advance the goals of Rule 23(g) to resolve complex class actions in the best interests of class members. The foregoing proposed slate is referred to herein as "Proposed Interim Class Counsel."

Additionally, the proposed slate of attorneys representing the Plaintiffs and class members are diverse in gender, LGBTQ+ status, and age, which, courts have found is vital when representing victims in class action litigation. *See, e.g.*, *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020).

### a. Proposed Interim Class Counsel Have Performed Substantial Work Identifying and Investigating Claims in This Action

Proposed Interim Class Counsel have spent substantial time and resources developing these cases. *See,* 5 James W. Moore et al., *Moore's Federal Practice* § 23.120[3][a] (3d ed. 2022) (the court should consider whether an attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort").

Before filing complaints on behalf of their respective clients, Proposed Interim Class Counsel conducted extensive proprietary research; interviewed journalists who initially investigated some of the factual claims that underpin the complaints; conducted preliminary screening of numerous potential plaintiffs; identified potential experts; and spent numerous hours investigating the legal merits and factual allegations related to the potential claims and developing the corresponding allegations, claims and legal theories.

After the filing of their respective complaints, Proposed Interim Class Counsel advanced their Actions by collectively meeting and discussing strategy, relatedness, consolidation, and case organization.

### b. Proposed Interim Class Counsel Are Highly Experienced in Handling Complex Class Action Litigation

The attorneys with the Proposed Interim Class Counsel law firms are highly regarded for their broad and deep experience handling complex and class action litigation, including within the data privacy arena. As set forth in the attached exhibits, the deep and broad experience of Proposed Interim Class Counsel will best serve the proposed Class. *See* Ex. A (Mason LLP Firm Resume), Ex. B (Lowey Dannenberg, P.C. Firm Resume), Ex. C. (Spiro Harrison & Nelson LLC Firm Resume) and Ex. D. (Israel David LLC Firm Resume).

  **c.** **Proposed Interim Class Counsel Are Highly Knowledgeable Regarding the Applicable Law**

As detailed above and in their respective firm resumes, Proposed Interim Class Counsel has broad and deep experience litigating complex class actions, including data privacy cases. They have extensive knowledge of substantive and procedural law, and, combined, they have spent decades litigating complex class actions.

**Gary E. Mason**

**Proposed Interim Co-Lead Counsel**

Gary E. Mason, the founding partner and principal of Mason LLP, is a nationally recognized leader of the class action bar and has prosecuted privacy cases since the early 2000s when he was the first attorney in legal history to successfully settle a privacy case on a class-wide basis against Google. Mr. Mason was an early advocate for victims of security breaches and privacy violations, starting with that first settlement arising from a Google data breach (*In re Google Buzz Priv. Litig.*, No. 5:10-cv-00672 (N.D. Cal. 2010)), the Department of Veterans Affairs stolen laptop case, and continuing in data breach cases to date. More recently, he has successfully and efficiently provided leadership and prosecuted quite complicated data breach class action cases. For example, in *In re U.S. Off. Of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017), Gary Mason served as liaison counsel in a matter against the U.S. government, resulting in the final approval of a $63 million settlement fund that was granted in October 2022. Gary Mason also recently served as Co-Lead Counsel for the patient class in *Farley v. Eye Care Leaders*, No. 1:22-cv-468 (M.D.N.C.), a data breach matter related to the breach of over three million individuals' data. *Eye Care Leaders* was complicated by separate branches of class actions filed against the defendant (one branch on behalf of a patient class and one branch on behalf of medical providers) and further complicated by the defendant's bankruptcy proceeding. Despite

these complications, Gary Mason was able to work with lead counsel for the medical provider class to reach a global settlement, the court granted final approval on June 27, 2024, and the matter was resolved without a single objection.

