**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE AYERDI, R.E.A., and K.G., on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZETA GLOBAL HOLDINGS CORP., et al.,<br><br>Defendants. | Case No. 1:25-cv-5780-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ZETA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

ARGUMENT ........ 7

I. PLAINTIFFS LACK ARTICLE III STANDING TO MAINTAIN THIS ACTION. ........ 7

A. Generalized Allegations of Harm Cannot Create Injury ........ 8

B. Any Purported Benefit Obtained by Zeta Is Insufficient to Establish Injury ........ 9

C. The Alleged Diminution In Value of Plaintiffs' Data Does Not Confer Standing ........ 10

D. A Violation of Privacy Rights Is Insufficient for Standing Purposes. ........ 10

E. Procedural Violations of Wiretapping Laws Do Not Confer Standing. ........ 11

F. Loss of Control Over Data Does Not Confer Standing ........ 11

G. Harm to Plaintiffs' Devices and Systems Is Insufficient ........ 12

II. PLAINTIFFS FAIL TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF. ........ 12

A. Plaintiffs' ECPA Claim Fails ........ 13

1. No "Contents" of Communications Were Intercepted ........ 13

2. The Party Exception Applies Because Zeta Was a Party to Communications ........ 14

3. Plaintiffs Consented to Any Purported Interception ........ 15

4. The ECPA's Crime-Tort Exception Does Not Apply ........ 16

B. Plaintiffs' GBL Claims Fail for Lack of Injury. ........ 17

C. Plaintiffs' UCL Claims Fail ........ 19

D. Each CIPA Claim Should Be Dismissed. ........ 20

1. New York Law Applies and Does Not Recognize These Claims ........ 20

2. CIPA Section 631 .......... 21

a. Section 631(a)(1) Does Not Apply to Internet Communications..21

b. No Interception of "Contents" Occurred…………………………...22

c. No Interception "In Transit" Occurred…………………………..23

d. Even if an Interception Occurred, Plaintiffs Consented…………24

e. There is No Underlying Wiretap to Trigger Section 631(a)(3)….24

3. CIPA Section 632 .......... 24

4. CIPA Section 638 .......... 26

E. Plaintiffs' CDAFA Claim Fails Because Plaintiffs Did Not Suffer an Injury .......... 28

F. Plaintiffs' Invasion of Privacy Claims Fail for Lack of a Reasonable Expectation of Privacy and Highly Offensive Conduct .......... 30

G. Plaintiffs' Unjust Enrichment Claim Fails, Because It Is Duplicative. .......... 33

H. Plaintiffs' Request for Relief Under the DJA Should Be Denied. .......... 34

III. THE COURT SHOULD DISMISS THE FAC WITH PREJUDICE. .......... 35

CONCLUSION .......... 35

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025)....................33, 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................12

*Barton v. Pret A Manger (USA) Ltd.*,
535 F. Supp. 3d 225 (S.D.N.Y. 2021)....................33, 34

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019)....................19

*Bradshaw v. Lowe's Cos., Inc.*,
No. 3:25-cv-0742, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025)....................31

*Braynina v. TJX Companies, Inc.*,
No. 1:15-cv-5897, 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)....................17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................22

*Burns v. UP Fintechup Fintech Holding Ltd.*,
No. 1:24-cv-1632, 2025 WL 936539 (S.D.N.Y. Mar. 27, 2025)....................1

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................25

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................14, 16

*Carovillano v. Sirius XM Radio Inc.*,
715 F. Supp. 3d 562 (S.D.N.Y. Feb. 6, 2024)....................33, 34

*Casillas v. BOP LLC*,
No. 24STCV15581, 2025 WL 2161288 (Cal. Super. June 18, 2025)....................27

*Cerco Bridge Loans 6 LLC v. Schenker*,
No. 1:23-cv-11093, 2025 WL 622608 (S.D.N.Y. Feb. 26, 2025)....................13

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................22

*Cohen v. Casper Sleep Inc.*,
No. 1:17-cv-9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018).................... *passim*

*Cooper v. Bonobos, Inc.*,
No. 1:21-cv-854, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ....................................10, 11, 17

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)..............................................................12, 17, 18

*D.H. v. City of New York*,
309 F. Supp. 3d 52 (S.D.N.Y. 2018)................................................................... *passim*

*De Medicis v. Ally Bank*,
No. 7:21-cv-6799, 2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022) ..........................10, 11, 12, 18

*DellaSala v. Samba TV, Inc.*,
No. 3:25-cv-03470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .............................21, 28, 31

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ...........................................................20, 28, 29, 30

*Doe v. County of Santa Clara*,
No. 3:23-cv-04411, 2024 WL 3346257 (N.D. Cal. July 8, 2024) ..........................................29

*Doe v. GoodRx Holdings, Inc.*,
No. 3:23-cv-00501, 2025 WL 2052302 (N.D. Cal. Jul. 22, 2025) ...................................25, 26

*Gabrielli v. Insider, Inc.*,
No. 1:24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ....................................10, 11

*Garcia v. Build.com, Inc.*,
No. 3:22-cv-1985, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024)..........................................22

*Gay v. Garnet Health*,
No. 7:23-cv-06950, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......................................34

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)...................................................................33, 34

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................22

*Griffith v. TikTok, Inc.*,
No. 5:23-cv-00964, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024)..................................13, 14

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. Jul. 9, 2025).........................................................22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................31, 32

*Hazel v. Prudential Fin., Inc.*,
No. 3:22-cv-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023)....................................19, 20

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..................................................................................31

*Heiting v. Taro Pharm. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. Dec. 26, 2023).......................................................28, 29, 30

*In re DoubleClick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)...................................................................15, 16, 17

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ..............................................................................31, 32

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................................................14

*In re Google Inc.*,
No. 13-md-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).........................................25

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D Cal. 2014) ..................................................................................32, 33

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................................32

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993)...................................................................................................34, 35

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..............................................................................25, 26

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............................................................................................13, 14

*Joiner v. NHL Enters., Inc.*,
No. 1:23-cv-2083, 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ................................. *passim*

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..............................................................................19, 20

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-cv-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025)....................................13, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 5:25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025).................................27, 28

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................23

*Kunstler v. Ctr. Intel. Agency*,
No. 1:22-cv-6913, 2023 WL 8776339 (S.D.N.Y. Dec. 19, 2023) ....................9

*Lehrman v. Lovo, Inc.*,
790 F. Supp. 3d 348 (S.D.N.Y. 2025) ....................30

*Liau v. Weee! Inc.*,
No. 1:23-cv-1177, 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ....................10

*Lleshi v. Kerry*,
127 F. Supp. 3d 196 (S.D.N.Y. 2015) ....................7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................31, 32

*M.G. v. Therapymatch, Inc.*,
No. 3:23-cv-04422, 2025 WL 1447432 (N.D. Cal. May 19, 2025) ....................25, 26

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ....................19, 20

*McClung v. AddShopper, Inc.*,
No. 4:23-cv-1996, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ....................8

*Melendez v. Raaka Chocolate, Inc.*,
No. 1:23-cv-9532, 2025 WL 2773006 (E.D.N.Y. Sept. 28, 2025) ....................35

*Mikulsky v. Bloomingdale's LLC*,
No. 3:23-cv-00425, 713 F. Supp. 3d 833 (S.D. Cal. 2024) ....................23

*Mills v. Saks.com LLC*,
No. 1:23-cv-10638, 2025 WL 34828 (S.D.N.Y. Jan. 6, 2025) ....................11

*Mitchener v. CuriosityStream, Inc.*,
No. 5:25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................27, 28

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018) ....................35

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................23

*Oganyan v. Biolife Plasma Servs. L.P.*,
No. 1:25-cv-00099, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ....................11

*Ohanian v. Apple Inc.*,
No. 1:20-cv-5162, 2022 WL 826415 (S.D.N.Y. Mar. 18, 2022)............................................34

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025) ...........................26, 27, 28

*Popa v. Microsoft Corp.*,
153. F. 4th 784 (9th Cir. 2025) ..............................................................................8, 9

*Prozer v. U.S.*,
No. 9:14-cv-1249, 2014 WL 6686697 (D.S.C. Nov. 25, 2014)...............................................9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ...................................................................13, 17

*Ramos v. Gap, Inc.*,
No. 4:23-cv-04715, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024).......................................22

*Revitch v. New Moosejaw, LLC*,
No. 3:18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..................................25, 26

*Rodriguez v. Google LLC*,
No. 3:20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)........................................25

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......................................27

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...........................................................17, 19, 29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 4:24-cv-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..........................................24

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......................................................................................19

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................................24

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022)..........................................................................34

*Torres v. Prudential Fin., Inc.*,
No. 3:22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)........................................23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................7, 8, 12

*Trump v. Simon & Schuster, Inc.*,
791 F. Supp. 3d 470 (S.D.N.Y. 2025)....................33

*U.S. v. Lifshitz*,
369 F.3d 173 (2d Cir. 2004)....................9

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....................22

*Wahab v. Evolutions Hair Salon, LLC*,
No. 1:24-cv-05641, 2025 WL 2400036 (S.D.N.Y. Aug. 19, 2025)....................35

*Xu v. Reuters News & Media Inc.*,
No. 1:24-cv-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)....................8, 9, 10, 11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................13, 14, 22

**Statutes**

18 U.S.C. § 2511, *et seq.*....................13, 14, 15

28 U.S.C. § 2201(a)....................34

Cal. Bus. & Prof. Code § 17200, *et seq.*....................19

Cal. Pen. Code § 502....................28, 29

Cal. Pen. Code § 631, *et seq.*....................21, 22, 23, 24

Cal. Pen. Code § 632, *et seq.*....................25, 26

Cal. Pen. Code § 638, *et seq.*....................26, 27, 28

N.Y. Const.....................17

N.Y. Gen. Bus. Law § 349....................17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................12

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Zeta Global Corp. and Zeta Global Holdings Corp. (together, "Zeta") hereby move to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Diane Ayerdi, K.G., and R.E.A. ("Plaintiffs").[1]

## INTRODUCTION

This action ("Action") arises out of the ordinary retail practice of personalized advertising and accompanying use of internet analytics tools. Advertising is not illegal, nor is the internet, although Plaintiffs would have this Court believe otherwise. Specifically, this Action challenges the online ecosystem comprised of consumer-facing businesses that publish advertisements, companies that seek to effectively place advertisements, and the companies that aid this process.

