**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIANE AYERDI,

Plaintiff,

v.

ZETA GLOBAL HOLIDINGS CORP., *et al.*,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOTDASH MEREDITH INC.'S MOTION TO DISMISS**

Case No.: 1:25-cv-05780 (PAE)

Dated: January 5, 2026

By: /s/ Aaron S. Weiss

Aaron S. Weiss
Email: aweiss@carltonfields.com
Michael Margulies
Email: mmargulies@carltonfields.com
Carlton Fields, P.A
730 Third Avenue, 19th Floor
New York, New York 10017
Telephone: 212-785-2577

*Attorneys for Defendant Dotdash Meredith Inc.*

# TABLE OF CONTENTS


**Page**

I. Introduction ..... 1

II. BACKGROUND ..... 3

III. LEGAL STANDARDS ..... 5

A. Rule 12(b)(1) ..... 5

B. Rule 12(b)(6) ..... 6

IV. ARGUMENT ..... 6

A. Plaintiffs Lack Article III Standing ..... 6

1. Plaintiffs' Allegations of a Mere Procedural Violation Do Not Confer Standing ..... 7

2. Plaintiffs' alleged harm does not bear a close relationship to harms traditionally recognized at common law ..... 9

i. The disclosure of Plaintiffs' basic information is not highly offensive to a reasonable person ..... 9

B. Plaintiffs' California Law Claims Are Barred By New York Law ..... 11

C. Plaintiffs Fail To Plead A Claim Under N.Y. General Business Law ..... 16

D. Plaintiffs Fail To Plead a Claim Under the California Unfair Competition Law ..... 18

E. Plaintiffs' Claim Under California's Invasion of Privacy Act Fails to State a Cause of Action ..... 19

F. Plaintiffs Do Not Sufficiently Plead A Claim Under the California Comprehensive Computer Data Access and Fraud Act ..... 23

G. Plaintiffs Fail To Plead A Violation Of The Right To Privacy Under The California Constitution ..... 26

H. Plaintiffs Fail To Plead A Claim For Unjust Enrichment ..... 28

I. Plaintiffs Fail To Plead A Claim For Declaratory Relief ..... 29

V. Conclusion ..... 30

CERTIFICATE OF SERVICE ..... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Tops Markets, LLC*,
2023 WL 4828029 (W.D.N.Y. July 7, 2023) .......... 13, 15

*AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*,
661 F. App'x 2 (2d Cir. 2016) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 19, 22

*Bellumini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) .......... 26

*Berman v. Freedom Fin. Network, LLC*,
400 F. Supp. 3d 964 (N.D. Cal. 2019) .......... 5

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......... 19

*Catalanello v. Kramer*,
18 F. Supp. 3d 504 (S.D.N.Y. 2014) (Engelmayer, J.) .......... 12, 14

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020*), objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021) .......... 5

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009) .......... 17

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) .......... 16

*Ciccone v. Cavalry Portfolio Servs., LLC*,
2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) .......... 9, 10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................21, 22

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018)....................17

*Cooper v. Bonobos, Inc.*,
2022 WL 170622 (S.D.N.Y. Jan. 19, 2022)....................10

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*,
790 F.3d 411 (2d Cir. 2015)....................5

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015)....................23

*Edelman v. Starwood Capital Grp., LLC*,
70 A.D.3d 246, 892 N.Y.S.2d 37 (1st Dep't 2009)....................28

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)....................25, 26

*In re Facebook, Inc. v. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................29

*Forby v. One Technologies, LP*,
2020 WL 4201604 (N.D. Tex. July 22, 2020)....................5

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
449 F.3d 377 (2d Cir. 2006)....................11, 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................22

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021)....................29

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011)....................19

*Grand River Enters. Six Nations, Ltd. v. Boughton*,
988 F.3d 114 (2d Cir. 2021)....................5

*Grasso v. Grasso, Jr.*,
2010 WL 3806388 (N.D.N.Y. Sept. 22, 2010)....................14

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)....................24, 25

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........ 30

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 29

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal.4th 1 (1994) ........ 27

*Hu v. Whaleco, Inc.*,
779 F. Supp. 3d 265 (E.D.N.Y. 2024) ........ 12

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........ 19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 10

*Jensen v. Cablevision Systems Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ........ 5

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ........ 27

*Jofen v. Epoch Biosciences, Inc.*,
2002 WL 1461351 (S.D.N.Y. July 8, 2002) ........ 28

*Joiner v. NHL Enters., Inc.*,
2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ........ 12, 13, 15

*Jones v. Abel*,
2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025) ........ 13

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 21

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017) ........ 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 28

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
574 F. Supp. 3d 205 (S.D.N.Y. 2021) ........ 6

*Lane v. Fein, Such & Crane, LLP*,
767 F. Supp. 2d 382 (E.D.N.Y. 2011) ........ 17

*Liau v. Weee! Inc.*,
2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) (Engelmayer, J.) .......................................... 9, 10

*Liberian Cmty. Ass'n of Conn. v. Lamont*,
970 F.3d 174 (2d Cir. 2020) ....................................................................................... 6

*Licci v. Lebanese Canadian Bank, SAL*,
739 F.3d 45 (2d Cir. 2013) ......................................................................................... 11

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ................................................................ 8

*Loftus v. Signpost Inc.*,
464 F. Supp. 3d 524 (S.D.N.Y. 2020) ........................................................................ 12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................... 27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................. 7

*In re Mid–Island Hosp., Inc.*,
276 F.3d 123 (2d Cir. 2002) ....................................................................................... 28

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal. July 17, 2023) ............................................................... 10

*Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*,
55 F. Supp. 2d 177 (S.D.N.Y. 1999) .......................................................................... 14

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ............................................................................. 17, 18

*Pablo v. Servicemaster Global Holdings, Inc.*,
2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ................................................................ 5

*Poppel v. Est. of Archibald*,
2020 WL 2749719 (S.D.N.Y. May 27, 2020) ............................................................... 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ....................................................................... 20