Moreover, in the last three years alone, Mr. Mason and his firm have successfully litigated and obtained final approval of class action settlements in dozens of data privacy cases across the country. *See, e.g.*, *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. Sept. 21, 2020) (Class Counsel); *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y. Jan. 27, 2021) (Class Counsel); *Brim v. Prestige Care, Inc.*, No. 3:24-cv-05133 (W.D. Wash. Apr. 21, 2025) (Class Counsel); *In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791 (C.D. Cal. Mar. 6, 2023) (Member of Plaintiffs' Steering Committee; $12 million settlement); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-00127 (D. Conn. Nov. 18, 2024) (Class Counsel); *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007 (M.D. Tenn. Aug. 2021) (Class Counsel; data breach class settlement with over 63,000 class members); *Klemm v. Md. Health Enters. Inc.*, No. C-03-CV-20-022899 (Md. Cir. Ct. Balto. Cnty. Dec. 2, 2021) (Class Counsel); *Mowery v. St. Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (Class Counsel); *North v. Hunt Mem'l Hosp. Dist.*, No. 89642 (Tex. Dist. Ct. Hunt Cnty. Dec. 17, 2021) (Class Counsel); *Tucker v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio Dec. 7, 2023).

## Amanda Fiorilla

### Proposed Interim Co-Lead Counsel

Amanda Fiorilla is Vice Chair of Lowey Dannenberg's Data Privacy Practice and one of its founding members. Ms. Fiorilla has played an integral role in several cutting-edge data privacy cases, including in *Frasco v. Flo Health, Inc.*, No. 3:21-v-00757 (N.D. Cal.) (involving a certified

class of Flo App users whose health data was shared with third parties without their consent) and *Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501 (N.D. Cal.) (alleging claims against GoodRx, Meta, Google, and Criteo for sharing and intercepting prescription information).

Ms. Fiorilla and her colleagues routinely litigate novel issues of law and fact that have helped shape the data privacy landscape. *See*, *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 529–30 (M.D. Pa. 2021) (one of the first federal decisions in the Third Circuit to explicitly recognize a merchant's independent duty at law to protect customer data); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 467 (S.D.N.Y. 2022) (one of the first cases to apply the Driver's Privacy Protection Act to an insurance provider who misconfigured its website to disclose driver's license numbers). Ms. Fiorilla's ability to successfully navigate these types of issues will be particularly useful here in litigating an action involving new and emerging technologies.

### Blake Hunter Yagman

**Proposed Member of the Executive Committee**

Blake Hunter Yagman is a Partner at Spiro Harrison & Nelson and leads the firm's data privacy practice. For nearly a decade, Mr. Yagman has maintained a robust docket of various types of data privacy cases, including as court-appointed lead counsel and in key roles in class action litigation alleging surreptitious digital tracking, unlawful biometric collection, and breaches of sensitive information. *See, e.g.*, *In re CityMD Data Priv. Litig.*, No. 2:24-cv-06972 (D.N.J.), ECF No. 63 (appointed interim co-lead counsel in an online tracking litigation); *Boone v. Snap Inc.*, No. 2022LA000708 (Ill. 18th Jud. Cir. Ct., DuPage Cnty. 2022) (leading role in a class action which settled for over $35 million against a social media company that secretly collected facial recognition data from users in Illinois); and *Gerber v. Twitter, Inc.*, No. 3:23-cv-00186-KAW (represented a class over 200 million victims of a data breach).

11

Mr. Yagman challenges corporate malfeasance through tackling difficult procedural hurdles in class actions generally as well as novel substantive issues specific to data privacy litigation. *See, e.g.*, *Veiga v. Respondus, Inc.*, No. 1:21-cv-02620 (N.D. Ill. 2021) (led briefing which successfully opposed a Motion to Compel Arbitration in a data privacy class action); *Noel v. Roblox Corp.*, No. 3:24-cv-00963-JSC (N.D. Cal. 2024) (conducted oral argument and successfully opposed a Motion to Compel Arbitration in a consumer class action); *Gross v. Madison Square Garden Ent. Corp.*, No. 1:23-cv-03380 (S.D.N.Y. 2023) (in a case of first impression, represented a class of visitors to Madison Square Garden and allegedly had their facial recognition data collected).

Mr. Yagman also is engaged in the local community, including as a mentor for the LGBT Bar Association of New York and as an active member of the Theodore Roosevelt Association, a non-profit organization focused on inspiring public service and conservationism.