Zeta falls within the last category by providing businesses with consumer-facing brands, like defendant Dotdash Meredith, Inc. ("DDM"), with tools to personalize their customers' experiences and optimize advertising campaigns. Zeta offers software, such as the LiveIntent pixel, which collects data points from users who have agreed to privacy disclosures on retail websites. Zeta also aggregates and analyzes those data points on the Zeta Marketing Platform ("ZMP") to provide insights on retail customers' preferences and to anticipate consumer interests. Retailers, in turn, use this information to grow and retain customer relationships.

Plaintiffs' claims arise from their purported interactions with various websites that rely on Zeta to enhance their marketing capabilities. Plaintiffs make broad allegations that attempt to cast Zeta's efforts to provide ordinary website technology that optimizes consumer experiences as a sinister activity. For example, Plaintiffs allege that Zeta "traffics" in consumer data and "surveils"

---

[1] In support of this motion, Zeta files a request for judicial notice ("RJN") and attaches Exhibits A to E that are referenced herein as "Ex. __." Each of these exhibits are appropriate for consideration on this motion because they are incorporated by reference into the FAC (*Burns v. UP Fintechup Fintech Holding Ltd.*, No. 1:24-cv-1632, 2025 WL 936539, at *1 (S.D.N.Y. Mar. 27, 2025)), or otherwise meet the standard for judicial notice under F.R.E. 201, as detailed in the RJN.

website users. These characterizations, however, are undercut by Plaintiffs' own allegations, which concede that Zeta collects certain consumer data from publicly available resources and consumers' voluntary provision of information to website providers. Zeta is not, in fact, invading Plaintiffs' devices and extracting personal information. Instead, Zeta aggregates data that Plaintiffs provide directly to its partners (who obtain consent to share such data with Zeta) or, in some cases, information that Plaintiffs disclose about themselves online. Certainly, Plaintiffs cannot complain that Zeta aggregates data that they themselves post on the internet, particularly when doing so is a lawful and regulated activity.

Nevertheless, Plaintiffs assert eleven causes of action against Zeta, including: (1) the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA"); (2) New York's General Business Law § 349 ("GBL"); (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (4)-(6) California's Invasion of Privacy Act, Cal. Pen. Code §§ 631, 632, 638.51, *et seq.* ("CIPA"); (7) California's Comprehensive Computer Data and Fraud Act, Cal. Pen. Code § 502, *et. seq.* ("CDAFA"); (8) California's Constitution, Art. 1; (9) common law invasion of privacy; (10) unjust enrichment; and (11) award under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.* ("DJA"). Plaintiffs, who seek to represent a nationwide class, sue under various state laws, regardless of their own citizenship or choice of law analyses.

Each cause of action fails for two main reasons. First, Plaintiffs lack Article III standing to bring their claims, so the Court does not have subject matter jurisdiction over this Action. Plaintiffs allege suffering harms that New York and California courts consistently find do not confer standing, because they are not concrete. Plaintiffs' conclusory allegations are neither supported by any plausible facts about their own experiences, nor traceable to Zeta's conduct, which is required to maintain an action in federal court. Second, each of Plaintiffs' claims fail as a matter of law.

Several state laws contain statutory standing elements, which Plaintiffs cannot meet for the same reasons they lack Article III standing. The remaining claims cannot survive because Plaintiffs fail to allege facts in support of the elements of the many claims they have asserted. As just one example, Plaintiffs fail to state a claim for recording of a "confidential" communication because they plead no facts showing that any of their communications with astrology, recipe and celebrity news websites were "confidential" under the law. For these reasons and others detailed below, the Court should dismiss each and every claim in the FAC with prejudice.

## FACTUAL BACKGROUND

***The Parties.*** Plaintiff R.E.A. alleges she was domiciled in New York during the "Class Period" and is now located in North Carolina. (FAC ¶ 24.) Plaintiffs K.G. and Ayerdi allege that they are California residents. (*Id.* ¶¶ 31, 39.) Each Plaintiff alleges she used the "services of numerous online retailers" including those of Zeta's business clients. (*Id.* ¶¶ 25, 32, 39.)

Defendants Zeta and DDM are both located in New York. (*Id.* ¶¶ 45, 48, 49.)

***Zeta's Business.*** Zeta is "a leading omnichannel data-driven cloud platform that provides enterprises with consumer intelligence and marketing automation software." Ex. A, at 34. Zeta's business "empower[s its] customers to target, connect and engage consumers through software that delivers personalized marketing across all addressable channels, including email, social media, web, chat" and more. *Id.* Plaintiffs allege that Zeta engages in various data collection, aggregation, and brokerage practices. (FAC ¶¶ 6, 8, 60.) One such practice is the use of Zeta's LiveIntent pixel, which Zeta's customers embed in marketing emails to track consumers engagement and collect browsing data. (*Id.* ¶¶ 101, 104–105, 109.) Plaintiffs allege that upon receiving this data, LiveIntent initiates real-time bidding requests to "advertising partners" for purposes of serving personalized ads. (*Id.* ¶ 110.) Plaintiffs also allege that Zeta aggregates consumer data on the ZMP, which integrates artificial intelligence to analyze website interactions

and generate profiles of consumers' information and interests. (*Id.* ¶¶ 60, 62, 63, 67.) According to Plaintiffs, Zeta allegedly collects and analyzes "PII," which is commonly known to mean "personally identifying information." Plaintiffs define this term as, "demographic information, behavioral data, psychographic data, transactional information, and other data regarding consumer preferences," which they claim Zeta obtains from customers and "publicly available" sources. (*Id.* ¶ 9.) Plaintiffs claim that Zeta assigns each consumer a "Zeta ID" to track their internet activity across different sources, and ultimately compile thousands of data points on their attributes. (*Id.* ¶¶ 71, 76–79, 87, 89.) Plaintiffs contend that Zeta uses these profiles to enhance and analyze marketing campaigns (*id.* ¶¶ 71, 74), and ultimately broker such data to other parties for advertising and commercial purposes. (*Id.* ¶¶ 84.) Plaintiffs further allege that Zeta "traffics" in consumer data and uses "consent farms" to obtain consumer information, irrespective of their simultaneous allegations that they did not consent to the alleged conduct. (*Id.* ¶¶ 11, 52.)

In the FAC, Plaintiffs repeatedly reference the Culper Research report (*id.* ¶¶ 15, 56, 65), dated November 13, 2024, which discloses that the authors have a "short" position in Zeta's stock, meaning they are financially incentivized to see the stock decrease in value. (Ex. A.) Plaintiffs also take issue with Zeta's 2024 Annual Report, which describes the mechanisms through which it obtains data, including whether consumers opt-in to provide such data. (FAC ¶ 99.) Zeta's reporting reflects that any removal to references to "opt-in" requirements from its disclosures aligns with domestic and global data privacy laws.[2]

[2] "To date, despite significant legislative activity around privacy in the states and at the federal level, there have been no significant or credible efforts at legislation that would require prior consent before data is used (opt-in model), apart from sensitive data. Zeta believes that a continued emphasis on an opt-out regime in the U.S. will mean a continued ability to collect and use non-sensitive personal data at scale for marketing purposes." Ex. A at 6. Indeed, so-called "data brokers" are an increasingly regulated industry at the state level, indicating a broad legislative acceptance of the legality of the business model. *See* Cal. Civ. Code §§ 1798.99.80–88.

***Plaintiffs' Allegations.*** Plaintiffs Ayerdi, R.E.A., and K.G. each similarly allege that, unbeknownst to them, Zeta began tracking and aggregating their data after they signed up and began receiving emails from retail businesses. First, Plaintiff Ayerdi alleges that, on June 25, 2025, while located in California, she visited People.com. (*Id.* ¶ 103.) Plaintiff Ayerdi claims that after subscribing to receive emails from People.com, and opening an email newsletter, Zeta's LiveIntent pixel began tracking: her email address, the name of the online article and other content she viewed, "other metadata," and her "online activities" which it used to infer her activities, habits, propensities, and interests. (*Id.* ¶¶ 103–05.) Yet, Plaintiff Ayerdi shares much of this information herself, by posting it to professional networking websites. Indeed, a simple internet search for named Plaintiff Ayerdi yields voluminous results which the FAC characterizes as "PII," including her interests (Opera singing), her email address and phone number, names of her relatives, and her demographic information (age, race). (Exs. B–C.) Nevertheless, she alleges that Zeta obtained these sorts of data points without her permission because People.com, operated by DDM, did not obtain her express consent regarding DDM's use of Zeta's software. (*Id.* ¶¶ 109, 112–14.)