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................................................. 22

*Rodriguez v. It's Just Lunch, Int'l*,
300 F.R.D. 125 (S.D.N.Y. 2014) ................................................................................ 11

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008)....................................................................19

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021)........................................................................27

*Schultz v. Boy Scouts of Am., Inc.*,
65 N.Y.2d 189 (1985)..............................................................................................11

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)...........................................................18, 26

*Shostack v. Diller*,
2016 WL 958687 (S.D.N.Y. Mar. 8, 2016)...............................................................17

*Sikhs for Just. v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012).......................................................................12

*Sliwa v. Bright House Networks, LLC*,
333 F.R.D. 255 (M.D. Fla. 2019)................................................................................5

*Smidga v. Spirit Airlines, Inc.*,
2024 WL 1485853 (W.D. Pa. Apr. 5, 2024)..............................................................27

*Smith v. Chase Manhattan Bank, USA, N.A.*,
293 A.D.2d 598 (N.Y. App. Div. 2002) ....................................................................17

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)......................................................................23

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......................................................................................12

*Spencer v. Kemna*,
523 U.S. 1 (1998)...................................................................................................6, 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ...................................................................................................6

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016) .......................................................................................8

*TD Auto Fin. LLC v. Cnty. of Putnam*,
2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023)...........................................................29

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)..............................................................27

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7, 8

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) .......... 18

*Wall v. CSX Transp., Inc.*,
471 F.3d 410 (2d Cir. 2006) .......... 16

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 16

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 20, 21

*Wilson v. Triller, Inc.*,
2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) .......... 6

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) (Engelmayer, J.) .......... 7, 8, 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 26

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 21, 27

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......... 18

Cal. Penal Code § 631(a) .......... 19, 20, 21, 22

California Comprehensive Computer Data Access and Fraud Act §§ 502(c)(6) and (c)(13) .......... 24

California Comprehensive Computer Data Access and Fraud Act .......... *passim*

California's Comprehensive Computer Data Access and Fraud Act .......... 1, 2

California's Unfair Competition Law .......... 1

California Unfair Competition Law .......... *passim*

Class Action Fairness Act of 2005 .......... 11

Comprehensive Computer Data Access and Fraud Act .......... 14

Declaratory Judgment Act .......... 29

federal Computer Fraud and Abuse Act .......... 14

N.Y. General Business Law .......... 16, 17

N.Y. General Business Law § 349's .......... 17

N.Y. Penal Law § 250.00 .......... 14

New York General Business Law .......... 2, 16

New York's General Business Law .......... 15

New York's General Business Law § 349 .......... 1, 16, 17

Privacy Act .......... *passim*

Privacy Act (Cal. Penal Code § 631) .......... 1

R.E.A. .......... 1, 4

**Other Authorities**

California Constitution .......... 26

Fed. R. Civ. P. 12(b)(1) .......... 2, 5, 6

Fed. R. Civ. P. 12(b)(6) .......... 2, 6, 20

## I. INTRODUCTION

On November 20, 2025, Plaintiffs R.E.A., K.G. and Diane Ayerdi ("Plaintiffs") filed their First Amended Consolidated Complaint ("First Amended Complaint") against Dotdash Meredith, Inc. ("Dotdash"), Zeta Global Corporation, and Zeta Global Holdings Corporation (collectively, "Zeta"). [ECF No. 35]. As Plaintiffs allege, Dotdash is a media company specializing in digital and print publishing, operating a portfolio of media brands that publish articles on multiple websites. *See, e.g.,* Compl. ¶ 101. Plaintiffs generally allege that, in the course of visiting various websites that utilized Zeta's LiveIntent pixel tracking technology—including websites associated with Dotdash publications—their personal identifying information was obtained without their consent, in violation of their right to privacy.

Plaintiffs' First Amended Complaint raises seven causes of action against Dotdash as follows:

- Count 2: Violation of New York's General Business Law § 349
- Count 3: Violation of California's Unfair Competition Law
- Count 4: Violations of California's Invasion of Privacy Act (Cal. Penal Code § 631)
- Count 7: Violations of California's Comprehensive Computer Data Access and Fraud Act
- Count 8: Violations of California's Constitutional Right to Privacy
- Count 10: (Common Law) Unjust Enrichment
- Count 11: Declaratory Judgment.

The First Amended Complaint should be dismissed for several reasons.

*First*, all of the counts should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiffs have not alleged that they have suffered an injury in fact that would be sufficient to establish Article III standing.

*Second*, notwithstanding that the allegations in the First Amended Complaint are accepted as true for purposes of standing, all of Plaintiffs' claims that are asserted arising under California law—the California Unfair Competition Law claim, the California's Invasion of Privacy Act claim, the California's Comprehensive Computer Data Access and Fraud Act claim, and violations of California's Constitutional Right to Privacy—should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because New York law governs Plaintiffs' state law claims. Where, according to the First Amended Complaint, the allegedly wrongful conduct—Dotdash and Zetas' interception and use of Plaintiffs' personal identifying information—occurred in New York, New York has the greatest interest in this litigation. As a result, New York law—not California law—applies.

Count 2—the New York General Business Law claim—should be dismissed because Plaintiffs have merely alleged an unquantifiable injury to a privacy interest, which is insufficient.

Count 3—the California Unfair Competition Law claim—fails because Plaintiffs do not allege they lost money or property as a result of any unlawful, unfair, or deceptive business practice, and they therefore lack statutory standing to sue.

Count 4—the California Invasion of Privacy Act claim—should be dismissed because Plaintiffs have failed to allege that Dotdash aided, agreed with, or employed Zeta to perform acts that violate California's wiretapping statute.

Count 7—the California Comprehensive Computer Data Access and Fraud Act claim—fails because Plaintiffs do not allege that Dotdash circumvented technical barriers to gain access to a computer, computer network, or website.