### Danielle L. Perry

**Proposed Member of the Executive Committee**

Danielle L. Perry is a partner at Mason LLP and leads its Data Privacy Class Action Team. Ms. Perry offers over a decade of class action litigation experience to the benefit of her clients. Graduating from the University of California, Berkeley and from Loyola Law School, Los Angeles, Ms. Perry is licensed to practice in the State of California, District of Columbia, and in numerous federal district courts across the country as well as the U.S. Court of Federal Claims, and the Fifth, Seventh, and Federal Circuit Courts of Appeals.

Ms. Perry, as an individual and as a member of her firm, has been named class counsel or appointed to leadership positions in numerous recent data privacy class actions, including, *inter alia*: *Alexander v. Summit Pathology Lab'ys, Inc.*, No. 1:24-cv-02939 (D. Colo.) (appointed Co-

Lead Class Counsel Dec. 11, 2024); *Andersen v. Oak View Grp., LLC*, No. 2:24-cv-00719 (C.D. Cal.) (appointed Co-Lead Class Counsel May 15, 2024); *Cahill v. Mem'l Heart Inst., LLC*, No. 1:23-cv-00168 (E.D. Tenn.) (appointed Co-Lead Class Counsel Feb. 22, 2024); *Doe v. Conceptions Reprod. Assocs.*, No. 1:25-cv-00009 (D. Colo.) (appointed Co-Lead Class Counsel May 6, 2025); *Dunn v. Complete Payroll Sols., LLC*, No. 1:25-cv-30045 (D. Mass.) (appointed Co-Lead Counsel June 3, 2025); *In re MedStar Health Data Sec. Litig.*, No. 1:24-cv-01335 (D. Md.) (appointed Co-Lead Class Counsel Nov. 7, 2024); *Pannozzi v. Deloitte Consulting*, No. 1:24-cv-00524-MRD-AEM (D.R.I.) (appointed Co-Lead Counsel Mar. 19, 2025); and *Rasmussen v. Uintah Basin Healthcare*, No. 2:23-cv-00322 (D. Utah) (appointed Co-Lead Class Counsel June 4, 2023).

Equally important, while holding leadership roles, Ms. Perry has helped facilitate early resolution of a multitude of data privacy cases, typically through mediated settlements. Her professionalism with co-counsel and opposing counsel alike promotes early resolution. Data privacy cases that have recently reached preliminary approved or final approval and in which Ms. Perry holds (or held) a leadership role include, but are not limited to: *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 1:24-md-03090 (S.D. Fla.) (preliminary approval Apr. 15, 2025) (Executive Committee Member); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 2:23-cv-1236 (E.D. Pa.) (preliminary approval May 13, 2025) (Steering Committee Member); *Gleason v. Methodist Hosps. of Dallas*, No. DC-22-14875 (Tex. Dist. Ct. Dallas Cnty.) (final approval June 17, 2025) (Co-Lead Counsel) *Pessia v. Warren Gen. Hosp.*, No. 501 (Pa. 37th Jud. Dist. Ct. Warren Cnty.) (final approval May 5, 2025) (Co-Lead Class Counsel); and *Rodriguez v. Mena Reg'l Health Sys.*, No. 2:23-cv-02002 (W.D. Ark.) (preliminary approval Feb. 12, 2025) (Co-Lead Counsel).

**Israel David**

**Proposed Member of the Executive Committee**

Israel David is the founder of Israel David LLC, a diverse and growing litigation boutique formed in 2022. Immediately prior to forming the firm, Mr. David spent 26 years in the Litigation Department of the elite international law firm Fried, Frank, Harris, Shriver & Jacobson LLP, including 17 years as a prominent partner at that firm. Mr. David has earned a national reputation for successfully leading and co-leading the representation of prominent defendants in some of the most high-profile securities and shareholder class action lawsuits nationwide in the last quarter-century.