Plaintiff R.E.A. claims she visited websites for "numerous online retailers, including those of Zeta's business clients, such as Horoscope.com, All Recipes, Southern Living, and U.S. (*sic*) Weekly." (*Id.* ¶ 25.) She claims she created an account with Horoscope.com, but does not allege the date on which she did so, nor does she describe the interface for doing so. (*Id.* ¶ 26.)

Plaintiff K.G. alleges she also visited the websites of "Horoscope.com, All Recipes, Food & Wine, MyRecipes, Southern Living, and US Weekly." (*Id.* ¶ 32.) Plaintiff K.G. alleges that she created an account with All Recipes. (*Id.* ¶ 33.) Like Plaintiff R.E.A., Plaintiff K.G. does not allege the date on which she created this account, nor does she describe the account creation interface. (*See generally id.*) Yet, a condition of signing up for AllRecipes newsletters is that users agree to

the terms of service and privacy policy, both of which make disclosures about technology used on its website. (Exs. D–E.) Plaintiffs R.E.A. and K.G. allege that, like Plaintiff Ayerdi, after visiting these websites that use Zeta's software, subscribing to their newsletters, and opening the newsletter, they were subjected to tracking by the LiveIntent pixel. (*Id.* ¶ 115.)

Plaintiffs allege they suffered various purported injuries due to Zeta's allegedly unlawful conduct, which include: (1) that Zeta derived a benefit from using and sharing Plaintiffs' data, without compensating Plaintiffs (*see id.* ¶¶ 165, 184, 246, 271); (2) diminution in value of Plaintiffs' data (*id.* ¶ 165); (3) an offense to or violation of privacy rights or interests (*see id.* ¶¶ 165, 174, 184, 262); (4) harm based on the alleged statutory violation of CIPA (*see id.* ¶¶ 197, 209, 220); (5) loss of control of Plaintiffs' data (*id.* ¶ 184); and (6) an "incalculable harm" to Plaintiffs' "devices and systems" (*id.* ¶¶ 234, 236). The named Plaintiffs do not connect these allegations to any specific event that they experienced themselves. Indeed, notwithstanding the generalized allegations about Zeta's alleged tracking and targeted advertising practices set forth in the FAC, Plaintiffs do not allege that they ever received any targeted advertisements, much less that such ads were traceable to alleged interactions with Zeta's technology or that they were harmed by such ads. (*See id.* ¶¶ 29, 36, 43) (each stating, in hypothetical terms, that targeted ads "would ultimately be served" to the Plaintiffs.) Plaintiffs also reference that they provided "sensitive," "private," or in one instance, "health" information, but do not elaborate on what sort of information was shared on websites devoted to recipes, astrology and celebrity news. (*Id.* ¶¶ 11, 85, 164.) Plaintiffs make general allegations related to the value of personal data but do not connect such value in any manner to their own information. (*See id.* ¶¶ 117–24.)

***Putative Classes.*** Plaintiffs seek to represent putative classes of persons, who allegedly had their "PII" unlawfully "intercepted, collected, enriched, and monetized by Defendants," and

request relief on their behalf. (*Id.* ¶ 18.) Plaintiffs seek to represent one nationwide class of "[a]ll natural persons in the United States for whom Defendants aggregated, collected, retained, sold, or otherwise profited from their PII or other private data" (*id.* ¶ 140) or alternatively, three nearly identical subclasses of persons from California, North Carolina, and New York only. (*Id.* ¶ 141.) Plaintiffs estimate "as many as 230 million" putative class members exist. (*Id.* ¶ 144.)

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING TO MAINTAIN THIS ACTION.

To maintain an action in federal court, a plaintiff must establish that the court has subject matter jurisdiction to preside over the case. *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015). A plaintiff must demonstrate, by a preponderance of the evidence, that their allegations meet the "irreducible constitutional minimum" of Article III standing requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotes omitted). Indeed, a plaintiff must show that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* An injury in fact is one that is "concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A harm is "concrete" when the alleged injury "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as a physical harm, monetary harm, or various intangible harms[.]'" *Id.* at 417. To establish traceability, a plaintiff must plead plausible, non-speculative facts supporting a causal nexus between the allegedly unlawful conduct and the purported injury. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 65 (S.D.N.Y. 2018). Here, Plaintiffs fail to meet their burden because they do not allege the types of tangible or intangible harms that courts traditionally recognize as fulfilling

standing requirements. *See TransUnion*, 594 U.S. at 425. Even if they did, such injuries are not traceable to Zeta's conduct. *See D.H.*, 309 F. Supp. 3d at 68.

**A. Generalized Allegations of Harm Cannot Create Injury**

General allegations of harm are not enough; a plaintiff must plead supporting facts that "affirmatively and plausibly suggest" they have standing to sue. *Id.* at 65 (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)). Moreover, a plaintiff must allege facts showing that "they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.*

Here, the FAC is devoid of facts that satisfy Plaintiffs' Constitutional burden. Plaintiffs generally claim that, after creating accounts with Zeta's partners, their email addresses and website interactions were collected and used for the purposes of targeted advertising. (FAC ¶¶ 24–44.) Plaintiffs do not allege they ever received targeted advertisements (which are not unlawful) or that such hypothetical advertisements harmed them in any concrete fashion. *Xu v. Reuters News & Media Inc.*, No. 1:24-cv-2466, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (Engelmayer, J.) (dismissing wiretapping claims for lack of standing where plaintiff did not allege receiving targeted advertisements or being harmed by them); *compare McClung v. AddShopper, Inc.*, No. 4:23-cv-1996, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (finding plaintiff had standing where defendants' data practices "barrage[d] that person's devices" with unwanted emails).

This result is confirmed by other circuits addressing similar types of claims. In *Popa v. Microsoft Co.*, the Ninth Circuit affirmed a district court's order dismissing plaintiff's privacy claims for lack of standing, including claims that are asserted here. 153 F. 4th 784, 786. There, plaintiff alleged that, during a visit to a pet supply store website, session replay technology captured her browsing activity, including keystrokes and product-clicks, and her mailing address that was entered for delivery purposes. *Id.* Both the district court and the Ninth Circuit rejected

these claims for lack of Article III standing in the absence of a concrete harm. *Id.* at 791. The Ninth Circuit explained that plaintiff failed to show "how the tracking of her interactions with the [] website caused her to experience any kind of harm" that is highly offensive, and that she identified "no embarrassing, invasive, or otherwise private information" collected by the defendant. *Id.*

In fact, given Plaintiff Ayerdi's own disclosure of the very same information that she claims violated her privacy interests (demographic data, interests, etc.), any purported injury is entirely untraceable to Zeta. *See D.H.*, 309 F. Supp. 3d at 68. In other contexts, courts have recognized that "[a] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Kunstler v. Ctr. Intel. Agency*, No. 1:22-cv-6913, 2023 WL 8776339, at *7 (S.D.N.Y. Dec. 19, 2023) (quotes omitted); *see also U.S. v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004) (finding no reasonable expectation of privacy of information intended for internet publication); *Prozer v. U.S.*, No. 9:14-cv-1249, 2014 WL 6686697, at *5 (D.S.C. Nov. 25, 2014) ("invasion of privacy claims . . . require that information be private. If the information can be discovered through a basic Google search, it has already been made public.").

**B. Any Purported Benefit Obtained by Zeta Is Insufficient to Establish Injury**

In connection with their ECPA, UCL, California Constitution, and unjust enrichment claims, Plaintiffs allege that Zeta wrongfully benefitted from capturing, using, and sharing Plaintiffs' data with third parties for commercial use. (FAC ¶¶ 165, 184, 247, 271.) But, as this Court has recognized, "[t]o state the obvious, [defendant's] increasing its revenue, by itself, does not harm [plaintiff]." *Xu*, 2025 WL 488501, at *3. In *Xu*, plaintiff alleged that his IP address was intercepted by website trackers, and used to develop "marketing campaigns, conduct targeted advertising, and ultimately boost" defendant and advertisers' revenue." *Id.* at *2. This Court found that plaintiffs' allegations—that the unlawful collection of his non-sensitive data to boost

defendant's revenue—was insufficient for standing purposes. *Id.* at *3. Thus, Plaintiffs' allegations related to any profit obtained by Zeta does not establish any harm to Plaintiffs. *See id.*

**C. The Alleged Diminution In Value of Plaintiffs' Data Does Not Confer Standing**

In a further effort to establish their purported injury, Plaintiffs claim that Zeta's practices diminished the value of their data. (FAC ¶ 165.) Yet, they plead no facts to support that conclusory allegation. (*See generally id.*) For example, Plaintiffs do not allege that they attempted to broker their own data, and found it was worth less due to Zeta's practices. (*See generally id*.) In any event, personal information does not have independent monetary value. *De Medicis v. Ally Bank*, No. 7:21-cv-6799, 2022 WL 3043669, at *6 (S.D.N.Y. Aug. 2, 2022). And, while Plaintiffs make general allegations regarding the value of data (¶¶ 117–24), they do not connect those allegations to their own data. Since Plaintiffs fail to plead facts showing that their data's monetary value decreased, their claims should be dismissed for lack of standing. *See D.H.*, 309 F. Supp. 3d at 65.