Count 8—Violation of California's Constitutional Right to Privacy—should be dismissed because Plaintiffs had no reasonable expectation of privacy in the information allegedly collected by Zeta's LiveIntent tracking pixel.

Count 10 for Unjust Enrichment is fatally deficient because Plaintiffs have failed to allege that Dotdash unjustly retained a benefit at Plaintiffs' expense.

Count 11 for Declaratory Judgment cannot stand because the relief sought in this claim is duplicative of the relief sought in other claims.

## II. BACKGROUND

Plaintiffs allege that Dotdash uses Zeta's LiveIntent pixel technology, primarily by embedding it in email correspondence sent to subscribers of its publications' newsletters. Compl. ¶ 46. Plaintiffs allege that by "[u]sing this technology, Defendant Dotdash facilitated Zeta's interception of Plaintiffs' and Class members' private data and PII, which Zeta used to develop AI-enriched user profiles for targeted advertising." *Id*. at ¶ 47.

Plaintiffs allege that they subscribed to email newsletters offered by Dotdash's publications. *Id*. at ¶ 115. For example, Plaintiff Ayerdi alleges that "[w]hile on [People.com's] website, [she] subscribed to a newsletter offered by People … by

submitting her email address in a webform. Plaintiff Ayerdi then received an email newsletter from People (and Dotdash) that contained Zeta's LiveIntent tracking pixel." *Id*. at ¶ 103. Plaintiff R.E.A. and Plaintiff K.G. are also summarily alleged to have subscribed on other websites to email newsletters that were similarly embedded with the tracking pixel. *Id*. at ¶ 115.[1]

Zeta's LiveIntent pixel purportedly collected Plaintiffs' "email address[es], campaign identifiers, [] device and client information, and unique impression IDs," which, according to the First Amended Complaint, became part of an "existing profile *Zeta* maintained about" Plaintiffs. *Id*. at ¶ 109 (emphasis added); *see also* ¶ 115. The First Amended Complaint also alleges that Zeta began tracking Plaintiff Ayerdi "[i]mmediately upon using" People.com's website, through Zeta's LiveIntent tracking pixel. *Id*. at ¶ 104. According to the First Amended Complaint, "[t]his pixel intercepted the full name of the article and other content viewed by Plaintiff Ayerdi, as well as several cookies used to identify her on the website and other metadata." *Id*. The First Amended Complaint alleges that "Zeta processed and stored" the data it obtained about Plaintiffs from the tracking pixel "to target Plaintiff[s] with its business clients' ads." *Id*. at ¶¶ 27, 29, 34, 36, 41, 43.

Dotdash also notes that the class, as defined by Plaintiffs, includes many individuals who are required to pursue any claims against Dotdash in arbitration on an individual basis. Dotdash will raise such arguments at the appropriate time. *See*

[1] At this time, Dotdash has not been able to ascertain the nature and type of subscriptions each of the Plaintiffs had to its respective publications because Dotdash has not yet been provided with the email addresses for the Plaintiffs.

*e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019).[2]

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when (as in the case at bar) the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citations and quotations omitted). To establish Article III standing, a plaintiff must show that she has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 120 (2d Cir. 2021) (citations omitted). The injury in fact "must be 'concrete and particularized' and

[2] While Dotdash understands that it is not required to (and may not) move to compel arbitration against unnamed members of the putative class, it would expect to raise the arbitration issue as an argument against class certification of the case proceeds to that stage. *See, e.g., Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 281 (M.D. Fla. 2019) (denying class certification in a privacy related class action where resolving which class members are subject to arbitration would "require significant individualized inquiries."); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 986 (N.D. Cal. 2019) (denying certification in a consumer protection class action where the "litigation of the … arbitration defenses applicable to absent class members threaten[ed] to overwhelm other issues in the litigation."); *Forby v. One Technologies, LP*, 2020 WL 4201604, *9 (N.D. Tex. July 22, 2020) (striking class allegations where plaintiff opted out of arbitration but at least many putative class members were subject to arbitration); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 124 (E.D.N.Y. 2019) (denying class certification based on lack of typicality where many class members other than the named plaintiff were subject to arbitration); *Pablo v. Servicemaster Global Holdings, Inc.*, 2011 WL 3476473, *2–3 (N.D. Cal. Aug. 9, 2011) (denying class certification where it was unclear how many putative class were subject to arbitration).

'actual or imminent, not conjectural or hypothetical.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citation omitted).

When subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), as it is here, the plaintiff has the burden of proving jurisdiction to survive the motion. *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) This burden requires a plaintiff to "clearly … allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Id.* (internal quotations omitted). Plaintiffs have not done that.

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court generally accepts factual assertions as true, it does not credit "conclusory statements" or "threadbare recitals," *Wilson v. Triller, Inc.*, 2022 WL 1138073, at *3 (S.D.N.Y. Apr. 18, 2022), nor does it give any weight to "general allegations that are contradicted by more specific allegations in the [c]omplaint," *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 217 (S.D.N.Y. 2021) (citation omitted).

## IV. ARGUMENT

### A. Plaintiffs Lack Article III Standing

Each of Plaintiffs' claims against Dotdash should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction because Plaintiffs

cannot meet their burden of establishing they have suffered an injury sufficient to confer Article III standing. *Spencer v. Kemna*, 523 U.S. 1, 11 (1998).

#### 1. Plaintiffs' Allegations of a Mere Procedural Violation Do Not Confer Standing

Plaintiffs lack Article III standing because the First Amended Complaint does not allege they have suffered a concrete injury in fact.[3] An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized [] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). In other words, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). "An allegation of bare procedural violations, divorced from any concrete harm, does not suffice for Article III standing" *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (Engelmayer, J.) (cleaned up).

"Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427 (emphasis in original); *see also Katz v. Donna*

[3] For purposes of the standing analysis, Dotdash assumes that Plaintiffs' allegations in the First Amended Complaint are accepted as true. Nonetheless, Dotdash notes that Plaintiffs' claims arising under California law are being challenged on choice of law grounds as well. *See* IV(B), *infra*.

*Karan Co., L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). For a mere statutory violation to qualify as concrete harm for purposes of standing, the violation must bear a "close relationship to a harm traditionally recognized as providing a basis for lawsuits in American courts"—such as invasion of privacy—if the facts supporting such an injury are adequately alleged. *TransUnion*, 594 U.S. at 432; *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) ("[E]ven where, as here, Congress has statutorily conferred legal interests on consumers, a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest."). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424.

Plaintiffs allege that their "email address, campaign identifiers, [] device and client information, and unique impression IDs" were tracked through Zeta's LiveIntent tracking pixel, allegedly violating California's Invasion of Privacy Act and other statutes. Compl. ¶¶ 109, 115. Plaintiffs also allege that the pixel tracked "content viewed," as well as "several cookies" that could identify them on the website and "other metadata." *Id.* at ¶ 104. Plaintiffs fail to allege how they could have plausibly been harmed by the collection of this information. At most, Plaintiffs allege they received targeted advertisements. *See id.* at ¶¶ 27, 29, 34, 36, 41, 43. But Plaintiffs fail to allege that they were "concretely harmed by any such advertising." *Xu*, 2025 WL 488501, at *3. Without more, Plaintiffs' bare procedural violations are insufficient to confer standing. *See, e.g.*, *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (dismissing for lack of standing because "a

bare [California Invasion of Privacy Act] violation by itself is insufficient to demonstrate Article III injury in fact"); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3–4 (C.D. Cal. Apr. 5, 2023) (same).

**2. Plaintiffs' alleged harm does not bear a close relationship to harms traditionally recognized at common law**

Plaintiffs lack standing because the disclosure of their basic information does not implicate traditional privacy interests. To allege an invasion of privacy, a plaintiff must allege facts to show that the collection of the information at issue "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021). Plaintiffs have failed to make such a showing.

**i. The disclosure of Plaintiffs' basic information is not highly offensive to a reasonable person**

This Court has held that the disclosure of "relatively quotidian private information" like email addresses and device information does not constitute an injury in fact. *Liau v. Weee! Inc.*, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (Engelmayer, J.) (finding that data leak of "relatively quotidian private information"—"customers' names, email addresses, and phone numbers, but not payment data or passwords"—did not give rise to a concrete harm).

As this Court also noted, the caselaw has not found an injury in fact where the data at issue is "realistically not capable of exploitation by malicious actors." *Id*. (citing *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (no injury in fact where the information at issue included "less sensitive data" such as "addresses, phone numbers, … email addresses, and IP addresses)). Likewise,

here, the First Amended Complaint does not allege that Dotdash (or Zeta) "collected sensitive or personally identifying information or data that could be used to steal [Plaintiffs'] identity or inflict similar harm." *Xu*, 2025 WL 488501, at *3.

Courts consistently have found that the disclosure of basic identifying information is not sufficiently analogous to a traditional common law harm to confer standing under Article III. *See, e.g.*, *Liau*, 2024 WL 729259, at *5 (disclosure of such "quotidian" information as names, email addresses, and physical addresses did not confer standing); *Cooper*, 2022 WL 170622, at *4 (disclosure of, among other things, names, addresses, telephone numbers, and IP addresses did not constitute injury in fact because that information is "generally publicly available"); *Ciccone*, 2021 WL 5591725, at *3 (disclosure of name, address, and debtor status to debt collection vendor was not "highly offensive to a reasonable person" because the information was not "intensely private information"); *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) ("[C]ourts have found that [disclosure of basic personal] information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices . . does not constitute an egregious breach of social norms").

Here, again, the only injury Plaintiffs allege in their claims against Dotdash is the collection of their "email address, campaign identifiers, [] device and client information, and unique impression IDs" for a profile maintained by Zeta for the

purpose of distributing targeted ads to Plaintiffs. Plaintiffs fail to allege any concrete injury to confer Article III standing. Plaintiffs' claims should therefore be dismissed.

### B. Plaintiffs' California Law Claims Are Barred By New York Law

Plaintiffs' claims arising under California law—the California Unfair Competition Law claim, the California Invasion of Privacy Act claim, the California Comprehensive Computer Data Access and Fraud Act claim, and violations of California Constitutional Right to Privacy—all fail because New York Law, and not California law, applies to this action. When, as here, a federal court sits in diversity pursuant to the Class Action Fairness Act of 2005, it applies the forum state's choice-of-law rules to determine which state's substantive law governs. *See, e.g., Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 135 (S.D.N.Y. 2014). Where a conflict of law exists, New York utilizes an "interest analysis" to determine which state's substantive law applies. *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, (1985). As a practical matter, this means "the law of the jurisdiction having the greatest interest in the litigation will be applied." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006).

"[T]he interest analysis is applied differently depending on whether the rules in question are conduct-regulating rules that 'people use as a guide to governing their primary conduct,' or loss-allocating rules that 'prohibit, assign, or limit liability after the tort occurs.'" *Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet*, 449 F.3d at 384; *see*

*also Catalanello v. Kramer*, 18 F. Supp. 3d 504, 511 (S.D.N.Y. 2014) (Engelmayer, J.) ("Where the laws at issue are primarily conduct-regulating, 'the law of the jurisdiction where the tort occurred will usually have a predominant, if not exclusive concern.'") (citations omitted)).