More recently, federal courts from California to New York have appointed Mr. David to leadership positions in high-profile data privacy and antitrust class action lawsuits, including appointments as Interim Co-Lead Class Counsel in the antitrust class action lawsuit challenging the so-called Northeast Alliance entered into by American Airlines and JetBlue Airlines in *In re American Airlines/JetBlue Antitrust Litig.*, No. 22-cv-07374-AMD-TAM (E.D.N.Y. 2022); Interim Co-Lead Class Counsel in a data privacy class action lawsuit involving a data breach that compromised the private data of over 200 million Twitter users in *Gerber v. Twitter, Inc.*, No. 23-cv-00186-KAW (N.D. Cal. 2023); Interim Lead Class Counsel in a data privacy class action lawsuit involving a data security incident at The Metropolitan Opera in New York City in *Tuteur v. Metro. Opera Ass'n, Inc.*, No. 23-cv-03997-GS (S.D.N.Y. 2023); Liaison Counsel in a multidistrict class action lawsuit involving a data breach that compromised the private health information of at least 13 million victims in *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. 1:24-md-3096-RPK-LGD (E.D.N.Y. 2024); and member of the Plaintiffs' Steering Committee in a data privacy class action lawsuit arising out of allegations that TikTok illicitly spied on users of

the TikTok app whilst using the app's in-app web browser in *In re TikTok Consumer Priv. Litig.*, No. MDL 2948-A (N.D. Ill. 2023).

        **d.**    **Proposed Interim Class Counsel Have the Resources Necessary to Effectively Represent the Classes and Fund the Litigation**

In cases such as this one, where the proposed classes face a significant undertaking in opposing well-capitalized adversaries represented by highly capable and well-funded counsel, the proposed classes likewise should be afforded representation by counsel with similar resources. *See*, *Rodriguez v. CitiMortgage, Inc.*, No. 11 CIV. 4718 (PGG), 2011 WL 13558599, at *2 (S.D.N.Y. Nov. 14, 2011) (appointing as interim class counsel "well-established law firms that have the resources and personnel necessary to carry out large-scale class action litigation"). Here, counsel will commit sufficient attorney time and sufficient financial resources to vigorously prosecute the claims of the proposed classes, meeting this requirement.

Proposed Interim Class Counsel possess superior litigation and financial resources, which will enable them to aggressively represent the classes effectively and efficiently. *Cf.*, *In re Cavanaugh*, 306 F.3d 726, 735 (9th Cir. 2002) ("[A]n aggressive, competent lawyer can make a substantial difference in the outcome of the case."). The firms understand the demands of these cases and will deploy the resources necessary to investigate and prosecute these cases vigorously on behalf of the proposed classes.

With extensive resources at their disposal, Proposed Interim Class Counsel can most effectively and efficiently prosecute these cases.

**III.    CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court: (i) consolidate the *Ayerdi* and *A.P.* Actions into docket number 1:25-cv-05780-PAE; (ii) rename the consolidated action "*In re Zeta Global Data Privacy Litigation*"; and (ii) appoint Gary E. Mason of Mason LLP

and Amanda Fiorilla of Lowey Dannenberg, P.C. as Interim Co-Lead Counsel under Rule 23(g) of the Federal Rules of Civil Procedure, as well as an Executive Committee consisting of Blake Hunter Yagman of Spiro Harrison & Nelson LLC, Danielle L. Perry of Mason LLP, and Israel David of Israel David LLC to effectively prosecute this consolidated action.

**DATED**: July 31, 2025                                   Respectfully submitted,

By: */s/ Gary Mason*
Gary E. Mason
**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, D.C. 20015
Tel.: (202) 429-2290
gmason@masonllp.com

Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 110
White Plains, New York 10601
Tel.: (914) 997-0500
afiorilla@lowey.com

*Proposed Interim Co-Lead Class Counsel*

Blake Hunter Yagman
**SPIRO HARRISON & NELSON**
40 Exchange Place, Suite 1100
New York, New York 10005
Tel.: (929) 709-1493
byagman@shnlegal.com

Danielle L. Perry
**MASON LLP**
5335 Wisconsin Ave, NW, Suite 640
Washington, D.C. 20015
Tel: (202) 429-2290
dperry@masonllp.com

        Israel David
        **ISRAEL DAVID LLC**
        60 Broad Street, Suite 2900
        New York, New York 10004
        Tel.: (212) 350-8850
        israel.david@davidllc.com

        *Proposed Executive Committee Members*