**D. A Violation of Privacy Rights Is Insufficient for Standing Purposes.**

Plaintiffs also generally allege that they have suffered a violation of their privacy rights as a result of Zeta's practices. (FAC, ¶¶ 165, 174, 184, 262.) When determining whether a general "invasion of privacy" is a sufficient injury-in-fact, courts look to whether the injury has a close relationship with one traditionally recognized at common law. *Gabrielli v. Insider, Inc.*, No. 1:24-cv-01566, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025); *Cooper v. Bonobos, Inc.*, No. 1:21-cv-854, 2022 WL 170622, at *5, n. 4 (S.D.N.Y. Jan. 19, 2022) (finding that the "loss of privacy" theory "obviously do[es] not support [plaintiff's] standing" under Article III); *Liau v. Weee! Inc.*, No. 1:23-cv-1177, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (Engelmayer, J.) (finding that the sheer allegation of private information being disclosed did not confer standing).

There is no basis to reach a contrary conclusion based on Plaintiffs' allegations here. To the extent that Plaintiffs allege their privacy was affronted by targeted ads, such claims fail because

they do not claim they received any such ads, much less plead facts that support a claim that such experience resulted from Zeta's conduct. *Oganyan v. Biolife Plasma Servs. L.P.*, No. 1:25-cv-00099, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025). Indeed, Plaintiffs merely suggest that targeted ads "would ultimately be served" to them based on Zeta's analytics and tracking practices. (*See* FAC ¶¶ 29, 36, 43.) This hypothetical experience is not a concrete injury under Article III jurisprudence. *See Oganyan*, 2025 WL 2979619, at *4. Thus, Plaintiffs lack standing to maintain this Action. *See Gabrielli*, 2025 WL 522515, at *3; *Bonobos*, 2022 WL 170622, at *5, n. 4.

### E. Procedural Violations of Wiretapping Laws Do Not Confer Standing.

Throughout the FAC, Plaintiffs allege that they were harmed by Zeta's purported interception, viewing, and use of their data without consent. (FAC ¶¶ 197, 209, 220.) While Plaintiffs aim to portray such allegations as a form of injury, they are merely repeating the statutory language of state and federal wiretapping laws, which prohibit such conduct. (*Id.* ¶¶ 153–166, 187–222.) This effort is insufficient to establish standing. Courts regularly dismiss claims for lack of standing that rely on bare statutory violations. *E.g.*, *Xu*, 2025 WL 488501, at *4 (collecting cases); *Gabrielli*, 2025 WL 522515, at *3 (dismissing claims for lack of standing when only a procedural violation was alleged); *Mills v. Saks.com LLC*, No. 1:23-cv-10638, 2025 WL 34828, at *4 (S.D.N.Y. Jan. 6, 2025) (same). Plaintiffs' alleged harms, the interception and use of their data, do not confer standing; these are mere claims of procedural wiretapping offenses. *See Xu*, 2025 WL 488501, at *4; *Gabrielli*, 2025 WL 522515, at *3; *Mills*, 2025 WL 34828, at *4.

### F. Loss of Control Over Data Does Not Confer Standing

Plaintiffs further allege that Zeta's practices caused them to lose control over their data. (FAC ¶ 184.) "That argument is also easily set aside." *Xu*, 2025 WL 488501, at *5. The alleged loss of control of non-sensitive data is an "abstract injury" that does not confer standing. *See De*

*Medicis*, 2022 WL 3043669, at *6 (quotes omitted). Such is the case here, where the types of data at issue are Plaintiffs' web browsing habits, engagements, and interactions. (*See* FAC ¶¶ 103–05.)

### G. Harm to Plaintiffs' Devices and Systems Is Insufficient

Finally, Plaintiffs allege injury from issues with their devices and systems. (FAC ¶ 234.) Plaintiffs allege that Zeta's conduct "causes data to be stored in Plaintiffs' and California Class members' local storage, impacts CPU load time, and takes up bandwidth. These usages are particularly important, as device batteries have only a finite number of charges before they need to be replaced, and most data plans have bandwidth caps after which users will be charged or experience slower load times." (*Id.* ¶ 234.) Plaintiffs do not allege that their local storage, device batteries, or systems suffered in this manner. (*See id.*) Plaintiffs similarly do not allege that they themselves have data plans that charged fees or forced slow load times. (*See id.*) Accordingly, Plaintiffs' hypothetical and generalized harms are not supported by facts of their own personal experiences. Indeed, because Plaintiffs admit that these hypothetical harms are "incalculable" they are hardly concrete. (FAC ¶ 236); *see TransUnion*, 594 U.S. at 425; *D.H.*, 309 F. Supp. 3d at 65.

## II. PLAINTIFFS FAIL TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In a putative class action, the allegations pleaded must pertain to the named plaintiffs and not putative class members. *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, n.5 (S.D.N.Y. 2024) (Engelmayer, J.). On a motion to dismiss, the Court must accept well-pleaded facts as true, but it may "disregard any 'conclusory allegations, such as formulaic recitations of the elements of a

cause of action.'" *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 571 (S.D.N.Y. 2025) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021)).

**A. Plaintiffs' ECPA Claim Fails**

Plaintiffs bring one claim under the ECPA, which authorizes a private right of action against anyone who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(c).

1. <u>No "Contents" of Communications Were Intercepted</u>

The ECPA prohibits the unlawful interception of *contents* of communications, but not every piece of data that is allegedly intercepted will meet this threshold. *See id.*; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024). Internet browsing information, for example, is not the "contents" of a communication. *See, e.g.*, *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964, 2024 WL 4308813, at *7 (C.D. Cal. Sept. 9, 2024) (finding that non-sensitive browsing history was not contents); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (finding that website clicks are not contents). The Ninth Circuit has explained that contents" of a communication are the "intended message conveyed by the communication[.]" *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); s*ee also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–1083 (C.D. Cal. 2021) (finding "keystrokes, mouse clicks, pages viewed, shipping and billing information…the date and time of [website] visit, duration of visit, [p]laintiff's IP address, her location at the time of the visit, her browser type, and operating system" are not contents under CIPA, which adopts the ECPA's definition of contents).

Here, Plaintiffs make the conclusory allegation that the "contents" of their communications were intercepted, but only allege Zeta collected the following data: their "PII" which encompasses information about their consumer preferences and other publicly available information; their email addresses, metadata, and device information; and data about their "online activities." (FAC ¶¶ 9,

103–05.) None of this information is a "message" that is "conveyed" in any conversation. *See In re Zynga*, 750 F. 3d at 1106; *Yoon*, 549 F. Supp. 3d at 1082. Instead, these categories of data are most akin to the ordinary online browsing information that courts consistently find are not "contents." *See Griffith*, 2024 WL 4308813, at *7; *Yoon*, 549 F. Supp. 3d at 1082–1083; *King*, 2025 WL 1635419, at *4. Plaintiffs do not allege having substantive conversations with retail websites. (*See generally* FAC.) Rather, they allege that Zeta surveils their internet engagement—meaning their keystrokes, clicks, open time, read time, and scrolling. (*Id.* ¶¶ 103–05.) Such information is not the "contents" of a communication, and therefore, their claim fails.

2. <u>The Party Exception Applies Because Zeta Was a Party to Communications</u>

The ECPA excepts from liability violations when the intercepting party "is a party to the communication or where one of the parties to the communications has given prior consent to such interpretation."18 U.S.C § 2511(2)(d). The statute does not define "party," but courts have interpreted it as meaning "one who takes part in the conversation" or an "intended recipient" of an electronic communication. *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015). In *Caro*, the Second Circuit explained that a communication's participant is a party to it for ECPA purposes. 618 F.3d at 97. There, the Court found "no support for the proposition that one must be invited into a conversation in order to be a party to it." *Id.* In *In re Google*, the Third Circuit further explained that defendant-Google was the intended recipient of website visitors' data because consumers' browsers transmitted the data directly to Google's servers. *Id.* at 142. Intended recipients are necessarily parties to a communication. *Id.* (affirming dismissal of an ECPA claim).

Here, Plaintiffs assume, but do not actually allege that Zeta was a third-party to their website communications and not a party itself. (*See* FAC ¶¶ 153–166.) In fact, their allegations confirm that Zeta is a party under the ECPA, because it was a direct and intended recipient of their

communications. (FAC ¶ 109) ("When the email is opened, the pixel transmits all the above data to Zeta's servers.") Like *In re Google*, the ECPA's party exception applies because the at-issue data was transmitted directly to Zeta's servers; it is thus an intended recipient of the information.

3. Plaintiffs Consented to Any Purported Interception

Even if Zeta were not a party to the communication, the ECPA's one-party consent exception applies. 18 U.S.C. § 2511(2)(d). When a consumer-facing business deploys website tracking technology, it clearly provides consent for the technology to engage in the alleged conduct. *See Cohen v. Casper Sleep Inc.*, No. 1:17-cv-9325, 2018 WL 3392877, at *3 (S.D.N.Y. July 12, 2018) (finding that retailers, as parties to the communications, gave consent to interceptions by the provider of a tracking technology which the retailers embedded onto their websites); *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (dismissing ECPA claim against a tool provider where its customers authorized its access to communications).