Choice of law issues are often in the mix in website wiretapping cases. Many of these cases have looked at terms of service and focused on whether the plaintiff agreed to the defendant's terms of service. *See, e.g., Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024)*; Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002). However, on August 29, 2025 Magistrate Judge Moses issued a report and recommendation that took the issue back to proper first principles and conducted a traditional choice of law analysis and Judge Kaplan adopted the Report and Recommendation in relevant part.[4] *Joiner v. NHL Enters., Inc.*, 2025 WL 2846431, at *11 (S.D.N.Y. Aug. 29, 2025), *report and recommendation adopted in part*, 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025) The decision is now on appeal to the Second Circuit, with Appellant's and Appellee's initial briefs due January 9 and February 13, 2026, respectively. *See* Case No. 25-2789.[5]

---

[4] The only part of Judge Moses' Report and Recommendation that Judge Kaplan did not adopt pertained to leave to amend. In any event, the plaintiffs in *Joiner* did not amend their complaint and instead proceeded with an appeal.

[5] A decision consistent with Judge Kaplan's ruling in *Joinmer* would be dispositive of this case. If this Court is inclined to agree with Judge Kaplan, this case should be stayed until *Joiner* is resolved on appeal. Indeed, it is well recognized that courts will stay cases when there is a potentially dispositive issue pending on appeal. *See, e.g., Loftus v. Signpost Inc*., 464 F. Supp. 3d 524 (S.D.N.Y. 2020) (staying proceedings pending outcome of potentially dispositive United States Supreme Court case); *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("a court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action.").

The plaintiff in *Joiner* the alleged that the National Hockey League, through its website NHL.com, utilized pixels that tracked the plaintiff's personal identifying information after they signed up for newsletter subscriptions. *Id*. at * 1. The plaintiff brought a claim under Pennsylvania's wiretap statute, as well as a claim for intrusion upon seclusion. Judge Moses recognized that both of these conduct regulating claims conflicted with New York law, and that the "interest analysis" should apply. *Id*. at *10. Under that analysis, Judge Moses determined that the "allegedly tortious conduct – that is, the conduct that the relevant state laws seek to regulate – was the placement of the Pixel on the NHL Website" and that "[t]his conduct, according to plaintiffs, took place at defendants' headquarters in New York." *Id*. at 11–12. As a result, Judge Moses ruled that that "[b]ecause New York law applies to both of plaintiffs' state law claims, and because New York does not recognize the tort of intrusion upon seclusion or permit private civil suits for wiretapping, both of those claims should be dismissed." *Id*. at *12.

Consistent with the analysis in *Joiner*, each of the California state laws at issue—wiretapping/hacking, invasion of privacy and consumer protection laws—are conduct regulating. *See Joiner v. NHL Enters., Inc.*, 2025 WL 2846431, at *11 (no dispute that state wiretapping claims arise under "conduct regulating" laws). And while not a website pixel case, Judge Liman's recent decision in *Jones v. Abel*, 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025) is also instructive. *Id*. at *9. ("invasion of privacy claims are conduct-regulating torts."); *Adams v. Tops Markets, LLC*, 2023 WL

4828029 (W.D.N.Y. July 7, 2023) ("consumer protection laws … are conduct-regulating statutes").

Plaintiffs' California Invasion of Privacy Act (wiretapping), California Comprehensive Computer Data Access and Fraud Act (hacking), and invasion of privacy claims arising under California's constitution also conflict with New York law. Although both California and New York have enacted statutes prohibiting unauthorized wiretapping, unlike California, (1) New York is a one-party consent state (N.Y. Penal Law § 250.00), and (2) the New York statute does not provide for a private right of action. *See Grasso v. Grasso, Jr.*, 2010 WL 3806388, at *10 (N.D.N.Y. Sept. 22, 2010) ("New York does not provide for any private right of action for an alleged illegal wiretap."). Likewise, while California has enacted the Comprehensive Computer Data Access and Fraud Act as an analogue to the federal Computer Fraud and Abuse Act, New York does not have a similar statutory analogue. Lastly, as it pertains to Plaintiffs' invasion of privacy claim, unlike California, New York does not recognize a common law or constitutional right to privacy. *See, e.g., Poppel v. Est. of Archibald,* 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020) ("New York has consistently refused to recognize a common law right of privacy"); *Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*, 55 F. Supp. 2d 177, 186 (S.D.N.Y. 1999) ("New York does not recognize a common law claim for invasion of privacy"). Thus, where there are conflicting conduct regulating laws at issue, pursuant to the "interest analysis," the law of the jurisdiction where the tort occurred applies. *GlobalNet*, 449 F.3d at 384; *Catalanello*, 18 F. Supp. 3d at 511.

Like in *Joiner*, here, according to the First Amended Complaint, the allegedly wrongful conduct—"[Zeta and Dotdashs'] interception and use of Plaintiffs' PII—occurred in New York, where both Dotdash and Zeta are headquartered. Compl. ¶¶ 22; 45; 48; *id*. at ¶ 46 ("Defendant Dotdash uses Zeta's pixel technology, provided through [Zeta's] subsidiary LiveIntent, on its website and embeds this technology in email correspondence sent to subscribers of its newsletter"); *id*. at ¶ 245 ("By adopting Zeta's pixel technology, Dotdash enabled and facilitated the interception, use, and disclos[ure] of Plaintiffs and California Class members' private information."); *see also AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016) (applying New York law where "the allegedly wrongful conduct … took place in New York, where [defendant] had its headquarters").

Under the "interest analysis" test, New York law applies. Because New York law does not recognize private wiretapping, hacking, or invasion of privacy claims, Plaintiffs' California Invasion of Privacy Act and California Comprehensive Computer Data Access and Fraud Act claims, as well as Plaintiffs' claim for invasion of privacy under California's constitution, should be dismissed.

Lastly, as it pertains to the consumer protection law claims—New York's General Business Law and the California Unfair Competition Law —"[a] choice-of-law analysis "need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions. If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Adams v. Tops Markets, LLC*, 2023 WL 4828029, at *3 (W.D.N.Y. July 7, 2023)

(quoting *Licci v. Lebanese Canadian Bank, SAL*, 672 F. 3d 155, 157 (2d Cir. 2012)). As recognized in *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018), "[t]here is no indication California's robust consumer protection law is contrary to New York's in their policy aims. Each broadly protects consumers from the deceptive practices alleged against [the defendant] in this case." *Id*. "As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006).