*Cohen v. Casper Sleep Inc.* is particularly instructive here. Like in *Cohen*, Plaintiffs allege that Zeta's customers (who are putative parties to communications) elect to use its products and services. According to Plaintiffs, websites like People.com, Horoscope.com, and Allrecipes.com are Zeta's "business clients" that embed the LiveIntent pixel into their marketing emails and web pages. (FAC ¶¶ 25, 32, 39, 46.) Indeed, such websites contract with Zeta to provide the very services and products about which Plaintiffs complain. (*See id.* at ¶¶ 60–61; Ex. A, at 5, "We work with some of the largest and most well-known enterprises across a wide spectrum of industry verticals including consumer & retail, telecommunications, financial services, business services and insurance[.]".) Zeta's customers do not gain access to its products and services for free—in fact, its customers enter contracts for these very purposes. Plaintiffs admit that consumer-facing businesses solicit Zeta's allegedly unlawful intercepting activity. Thus, such businesses consented to Zeta's alleged interceptions, warranting dismissal of the ECPA claims.

4. The ECPA's Crime-Tort Exception Does Not Apply

The ECPA's "crime-tort exception" does not apply to alter the one-party consent rule. This statutory exception is "construed narrowly" and applies when completing a crime or tort was the "primary motivation" or a "determinative factor" for an unlawful interception. *In re DoubleClick*, 154 F. Supp. 2d at 514–15. When assessing the "primary motivation" for an interception, courts consider "the purpose of the recording itself, not [] the purpose of the underlying communication." *Cohen*, 2018 WL 3392877, at *3. Thus, the exception is confined to instances where the interception is meant to harm the recorded party "such as to blackmail, threaten, or publicly embarrass" them. *Id.* (quoting *U.S. v. Jiau*, 734 F.2d 147, 152 (2d. Cir. 2013)). Further, the tortious or criminal purpose must occur at the time of the interception, and the "independent act of recording itself" is insufficient. *Caro*, 618 F.3d at 100; *Joiner v. NHL Enters., Inc.*, No. 1:23-cv-2083, 2025 WL 2846431, at *8 (S.D.N.Y. Aug. 29, 2025), *report and recommendation adopted in part*, 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025) (crime-tort exception did not apply).

Plaintiffs allege that Zeta had a tortious and/or criminal purpose in "disclosing the content of [their] communications," including: (1) the "unauthorized disclosure of PII, which is tortious regardless of whether the means deployed to disclose the information violates the ECPA"; (2) an intrusion upon seclusion; (3) using the data to create comprehensive profiles for targeted advertising; (4) trespass upon private property; and (5) a violation of 18 U.S.C. §§ 1343 and 1349, which prohibit attempt and conspiracy to commit wire fraud. (FAC ¶ 160.) These alleged purposes are neither true, nor sufficient for the ECPA's crime-tort exception. Again, Plaintiffs include "publicly available data" in the definition of PII that Zeta purportedly collects and further ignores the diminished expectation of privacy on the internet. (FAC ¶ 9.) Collecting and transmitting personal data is not unlawful, nor is using such data to generate "targeted" advertising. *Joiner*, 2025 WL 2846431, at *9 (holding that the mere allegation that defendants intended to

commercially profit from exploiting PII did not establish an ECPA claim); *In re DoubleClick*, 154 F. Supp. 2d at 510 ("Title II in no way outlaws collecting [PII]"). Moreover, when courts have found that this exception applies, it is in the context of alleged HIPAA violations (*see R.C.*, 733 F. Supp. 3d at 902) or other sensitive information (*see Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (applying exception in the context of financial data)).

**B. Plaintiffs' GBL Claims Fail for Lack of Injury.**

Plaintiffs bring a claim under New York GBL § 349, which prohibits any "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state[.]" N.Y. GBL § 349(a). To establish a Section 349 claim, a plaintiff must show that defendant engaged in a materially misleading, consumer-oriented business practice that caused an actual injury. *Cohen*, 2018 WL 3392877, at *7 (finding that an invasion of privacy based on the exposure of private data was not an actual injury for the GBL's purposes). Sensitive information that may lead to a statutory injury includes "confidential, individually identifiable information—such as medical records or a social security number[.]" *Cooper*, 742 F. Supp. 3d at 383–84 (finding that plaintiffs stated a claim under Section 349 where the privacy injury arose from disclosure of their personal health data); *Bonobos*, 2022 WL 170622, at *3–4 (finding email and IP addresses are "less sensitive" than social security numbers paired with individuals' names). The allegedly unlawful conduct itself does not fulfill the GBL's injury element. *Braynina v. TJX Companies, Inc.*, No. 1:15-cv-5897, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016) (quotes omitted).

Judge Pauley's decision in *Cohen* is compelling. There, plaintiff alleged that NaviStone, a marketing company and data broker, provided retailers with software that could "scan website visitors' computers for information that can be used for de-anonymization, [and] observe their keystrokes, mouse clicks, and communications with the e-commerce retailers' websites." 2018 WL 3392877, at *1. The software allegedly began tracking visitors' interactions "as soon as web

users visit" retail websites. *Id.* Further, plaintiff alleged that "NaviStone maintains a database containing profiles of U.S. consumers, including their names and addresses. When users browse websites containing the Code, NaviStone 'matches,' or compares, elements of the intercepted data to its database. When there is a match, NaviStone de-anonymizes website users and updates its database with the users' current browsing activities and PII." *Id.* at *2. The Court found that this type of information was not sensitive—unlike social security numbers and medical records—and therefore insufficient to satisfy the GBL's injury requirement. *Id.* at *7–8 (collecting cases).

Such is the case here. Plaintiffs allege that Zeta's business practices harmed them because Zeta took their money or property and offended their "privacy interests." (FAC ¶ 174.) Plaintiffs make the conclusory allegation that Zeta took Plaintiffs' money or property by collecting their data, but this is unsupported by the law in this Circuit. *See De Medicis*, 2022 WL 3043669, at *6 (explaining that personal information has no independent monetary value). And the abstract harm to Plaintiffs' "privacy interests" is insufficient because the data at issue is not sensitive. *See Cohen*, 2018 WL 3392877, at *7; *cf. Cooper*, 742 F. Supp. 3d at 383–84. Indeed, the information Plaintiffs complain about was not medical records or social security numbers, but was instead the names of celebrity gossip articles Plaintiffs read, their IP addresses, email addresses they used to sign up for newsletters, browser or device information, and publicly available demographic data. (FAC ¶¶ 9, 104, 109.) Courts have consistently found that the aggregation and use of such data does not satisfy the GBL's injury requirement. *See Cohen*, 2018 WL 3392877, at *8 (collecting cases). It is of no consequence that Plaintiffs allege Zeta compiles profiles of website visitors and stores such profiles on the ZMP (FAC ¶¶ 75–93), as this Court found that the invasion of privacy caused by NaviStone's analogous profiling and database practices did not amount to an injury under the GBL. *See Cohen*, 2018 WL 3392877, at *7–8. The same result should be reached here.

### C. Plaintiffs' UCL Claims Fail

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. § 17200. To succeed on a UCL claim, a plaintiff must allege (1) a violative practice, (2) that caused, (3) an injury. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019). A plaintiff must establish that they "suffered injury in fact and has lost money or property" due to the violative practice. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286–87 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023). Further, the UCL only protects California residents. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (finding that the UCL does not apply extraterritorially). Plaintiff R.E.A. is not a California resident, so her claim fails on this basis alone.

Plaintiffs K.G. and Ayerdi's claims fail for other reasons. Plaintiffs allege injury based on the purported disclosure of information. (FAC ¶ 170.) However, the "alleged disclosure of private information…is not lost money or property" under the UCL. *Martin*, 657 F. Supp. 3d at 287 (quotes omitted). Moreover, a plaintiff's personal information "does not constitute property." *Shah*, 768 F. Supp. 3d at 1048. While a plaintiff's personal data may be "valuable in the abstract," and a company "might have made money from it," that alone does not mean the plaintiff "lost money or property as a result." *Hazel v. Prudential Fin., Inc.*, No. 3:22-cv-07465, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (collecting cases and explaining that the "weight of the authority in the district and the state" find that "the mere misappropriation of personal information does not establish compensable damages") (quotes omitted).

Here, Plaintiffs' UCL claims fail for lack of statutory standing because they have not established an economic injury. Plaintiffs allege they suffered "a loss of property in the form of privacy violations, loss of control over their valuable data, and a failure to be compensated for the

data collected and sold." (FAC ¶ 184.) In the first instance, Plaintiffs' amorphous allegations of "privacy violations" are not property. *Martin*, 657 F. Supp. 3d at 287. Despite Plaintiffs' allegations that their data is "valuable" and that they are entitled to compensation for it, that does not establish an economic injury under the UCL. *Hazel*, 2023 WL 3933073, at *6 (dismissing a UCL claim because the at-issue data had no monetary value); *Katz-Lacabe*, 668 F. Supp. 3d at 943 (finding that the sharing of personal data to third-party technology vendors did not amount to a monetary or economic loss). This is true even when "there are allegations that the plaintiffs' personal data has a measurable monetary value and there is a market for such data that the plaintiffs could easily access." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Indeed, the alleged acquisition of personal data does not preclude a plaintiff from selling his data in the market he alleges exists. *See id.* Plaintiffs do not allege that Zeta's collection, use, and disclosure of their data prevented them from using or selling that data. Thus, Plaintiffs' UCL claim fails.