Here, where Plaintiffs have brought consumer protection claims under both New York and California law—the New York General Business Law and the California Unfair Competition Law—the California Unfair Competition Law claim should be dismissed.

**C. Plaintiffs Fail To Plead A Claim Under N.Y. General Business Law**

The N.Y. General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state." N.Y. General Business Law § 349. To state a claim under N.Y. General Business Law § 349, a plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

Here, Plaintiffs' principal allegation is that they were injured due to an invasion of their privacy stemming from the pixel tracking by Zeta. Courts within and without this District have routinely dismissed complaints under the New York General

Business Law averring an "unquantifiable injury to a privacy interest," as this is "not a cognizable injury." *Shostack v. Diller*, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) (dismissing plaintiffs' N.Y. General Business Law claim in part due to plaintiffs' failure to plead actual injury); *see also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *7 (S.D.N.Y. Jul. 12, 2018) (allegations of "a general invasion of privacy" do not meet N.Y. General Business Law § 349's injury requirement); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) ("plaintiffs have alleged no facts … to show that the alleged acts of the defendant caused any quantifiable damage.").

The Plaintiffs do not provide support for the allegation that they suffered actual harm. Plaintiffs' claim must therefore be dismissed. *See Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599–600 (N.Y. App. Div. 2002) (dismissing N.Y. General Business Law § 349 claim where plaintiff "d[id] not allege a single instance where a named plaintiff or any class member suffered any actual harm due to the receipt of an unwanted telephone solicitation or a piece of junk mail" as a result of their information being sold to third party marketers); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) ("[T]he release of potentially sensitive information alone, without evidence of misuse, is insufficient to cause damage to a plaintiff.").

Indeed, "[N.Y. General Business Law] § 349 injury has been recognized only where *confidential*, individually identifiable information—such as medical records or a Social Security number—is collected without the individual's knowledge or consent." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017) (emphasis

added). Here, it is alleged that Zeta merely tracked Plaintiffs' "email address, campaign identifiers, [] device and client information, and unique impression IDs" as well as "content viewed . . . cookies . . . and other metadata." Compl. ¶¶ 104, 109, 115. Plaintiffs do not allege that any of the information being tracked rose to the level of confidential information akin to medical records or a Social Security number. *Mount*, 684 F. App'x at 35.

### D. Plaintiffs Fail To Plead a Claim Under the California Unfair Competition Law

Plaintiffs' California Unfair Competition Law claim fails because Plaintiffs have not alleged "lost money or property." The California Unfair Competition Law affords relief only to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In order to have standing to bring a cause of action under the California Unfair Competition Law, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (emphasis supplied) (citing *Kwikset Corp v. Super. Ct.*, 51 Cal. 4th 310, 322 (2012) (internal quotations omitted)).

Here, Plaintiffs' claimed injuries stem from the disclosure of allegedly private information to Zeta. This is not "lost money or property" under the California Unfair Competition Law. *See, e.g., Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (ruling that plaintiffs lacked standing to bring California Unfair

Competition Law claim against company that allegedly disclosed personal and financial information to third and fourth parties through tracking technologies, where personal information did not constitute property, and where any profit made by company as a result of disclosing the information did not demonstrate a loss suffered by the plaintiffs); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019); *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (finding no loss of money or property where plaintiffs, users of mobile devices, alleged that defendants violated their privacy rights by allowing third-party application developers to collect and make use of their personal information for commercial purposes, without user consent or knowledge); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 (N.D. Cal. 2011) (holding allegations of an invasion of privacy were insufficient to establish California Unfair Competition Law statutory standing and that a plaintiff's personal information did not constitute property under the California Unfair Competition Law); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (finding no loss of money or property where job applicant alleged that employer negligently permitted laptops containing his unencrypted personal information to be stolen).

### E. Plaintiffs' Claim Under California's Invasion of Privacy Act Fails to State a Cause of Action

Section 631(a) of the California's Invasion of Privacy Act is divided into four separate clauses, each of which can serve as a basis for liability. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024); Cal. Penal Code § 631(a). Here, Plaintiffs allege that Dotdash violated the fourth clause of § 631(a)—

aiding and abetting. *See* Compl. ¶ 195 ("Dotdash aided, agreed with, employed and conspired with Zeta to intercept and use this data for profit, including by embedding Zeta's technology on its website and in email correspondence.").

"To state a claim under [clause four of section 631(a) for aiding and abetting], Plaintiff[s] must allege [Defendant] has violated one of the first three clauses of section 631(a), ***and*** that Defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113-14 (S.D. Cal. 2024) (emphasis added); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (stating that an aiding-and-abetting defendant's "liability … is … based entirely on whether [a third party] violated Section 631(a) in some way").

Plaintiffs' California's Invasion of Privacy Act claim against Dotdash should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs do not allege that Dotdash violated any of the first three clauses of § 631(a).

*First Clause*: Plaintiffs have not sufficiently plead a violation of the first clause of § 631(a) because it does not apply to the online conduct at issue here. Rather, that clause applies in relevant part to "any person who by means of any *machine, instrument, or contrivance, or in any other manner*, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, *with any telegraph or telephone wire, line, cable, or instrument* … ." *Id.* (emphasis added). Courts evaluating claims under this theory have overwhelmingly found that clause one of § 631(a) "prohibits telephonic wiretapping, *which does not*

*apply to the internet* …" *See, e.g., Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (emphasis added); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet").

Second Clause: It is well-settled that the clause of § 631(a) is violated only where a third party "reads, or attempts to read, or to learn *the contents* or meaning of any message, report, or communication *while the same is in transit*." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1032 (S.D. Cal. 2024) (emphasis added). Put differently, the alleged-third-party eavesdropper must "read or learn" the content of a communication while it is enroute to the intended recipient. *Id*. at 1036 (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021)).