**D. Each CIPA Claim Should Be Dismissed.**

Plaintiffs bring claims under three provisions of CIPA—§§ 631, 632, and 638. As a threshold matter, New York's wiretapping law applies to this dispute, not CIPA. This alone dooms these claims. Even if this Court does not apply New York law, these claims are otherwise deficient.

1. <u>New York Law Applies and Does Not Recognize These Claims</u>

This District recently determined that, after a complete choice of law analysis, New York's wiretapping law applied, not Florida's. *Joiner*, 2025 WL 2846431, at *10–12. The same issue arises here, where New York's law differs from California's because New York is a one-party-consent state. *Id.* New York law also does not provide a private right of action for wiretapping, rendering Plaintiffs' claims moot. *Id.*; N.Y. Pen. Law § 250.00(1). New York law applies even where California plaintiffs are involved, because this Action involves New York-based Defendants (FAC ¶¶ 45, 48-49) and "courts in New York look to where the defendants engaged in the allegedly

wrongful conduct." *Joiner*, 2025 WL 2846431, at *11. As the court in *Joiner* found, irrespective of where the plaintiff is located, the "allegedly tortious conduct . . . was the placement of the Pixel on the NHL Website and the Team Websites." *Id.* Thus, because New York does not "permit private civil suits for wiretapping," these claims should be dismissed. *Id.* at *12.

To the extent the Court disagrees that New York law applies to claims by California Plaintiffs, there is no dispute that CIPA only applies to California residents and alleged interceptions occurring within California. *DellaSala v. Samba TV, Inc.*, No. 3:25-cv-03470, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (CIPA does not apply extraterritorially). Therefore, Plaintiff R.E.A.'s CIPA claims fail because she was a resident of New York when the alleged violation occurred. Plaintiffs Ayerdi and K.G.'s CIPA claims fail for myriad other reasons.

2. <u>CIPA Section 631</u>

Section 631 creates four distinct avenues for relief. Cal. Pen. Code § 631(a)(1)–(4). First, Section 631(a)(1) prohibits intentionally tapping or making an unauthorized connection with any "telegraph or telephone wire, line, cable, or instrument." *Id.* § 631(a)(1). Next, Section 631(a)(2) prohibits "read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" without consent of all parties. *Id.* § 631(a)(2). Third, Section 631(a)(3) prohibits using or attempting to use the information obtained from an underlying wiretap. *Id.* § 631(a)(3). Finally, Section 631(a)(4) imposes liability on anyone who aids or abets a violation of the preceding three clauses. *Id.* § 631(a)(4). Plaintiffs allege Zeta violated Sections 631(a)(1)–(3). (FAC ¶¶ 187–198.)

a. *Section 631(a)(1) Does Not Apply to Internet Communications.*

California courts regularly find that Section 631(a)(1) does not apply to internet communications, and only governs those made by "telegraph or telephone" technologies." *E.g.*, *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. Jul. 9, 2025) (affirming

summary judgment of a 631(a)(1) claim based on the use of website tools because no ”reasonable jury could conclude” that the alleged wiretap occurred through a telephonic system); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023) (dismissing a claim where plaintiff alleged using her smart phone's internet capabilities to communicate with defendant); *Ramos v. Gap, Inc.*, No. 4:23-cv-04715, 2024 WL 4351868, at *3 (N.D. Cal. Sept. 30, 2024) (dismissing a claim where a retailer allegedly deployed software that embedded tracking code into marketing emails); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (dismissing a claim regarding internet-based communications); *Garcia v. Build.com, Inc.*, No. 3:22-cv-1985, 2024 WL 1349035, at *5 (S.D. Cal. Mar. 29, 2024) (same).

Here, Plaintiffs only allege having internet communications with various websites. (FAC ¶¶ 26–28, 33–35, 40–42.) Plaintiffs plead no facts regarding any telephone-based communications. (*See generally* FAC.) Thus, they cannot sustain a claim under Section 631(a)(1), which only applies to telephone or telegraph communications. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 755.

b. *No Interception of "Contents" Occurred.*

Section 631(a)(2) prohibits unauthorized access to the "content of communications," which "does not include record information regarding the characteristics of the message that is generated in the course of the communication such as the name, address and subscriber number or identity of a subscriber or customer." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (quotes omitted) (dismissing Section 631(a) claim).

The analysis for whether "contents" of a communication were intercepted for a CIPA claim is the same as for an ECPA claim. *Yoon*, 549 F. Supp. 3d at 1082; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Cases that only bring CIPA claims nevertheless reach the same conclusions on what amounts to "contents." *E.g.*, *Brodsky*, 445 F. Supp. 3d at 127 (finding that text messages are contents, but usernames, passwords, and geolocations are not); *Mikulsky v.*

*Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding that "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more" are not contents). As set forth above, *supra section* IV.A.1., Plaintiffs failed to plead facts showing that Zeta intercepted the "contents" of their communications. Thus, their CIPA 631(a)(2) claim fails.

c. *No Interception "In Transit" Occurred.*

Section 631(a)(2) prohibits eavesdropping on a communication that is "in transit or passing over a wire, line, or cable." Cal. Pen. Code § 631(a)(2). Courts have acknowledged that due to the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (dismissing Wiretap Act and Section 631(a) claims related to email communications); *Torres v. Prudential Fin., Inc.*, No. 3:22-cv-07465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (dismissing Section 631(a) claims on summary judgment where there was no evidence that information users input on a website was intercepted in transit); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877–78 (9th Cir. 2002). And because internet communications travel so quickly, it is nearly impossible for an interception to occur while the communication is in transit. *NovelPoster*, 140 F. Supp. 3d at 951–52.

Here, Plaintiffs only make allegations related to their alleged internet communications. (*See generally* FAC.) Given the speed of internet communications, Plaintiffs cannot allege that an interception occurred while in-transit, rather than after that information was transmitted and stored to a third party. *See Torres*, 2025 WL 1135088, at *5 (dismissing Section 631(a) claims on summary judgment because "[e]ven if [the third-party] software intercepts the contents of Plaintiffs' communications in real time and stores the recording on [the third-party] server that [its] employees can access, nothing in the record plausibly indicates that [it] reads or attempts to

read the contents of the communication *while they are in transit*.") (emphasis in original). Since Plaintiffs fail to plead the required element of a communication intercepted while in transit, their Section 631(a)(2) claim should be dismissed.

d. *Even if an Interception Occurred, Plaintiffs Consented.*

Even if an interception of "contents" occurred while the communication was "in transit" such an interception would not be unlawful because Plaintiffs consented to the use of Zeta's software on the various websites they accessed. For example, Plaintiff K.G. concedes that she created an account on AllRecipes.com, which has a user interface that conditions signing up on the provision of consent to its terms and privacy policy.[3] (Ex. D.) These terms disclose that users' information may be shared with, or used by third parties (Ex. E), defeating the claim.

e. *There is No Underlying Wiretap to Trigger Section 631(a)(3).*

"A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of Section 631(a)." *St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024); *see also Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023) (collecting cases and finding that plaintiff's claim under Section 631(a)(3) necessarily failed because his claims under the first two clauses failed).

Here, Plaintiffs have failed to state a claim under Section 631(a)(1) and 631(a)(2). Thus, there is no underlying violation to trigger Section 631(a)(3). The Court should therefore dismiss this claim. *See St. Aubin*, 2024 WL 4369675, at *7; *Swarts*, 689 F. Supp. 3d at 744.

3. <u>CIPA Section 632</u>

Section 632(a) prohibits eavesdropping and recording *confidential* communications only. Cal. Pen. Code § 632(a). A communication is "confidential" when a party has "an objectively

---

[3] To the extent this Action proceed and discovery establishes that any Plaintiff agreed to arbitrate claims involving Zeta, Zeta reserves the right to invoke such arbitration provision.

reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, No. 3:20-cv-04688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (quotes omitted). Some courts have applied a presumption that internet-based communications are not "confidential," but others have deemed such communications confidential when they contain certain sensitive data, such as personal health information. *Compare Revitch v. New Moosejaw, LLC*, No. 3:18-cv-06827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (quotes omitted) (collecting cases and applying the presumption against confidentiality to retail website browsing); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (California appellate courts have generally found that internet communications are not confidential for CIPA 632 claims); *In re Google Inc.*, No. 13-md-02430, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) (same); *with In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (online health-related communications between patients and medical providers confidential); *M.G. v. Therapymatch, Inc.*, No. 3:23-cv-04422, 2025 WL 1447432, at *2 (N.D. Cal. May 19, 2025) (internet communications about mental health concerns and therapist preferences confidential); *Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501, 2025 WL 2052302, at *14 (N.D. Cal. Jul. 22, 2025) (mobile app-based chats about prescriptions, symptoms, and health treatments confidential).

Here, Plaintiffs fail to plausibly allege the interception of confidential communications. Plaintiffs merely parrot the statute by claiming that their "communications to online services are confidential" because they "had a reasonable expectation of privacy in this data." (FAC ¶ 202.) Not so. The alleged "confidential" data that Plaintiffs claim Zeta intercepted includes: (1) their email addresses; (2) websites they viewed; (3) the content of their website searches; and (4) their misplaced definition of PII that includes publicly available data. (FAC ¶¶ 9, 33–34, 40–41.) None of this data is the type of sensitive information, like health information, that is confidential under

Section 632. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; *Therapymatch, Inc.*, 2025 WL 1447432, at *2; *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14. In fact, these allegations are akin to the type of mundane internet browsing that *Revitch* court found to warrant applying a presumption *against* confidentiality. 2019 WL 5485330, at *3 (collecting cases).