Plaintiffs have not stated a claim under the second clause of § 631(a) for two reasons. As an initial matter, it is well-established that general browsing activity, page views and the like are not "contents" for purposes of 631(a). *See, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (finding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information … [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)).

Moreover, even assuming the information at issue qualifies as "contents" under California's Invasion of Privacy Act, Plaintiffs have not alleged that Dotdash read or learned those contents while they were in transit. Indeed, the First Amended

Complaint summarily alleges that "*Zeta* willfully, and without consent, read, or attempted to read, or learn the contents and meaning of Plaintiffs' and California Class members' communications … while those communications where in transit …." Compl. ¶ 193 (emphasis added). Even if these summary allegations as to Zeta were sufficient, which they are not, the First Amended Complaint is devoid of any "in transit" allegations as to Dotdash. At best, in one instance, the First Amended Complaint alleges that Dotdash "conspired with Zeta to *intercept*" the data at issue. *Id*. at ¶ 195. Without more, Plaintiffs have failed to allege under the second prong of § 631(a) that Dotdash read or learned Plaintiffs' data while it was in transit. *See Rodriguez v. Google LLC,* 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the software company] is intercepting the data in transit.").

*Third Clause*: The third clause of § 631(a) imposes liability where a person "uses, or attempts to use, in any manner, or for any purposes, or to communicate in any way, any information so obtained" as outlined in the first two clauses. *See B.K.*, 2024 WL 1343305, at *6; Cal. Penal Code § 631(a). Because Plaintiffs fail to state a claim under the "first or second clauses, [they have] also failed to plead a violation of the third clause." *Cody*, 718 F. Supp. 3d at 1003; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 822 (N.D. Cal. 2020).

Thus, because Plaintiffs have failed to allege that Dotdash violated any of the first three clauses of § 631(a), Plaintiffs' aiding and abetting claim under the fourth

clause of California's Invasion of Privacy Act must fail. Even assuming Plaintiffs did allege a violation of any of the first three clauses, however, Plaintiffs' California Invasion of Privacy Act claim nonetheless fails because Plaintiffs' allegations still cannot support their aiding and abetting claim.

To state an aiding and abetting claim under California's Invasion of Privacy Act, Plaintiffs must allege that Dotdash had "both knowledge of the conduct that [would] violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." S*mith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Where a defendant "properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute," the "defendant has not aided, agreed with, or employed the third party to perform acts that violate the wiretapping statute." *Id.*

Plaintiffs fail to allege (and cannot allege) that Dotdash installed Zeta's tracking technology with any knowledge or intent that Zeta would use the information collected in a manner that violates California's Invasion of Privacy Act.

### F. Plaintiffs Do Not Sufficiently Plead A Claim Under the California Comprehensive Computer Data Access and Fraud Act

The California Comprehensive Computer Data Access and Fraud Act is an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). But this is not a "hacking" case, and Plaintiffs do not to put forth any hacking-based allegations. In particular,

this claim fails because Plaintiffs have not pled that Dotdash overcame technical or code-based barriers to gain access to Plaintiffs' computers.

Plaintiffs allege that Dotdash violated §§ 502(c)(6) and (c)(13) of the California Comprehensive Computer Data Access and Fraud Act. Compl. ¶ 231. § 502(c)(6) prohibits alleged violators from "[k]knowingly and without permission provid[ing] or assist[ing] in providing a means of accessing a computer, computer system, or computer network in violation of this section." *Id.* § 502(c)(13) prohibits alleged violators from "[k]knowingly and without permission provid[ing] or assist[ing] in providing a means of accessing a computer, computer system, or public safety infrastructure computer system computer, computer system, or computer network in violation of this section." *Id.*; *see also* Compl. ¶ 231 (alleging that Dotdash is responsible for "knowingly and without permission from Plaintiffs and the California Class members, providing and/or assisting in providing the ability to access Plaintiffs' and the California Class members' personal data via Zeta's tracking technology.").

In evaluating claims under the California Comprehensive Computer Data Access and Fraud Act, "[d]istrict courts have interpreted the term [without permission] to require the defendant to act 'in a manner that overcomes technical or code-based barriers.'" *Gutierrez v. Converse Inc.,* 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (quoting *In re iPhone Application Litig.*, 2011 WL 4403963, at * 12 (N.D. Cal. Sept. 20, 2011) and *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014)).

Here, Plaintiffs have not alleged that Dotdash "circumvented technical barriers to gain access to a computer." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (dismissing California Comprehensive Computer Data Access and Fraud Act claim in action alleging website intentionally and knowingly transmitted personal information about users to third-party advertisers without consent where Plaintiffs could not state any action done "without permission"). To the contrary, Plaintiffs allege repeatedly throughout the First Amended Complaint that Dotdash and others caused "nonconsensual transmissions" of their personal information—i.e., that Dotdash and others allegedly obtained user information without consent. *Id*. (dismissing California Comprehensive Computer Data Access and Fraud Act claim where plaintiff did not allege that defendant "circumvented technical barriers to gain access to a computer" but rather alleged that defendant caused "nonconsensual transmissions" of plaintiffs' personal information); *see also* Compl. ¶¶ 30; 37; 44; 52; 54; 112; 113 ("At no point in time did Zeta or Dotdash obtain consent.").

Therefore, where there are no allegations that Dotdash "circumvented technical barriers to gain access to a computer," Plaintiffs fail to allege that Dotdash acted "without permission" so as to state a claim under the California Comprehensive Computer Data Access and Fraud Act. *Gutierrez*, 2023 WL 8939221, at *4 ("Plaintiff fails to allege that Defendant acted without her permission as required by the California Comprehensive Computer Data Access and Fraud Act, as she fails to allege that Defendant overcame any technical or code-based barriers. While Plaintiff uses

the nefarious-sounding terms "intercepts" and "diverts," she does not suggest that Defendant overcame any barriers in doing so."); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 716.