In passing, Plaintiffs allege that Zeta intercepted their health information. (FAC ¶ 164.) Plaintiffs plead no facts in support of this allegation. (*See generally id.*) In any event, communications with these websites—celebrity gossip and cooking recipes—would not implicate health or other sensitive information. Thus, Plaintiffs Ayerdi and K.G.'s Section 632 claims fail because they do not allege the interception of a *confidential* communication.

4. <u>CIPA Section 638</u>

CIPA Section 638 creates liability for providers of electronic or wire communication services that install or use a "pen register" or a "trap and trace device" without obtaining consent or a court order. Cal. Pen. Code § 638.51. A pen register is a "a device or process that records or decodes dialing, routing, addressing, or signaling information" sent by an instrument "from which a wire or electronic communication is transmitted, *but not the contents of a communication*." *Id.* § 638.50(b) (emphasis added). Similarly, a trap and trace device is a "device or process that captures the incoming electronic or other impulses" which identify the "dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, *but not the contents of a communication*." *Id.* § 638.50(c) (emphasis added).

A pen register or trap and trace device records the "who" "when" and "where" of an electronic transmission, and definitionally excludes devices that capture the contents of communications. *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025). Decisions interpreting Section 638 suggest that CIPA Section 631 and 638 claims are mutually exclusive, because unlike Section 631, which codifies substantive privacy

rights, Section 638 only regulates the *manner in which* one may intercept communications. *See e.g. id.*; *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 5:25-cv-01473, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025); *Mitchener v. CuriosityStream, Inc.*, No. 5:25-cv-01471, 2025 WL 2272413, at *1 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025).

In any event, California courts have held that Section 638 does not even apply to internet communications or software deployed on websites. For example, in *Casillas v. BOP LLC*, the Superior Court of California dismissed a plaintiff's Section 638 claim on the merits without leave to amend. No. 24STCV15581, 2025 WL 2161288, at *5 (Cal. Super. June 18, 2025). There, the court held that a website's use of software that collects IP addresses does not violate Section 638, because this provision was not intended to criminalize routine website communications. *Id.*; *see also Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (finding that CIPA's legislative history suggests it applies to only telephone tracking technologies, not software used on websites to improve the effectiveness of marketing).

Here, Plaintiffs fail to allege facts giving rise to a plausible claim under CIPA 638.51. As a threshold matter, Zeta disputes that this provision is even applicable because Plaintiffs' allegations only relate to their website or Internet-based conduct. *See Sanchez*, 24STCV13201, 2025 WL 487194, at *3; *BOP LLC*, 2025 WL 2161288, at *2. Nevertheless, Plaintiffs' allegations are insufficient because their own descriptions of Zeta's products conflict with the definition of a pen register. Plaintiffs allege that Zeta: (1) engages in "widespread surveillance of consumers' online activity" (FAC ¶ 2); (2) tracked the webpages Plaintiffs viewed and the "*content*" of their searches (*id.* ¶¶ 26–27, 33–34, 40–41) (emphasis added); (3) "*vast amounts*" of customer data (*id.* ¶ 70) (emphasis added); and (4) "thousands of data points" including their names, home address,

information about their children, and their website browsing preferences (*id.* ¶¶ 80–82).

Plaintiffs' allegations regarding the broad scope of data collected are fatal to their Section 638 claims. Plaintiffs cannot claim, on the one hand, that Zeta collects "vast amounts" of consumer data from various independent sources, none of which is unlawful, and includes the "contents" of communications, and on the other hand, claim that Zeta's products are pen registers or trap and trace devices. This conflicts with the statutory definitions of these tools. Cal. Pen. Code § 638.50(b)–(c). And Plaintiffs' parroting the language of Section 638 (FAC ¶¶ 211–22) is insufficient because the FAC is otherwise flooded with allegations of Zeta's purportedly far-reaching data collection practices. *See Price*, 2025 WL 1237977, at *3; *Kishnani*, 2025 WL 1745726, at *4; *Mitchener*, 2025 WL 2272413, at *1.

**E. Plaintiffs' CDAFA Claim Fails Because Plaintiffs Did Not Suffer an Injury**

CDAFA is a criminal statute that was enacted to combat computer crime and hacking. Cal. Pen. Code § 502; *Heiting v. Taro Pharm. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. Dec. 26, 2023). At the outset, Plaintiff R.E.A.'s claims cannot proceed, because she is not a California resident, and CDAFA only protects Californians. *See DellaSala*, 2025 WL 3034069, at *4. Plaintiffs Ayerdi and K.G.'s CDAFA claims fail for other reasons.

"To have standing to bring a civil claim under CDAFA, an individual must have suffered 'damage or loss by reason of a violation' of the statute." *Doe I*, 741 F. Supp. 3d at 846 (citing Cal. Pen. Code §502(e)(1)). Specifically, "CDAFA allows compensatory damages for 'any expenditure reasonably and necessarily incurred' by the computer owner 'to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted' by unlawful access." *Id.* at 846–47 (citing Cal. Penal Code § 502(e)(1)) (finding plaintiffs' allegations of "lost storage, disk space, and performance, and their alleged inability to communicate with their providers" were inadequate). In *Doe I*, for instance, the court explained that "it is not obvious"

how the existence of website cookie's on one's device "would result in any cognizable reduction in storage, disk space, or performance." *Id.* at 846. It is insufficient to simply plead a harm to one's device, without pleading plausible facts to support that claim. *See id.* Moreover, most courts have found that CDAFA "contemplates some damage to the computer system, network, program, or data contained on that computer, *as opposed to data generated by a plaintiff while engaging with a defendant's website*." *Heiting*, 709 F. Supp. 3d at 1021 (emphasis added) (collecting cases).

Most courts also reject the theory that invasions of privacy, such as the loss of control over one's data, lost value of one's data, and the inability to protect one's data, is an injury within the meaning of CDAFA. *Id.* (collecting cases); *Shah*, 768 F. Supp. 3d at 1048 (dismissing CDAFA claim because diminution of value of personal data does not confer standing); *Doe v. County of Santa Clara*, No. 3:23-cv-04411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (dismissing CDAFA claim where plaintiffs allege a theory of loss based on the monetary value of their data).

Here, Plaintiffs lack statutory standing to pursue claims under CDAFA. As a preliminary matter, Plaintiffs fail to allege that they reasonably and necessarily incurred any expenditures to verify that their computers and data were not damaged by unlawful access, which is all that CDAFA provides damages for. Cal. Pen. Code § 502(e)(1). Indeed, Plaintiffs allege two types of harms: (1) generalized invasions of privacy based on the lost control and value of their data; and (2) device defects that are untethered to the named Plaintiffs and are unsupported by any factual allegations. Both are deficient. First, California law is clear that being "deprived [] of control" over personal data, "the ability to receive compensation for that data, and…to withhold their data for sale" are insufficient to confer standing under CDAFA. (FAC ¶ 233); *e.g., Doe I*, 741 F. Supp. 3d at 846; *Shah*, 768 F. Supp. 3d at 1048; *Heiting*, 709 F. Supp. 3d at 1019–20 (collecting cases).

That leaves Plaintiffs' allegations that Zeta's practices "causes data to be stored in Plaintiffs' and California Class members' local storage, impacts CPU load time, and takes up bandwidth," which purportedly impacts device battery life, causes slower load times, and can result in additional charges depending on the individual's data plan. (FAC ¶ 234.) This allegation is deficient. First, Plaintiffs do not allege that their own devices began operating slowly, suffered from failing batteries, or that they experienced increase charges related to data use. (*See generally id.*) Next, these allegations are speculative and hypothesize the types of usages and results, without any factual support. (*See id.* at ¶ 234.) Next, Plaintiffs' claims are based on their online engagement with retail businesses that may embed Zeta's technology in marketing emails, advertisements, and websites. (*See generally id.*) They do not, and cannot plausibly allege that Zeta's tools, by being deployed on a website and accessed through a web browser (not downloaded to a device), harms their own devices. *See Doe I*, 741 F. Supp. 3d at 846; *Heiting*, 709 F. Supp. 3d at 1019–20. If this were sufficient, every website owner could be subject to a CDAFA claim, despite the ubiquitous nature of analytics and marketing tools. Thus, the CDAFA claim fails.

### F. Plaintiffs' Invasion of Privacy Claims Fail for Lack of a Reasonable Expectation of Privacy and Highly Offensive Conduct

Plaintiffs bring invasion of privacy claims under California's Constitution and California common law. New York law—not California law—applies here. New York does not recognize the tort of intrusion upon seclusion, nor does its Constitution confer substantive privacy rights. *Joiner*, 2025 WL 2846431, at *4; *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 379 (S.D.N.Y. 2025); *see generally* NY Const. Even if California law applies, Plaintiff R.E.A.'s claims fail, because she is not and was not a California resident. (FAC ¶ 24); *see DellaSala*, 2025 WL 3034069, at *3. Plaintiffs K.G. and Ayerdi also cannot sustain claims, despite being California residents.