In addition, "[t]he [California Comprehensive Computer Data Access and Fraud Act] provides that only an individual who has suffer[ed] damage or loss by reason of a violation of the statute may bring a civil action for compensatory damages and injunctive relief or other equitable relief." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (citations and quotations omitted)). Like Plaintiffs' California Unfair Competition Law claim, Plaintiffs also lack standing to bring a California Comprehensive Computer Data Access and Fraud Act claim because Plaintiffs have failed to allege they suffered damage or loss. *Id.* (holding that plaintiffs lacked standing to bring California Comprehensive Computer Data Access and Fraud Act claim against company that allegedly disclosed personal and financial information to third and fourth parties through tracking technologies, where personal information did not constitute property, and where any profit made by company as a result of disclosing the information did not demonstrate a loss suffered by the plaintiffs).

### G. Plaintiffs Fail To Plead A Violation Of The Right To Privacy Under The California Constitution

The "California Constitution … set[s] a high bar for an invasion of privacy claim," *Bellumini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). To state a claim for invasion of privacy under the California Constitution, Plaintiffs must allege: (1) a

legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 39, 40 (1994).

Plaintiffs have not established that they or any other user of Dotdash publications' websites possessed a reasonable expectation of privacy in the information collected. Indeed, "[g]iven the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (citing *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-11 (S.D. Cal. Oct. 24, 2023) (stating that "accepted community norms around conversations in this type of space (a commercial website for selling merchandise) point away from a reasonable expectation of privacy."); *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 524-25 (C.D. Cal. 2021) (agreeing with defendants that plaintiff did not have "a reasonable expectation of privacy over his activity on [the defendant's] [w]ebsite"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (finding no cognizable privacy interest in keystrokes, page clicks, page views, and browsing activities); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The information disclosed to third parties … including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts."); *see also Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"); *Smidga v. Spirit Airlines, Inc.*, 2024 WL 1485853, at *4

(W.D. Pa. Apr. 5, 2024) ("[C]ourts have held that even the collection of basic contact information by [] software or where the plaintiffs merely visited the website are not [] concrete harms.").

### H. Plaintiffs Fail To Plead A Claim For Unjust Enrichment

In order to plead a claim for unjust enrichment under New York law, a plaintiff must establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *In re Mid–Island Hosp., Inc.,* 276 F.3d 123, 129–30 (2d Cir. 2002) (citations omitted); *see also Jofen v. Epoch Biosciences, Inc.*, 2002 WL 1461351, at *9 (S.D.N.Y. July 8, 2002).[6]

Plaintiffs do not establish that Dotdash unjustly retained a benefit at their expense. Thus, equity and good conscience do not require restitution, and Plaintiffs' claim for unjust enrichment should be dismissed. Indeed, "Plaintiffs and the putative class members have neither directly expended their own resources, nor shown that their property has become less valuable." *Katz-Lacabe*, 668 F. Supp. 3d at 946; *Edelman v. Starwood Capital Grp., LLC*, 70 A.D.3d 246, 250, 892 N.Y.S.2d 37, 41 (1st Dep't 2009) (rejecting unjust enrichment claim where proprietary information was wrongfully obtained from plaintiff, but defendants' use "did not come at plaintiffs' expense, and plaintiffs did not suffer any loss in connection with that use").

[6] While the unjust enrichment claim should be analyzed under New York law, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) is also instructive: "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id*. at 945 (citations and quotations omitted)).

In fact, the case law is clear that, even if a Defendant profits from Plaintiffs' data, that is not enough to demonstrate that Plaintiffs suffered a financial loss. *See, e.g., In re Facebook, Inc. v. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.,* 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (explaining that even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property).

## I. Plaintiffs Fail To Plead A Claim For Declaratory Relief

"The Declaratory Judgment Act is procedural only … and does not create an independent cause of action." *TD Auto Fin. LLC v. Cnty. of Putnam*, 2023 WL 6295116, at *13 (S.D.N.Y. Sept. 27, 2023) (cleaned up).

Even assuming Plaintiffs are permitted to bring a standalone claim for declaratory judgment, here, they should not be permitted to do so because the injunctive and declaratory relief sought is duplicative of the relief sought in Plaintiffs' other claims. *See* Compl. ¶ 186 (seeking under California Unfair Competition Law claim restitution, declaratory relief, injunctive relief, and other appropriate equitable relief permissible under California Unfair Competition Law); *id.* at ¶ 198 (seeking injunctive relief under California's Invasion of Privacy Act); *id.* at ¶ 235 (seeking injunctive relief under California Comprehensive Computer Data Access and Fraud Act claim); *see also In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 976 (N.D. Cal. 2021) ("The injunctive relief Plaintiffs seek is duplicative of the relief Plaintiffs

seek under the [California Unfair Competition Law] . . . In other words, if Plaintiffs are successful in their alternative claims for relief, Plaintiffs' claims for declaratory relief would be unnecessary.") (granting without leave to amend Defendants' motion to dismiss Plaintiffs' cause of action for declaratory relief).

Moreover, to the extent that this Court dismisses the underlying claims, there would be no basis for declaratory relief. *See, e.g., Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ("if the underlying claims are dismissed ... then there is no basis for any declaratory relief") (citations and quotations omitted)).

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint against Dotdash in its entirety.

Dated: January 5, 2026

By: /Aaron S. Weiss/ (signature)

Aaron S. Weiss
Email: aweiss@carltonfields.com
Michael Margulies
Email: mmargulies@carltonfields.com
Carlton Fields, P.A
730 Third Avenue, 19th Floor
New York, New York 10017
Telephone: 212-785-2577

*Attorneys for Defendant Dotdash Meredith Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that, on this January 5, 2026, this document, filed through the CM/ECF system, will be served electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

/s/ *Aaron Weiss*
Aaron S. Weiss