"The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). When both are alleged in the same pleading, courts assess them together. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (quotes omitted). For both claims, courts consider: "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Id.*

First, there is no reasonable expectation of privacy in ordinary website browsing, "when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). There is also no reasonable expectation of privacy in "basic identification and address information," search terms input on a website, and IP address information. *Id.*; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 933, n. 5 (N.D. Cal. 2015); *Bradshaw v. Lowe's Cos., Inc.*, No. 3:25-cv-0742, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (collecting cases). Such information, unlike that related to one's medical information, is not sensitive. *Id.*

Next, deciding whether conduct amounts to a highly offensive intrusion of privacy requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hammerling*, 615 F. Supp. 3d at 1090. Courts have consistently found that "data collection and disclosure to third parties that is 'routine commercial behavior'" is not highly offensive conduct. *Id.* (collecting cases). Commonplace website data collection is not the type of egregious conduct that gives rise to an invasion of privacy claim. *See, e.g.*, *Low*, 900 F. Supp. 2d at 1025 (dismissing invasion of privacy claims where defendant disclosed browsing histories); *In re iPhone Application Litig.*, 844

F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding disclosures of device identifiers, personal information, and geolocation were not an "egregious breach of social norms"). For example, in *In re Google, Inc. Priv. Pol'y Litig.*, the court found that logging "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" about consumers who use Google is not highly offensive conduct. 58 F. Supp. 3d 968, 973, 988 (N.D Cal. 2014). This was true even when Google used such data to "place advertisements that are tailored to each consumer while the consumer is…browsing third-party sites that have partnered with Google to serve targeted ads." *Id.* For these reasons, plaintiffs' common law privacy claims failed. *Id.* at 973–74.

Here, Plaintiffs fail to plausibly plead either requirement. Plaintiffs allege that they have a reasonable expectation of privacy in their "personal information, identities, and private data" as well as their "private online communications" and unique identifiers. (FAC ¶¶ 242, 253.) Plaintiffs' definition of PII, however, encompasses "publicly available data." (*Id.* ¶ 9.) Surely, there can be no reasonable expectation of privacy in data that is already available to the public at large. The remaining types of data collection Plaintiffs complain about is "routine commercial behavior" which California courts find lack a reasonable expectation of privacy. *See Hammerling*, 615 F. Supp. 3d at 1090; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at n. 5.

Here, even if Plaintiffs did have a reasonable expectation of privacy in the at-issue data, Zeta's allegedly unlawful collection, disclosure, and use is not highly offensive, egregious conduct, that violates social norms. *In re Google, Inc. Priv. Pol'y Litig.* is squarely on point. 58 F. Supp. 3d at 974. The type of data allegedly collected there—personally identifying data, browsing habits, search entries, advertisement responsiveness, demographic data, and more—is similar to that which Plaintiffs allege Zeta collects—behavioral data, demographic data, contact information,

consumer preferences, browsing data, search entries, and more. *See id.*; (FAC ¶¶ 9, 77, 80, 84.) As in *In re Google*, Zeta's alleged collection of this data, and using it to tailor advertisements, is not highly offensive conduct under the law. *See* 58 F. Supp. 3d at 988; (FAC ¶ 10.).

### G. Plaintiffs' Unjust Enrichment Claim Fails, Because It Is Duplicative.

Plaintiffs bring a cause of action for unjust enrichment without invoking any specific state's substantive law. (*See* FAC ¶¶ 266–273.) "The law of the forum state governs where, as here, neither party alleges that the law of a different state would control and differs from New York law." *Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d 470, 503, at n. 19 (S.D.N.Y. 2025) (quotes omitted). Thus, New York law applies.

To state a claim for unjust enrichment in New York, a plaintiff must show that the defendant was enriched, at the plaintiff's expense, and "equity and good conscience militate against permitting defendant to retain what [the] plaintiff is seeking to recover." *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 812 (S.D.N.Y. 2025) (alteration in original) (quotes omitted). An unjust enrichment claim fails, when it functions as a "catchall cause of action" that "simply duplicates, or replaces, a conventional contract or tort claim." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) (Engelmayer, J.).

Courts in the Second Circuit consistently find unjust enrichment claims duplicative of GBL or other statutory claims. *See, e.g.*, *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 586–87 (S.D.N.Y. Feb. 6, 2024) (Englemayer, J.) (dismissing an unjust enrichment claim that as duplicative of GBL claims); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (same); *Afriyie*, 775 F. Supp. 3d at 813 (dismissing an unjust enrichment claim that "rests on the same allegedly tortious conduct" as other claims); *Golden*, 688 F. Supp. 3d at 168 (same); *Gay v. Garnet Health*, 7:23-cv-06950, 2024 WL 4203263, at *6 (S.D.N.Y. Sept. 16, 2024) (dismissing unjust enrichment claim with duplicative allegations about the disclosure of

plaintiffs' data); *Ohanian v. Apple Inc.*, No. 1:20-cv-5162, 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) (same). Indeed, an unjust enrichment claim that is "premised on the same factual allegations as those supporting a plaintiff's other claims," should be dismissed, absent allegations of distinct damages for unjust enrichment. *Carovillano*, 715 F. Supp. 3d at 586 (quotes omitted).

Here, Plaintiffs' unjust enrichment claim is another iteration of their GBL, ECPA, common law, and other statutory claims. It is based on the same conduct—the allegedly unauthorized collection, use, and disclosure of personal data—that Plaintiffs argue amounts to illegal wiretapping and unlawful business practices. (*Compare* FAC ¶¶ 268–69 *with* ¶¶ 156, 165 *and* ¶¶ 170, 174.) For this reason alone, it should be dismissed. *See Carovillano*, 715 F. Supp. 3d at 586; *Barton*, 535 F. Supp. 3d at 249; *Afriyie*, 775 F. Supp. 3d at 813; *Golden*, 688 F. Supp. 3d at 168; *Gay*, 2024 WL 4203263, at *6; *Ohanian*, 2022 WL 826415, at *4. If Plaintiffs' other claims survive, the unjust enrichment claim remains duplicative. *See Golden*, 688 F. Supp. 3d at 168. If Plaintiffs' other claims fail, the unjust enrichment claim "cannot remedy the defects." *Id.* (quotes omitted). Thus, the Court should dismiss Plaintiffs' unjust enrichment claim.

**H. Plaintiffs' Request for Relief Under the DJA Should Be Denied.**

Plaintiffs seek a declaratory judgment under the DJA, 28 U.S.C. § 2201(a), which offers equitable relief that is otherwise unavailable in a dispute. *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). The DJA offers a remedy, not a cause of action. *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 606 (S.D.N.Y. 2022). If a plaintiff's underlying legal claims are dismissed, then there is no active dispute to award a declaratory judgment. *Id.* (explaining that the DJA "only created a procedural mechanism" and not a substantive legal right). Indeed, a "necessary prerequisite to the exercise of judicial power [] is the presence before a court of a claim of substantive right." *In re Joint E. & S. Dist.*, 14 F.3d at 730. When no substantive right is at issue, *e.g.*, the plaintiff's legal claims are dismissed, claims under the DJA must also be

dismissed. *E.g.*, *Wahab v. Evolutions Hair Salon, LLC*, No. 1:24-cv-05641, 2025 WL 2400036, at *4 (S.D.N.Y. Aug. 19, 2025); *Melendez v. Raaka Chocolate, Inc.*, No. 1:23-cv-9532, 2025 WL 2773006, at *10 (E.D.N.Y. Sept. 28, 2025) ("Because the Court dismisses Plaintiff's substantive claims here, it must dismiss Plaintiff's declaratory judgment claim as well.").

Here, Plaintiffs cannot obtain relief under the DJA. Plaintiffs ask the Court to enter a declaratory judgment against Zeta and issue injunctive relief, to prevent them from suffering a purported irreparable injury. (FAC ¶¶ 279–81.) Yet, as set forth above, Plaintiffs' substantive claims fail because they lack Article III standing, and even if they did have standing, their claims fail as a matter of law because they cannot establish all the elements of each claim. Because Plaintiffs' legal claims fail, the Court will not have the prerequisite to exercise judicial power. *See In re Joint E. & S. Dist.*, 14 F. 3d at 730. Thus, Plaintiffs' request for relief under the DJA must also be dismissed. *See Wahab*, 2025 WL 2400036, at *4; *Melendez,* 2025 WL 2773006, at *10.

## III. THE COURT SHOULD DISMISS THE FAC WITH PREJUDICE.

Plaintiffs had two opportunities to state a claim: their original Complaints and the FAC. The FAC fails to remedy the factual deficiencies that permeated each of the individual complaints. Plaintiffs "clearly ha[ve] no right to a second amendment even if [it] in fact cures the defects of the first." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018). "Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Id.* at 258. Thus, the FAC should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Zeta respectfully requests that the Court dismisses the FAC with prejudice.

Dated: January 5, 2026

KELLEY DRYE & WARREN LLP

By: */s/ Whitney M. Smith*

Whitney M. Smith
Danielle J. Terracciano
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
wsmith@kelleydrye.com
dterracciano@kelleydrye.com

Lauri A. Mazzuchetti*
7 Giralda Farms, Ste. 340
Madison, NJ 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com

**pro hac vice forthcoming*

*Counsel for Defendant Zeta Global Holdings Corp.*

**TYPE-VOLUME CERTIFICATION**

Pursuant to Local Civil Rule 7.1, the undersigned counsel of record hereby certifies that this memorandum contains 11,936 words, which complies with the word-count limitations of Local Civil Rule 7.1(c) and this Court's Order dated December 22, 2025. This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

By: *_/s/ Whitney M. Smith_*
Whitney M. Smith