**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 1:25-cv-05780-PAE

IN RE ZETA GLOBAL DATA PRIVACY LITIGATION

THIS DOCUMENT RELATES TO:

*All Cases*
1:25-cv-05780-PAE
1:25-cv-05823-PAE

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT ZETA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. Plaintiffs' Injuries Confer Article III Standing .......... 3

B. Plaintiffs' Complaint States Plausible Claims for Relief .......... 9

i. California Law Applies to the California Subclass .......... 9

ii. California Plaintiffs' Privacy Claims Are Plausible .......... 11

iii. California Plaintiffs' UCL Claims are Plausible .......... 13

iv. California Plaintiffs' CDAFA Claims Are Plausible .......... 15

v. CIPA Section 631 Claims Are Plausible .......... 18

vi. CIPA Section 632 Claims Are Plausible .......... 21

vii. CIPA Section 638 Claims Are Plausible .......... 23

viii. ECPA Claims Are Plausible .......... 25

a. Plaintiffs Allege Contents of Communications Were Intercepted .......... 26

b. Zeta Is Not a Party to the Communications .......... 27

c. The Crime-Tort Exception Applies .......... 28

ix. GBL Section 349 Claims Are Plausible .......... 31

x. Unjust Enrichment Claims Are Plausible .......... 33

xi. Claims Declaratory Judgment Act Are Plausible .......... 35

V. CONCLUSION .......... 35

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adam v. CaringBridge, Inc.*,
No. 25-CV-06042-WHO, 2025 WL 3493565 (N.D. Cal. Dec. 5, 2025) .................................. 10

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025) .......................................................................... 34

*Agerbrink v. Model Service LLC*,
155 F.Supp.3d 448 (S.D.N.Y. 2016) ............................................................................ 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 17

*Balestrieri v. SportsEdTV, Inc.*,
No. 25-CV-04046, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ................................ 29

*Barton v. Pret A Manger (USA) Ltd.*,
535 F. Supp. 3d 225 (S.D.N.Y. 2021) .......................................................................... 34

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ............................................................... 31

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ............................................................... 12

*Braynina v. TJX Companies, Inc.*,
No. 1:15-cv-5897, 2016 WL 5374134 ........................................................................... 33

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................... 19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................ 4, 16, 21, 22

*Brown v. Google LLC*,
No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ................................. 14

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ...................................................................... 13, 14

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..................................................................................... 20

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 22

*Cappello v. Walmart, Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ........ 13

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 27, 29, 31

*Carovillano v. Sirius XM Radio Inc.*,
715 F. Supp. 3d 562 (S.D.N.Y. 2024) ........ 34

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-CV-6824, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ........ 20

*Casillas v. BOP LLC*,
No. 24STCV15581, 2025 WL 2161288 (Cal. Super. June 18, 2025) ........ 24

*Castillo v. Costco Wholesale Corp.,*
No. 2:23-CV-01548, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 30

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ........ 30, 33

*Cooper v. Bonobos, Inc.*,
2022 WL 170622, n. 4 (S.D.N.Y. Jan. 19, 2022) ........ 5, 32

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 28, 31, 33

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 19

*D.H. v. City of New York*,
309 F. Supp. 3d 52 (S.D.N.Y. 2018) ........ 7

*Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ........ 15

*De Medicis v. Ally Bank*,
2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022) ........ 5, 7, 32

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........ 20

*Doe I v. Google LLC,*
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 15, 17

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ........ 16

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 14, 15, 23

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 19

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 26

*Epstein v. Epstein*,
843 F. 3d 1147 (7th Cir. 2016) ........ 10

*First Choice Federal Credit Union v. Wendy's Co.*,
No. CV 16-506, 2017 WL 9487086 (W.D. Pa., Feb. 13, 2017) ........ 35

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 10

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 5, 8

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ passim

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ........ 3

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ........ 24

*Gay v. Garnet Health*,
7:23-cv-06950, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ........ 34

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ........ 34

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 4

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ........ 12, 21, 22, 26

*Griffith v. TikTok, Inc.,*
No. 5:23-cv-00964-SB-E, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ........ 8

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ........ 27

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........ 12

*Hart v. TWC Productions and Technology LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 35

*Hazel v. Prudential Fin., Inc.*,
No. 3:22-cv-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 15

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. (2023) ........ 16

*In re Arby's Restaurant Group Inc. Litig.*,
No. 1:17-CV-0514, 2018 WL 2128441 (N.D. Ga., Mar. 5, 2018) ........ 35

*In re Credit Default Swaps Auctions Litig.*,
710 F. Supp. 3d 895 (D.N.M. 2023) ........ 34

*In re DoubleClick*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 30

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ........ 32

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re GE/CBPS Data Breach Litig.*,
No. 20 Civ. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ........ 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 27

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 22

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 12, 13

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 7, 13

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 23

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 23, 24

*In re Toys R Us, Inc., Priv. Litig.*,
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........ 29

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 26

*Joiner v. NHL Enterprises, Inc.*,
2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ........ 10, 30

*Kane v. Univ. of Rochester,*
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 28

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 8, 14

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-cv-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 26

*Kis v. Cognism Inc.*,
No. 22-CV-05322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ........ 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ........ 25

*Kishnani v. Royal Caribbean Cruises, Ltd.*,
2025 WL 2943080 (9th Cir. Oct. 3, 2025) ........ 25

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 20

*Kunstler v. Ctr. Intel. Agency*,
2023 WL 8776339 (S.D.N.Y. Dec. 19, 2023) ........ 9

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (Cal. 2011) ........ 13

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ........ 23

*Liau v. Weee! Inc.*,
2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ........ 6

*Lively v. Wayfarer Studios LLC*,
786 F. Supp. 3d 695 (S.D.N.Y. 2025) ........ 11

*Rodriguez v. Aquatic Sales Solutions LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 18

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 12

*M. H. v. Done Glob. Inc.,*
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ........ 18

*M.G. v. Therapymatch, Inc.*,
2025 WL 1447432 (N.D. Cal. May 19, 2025) ........ 23

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ........ 14

*Martinez v. Lvnv Funding, LLC*,
No. 14CV00677RRMST, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016) ........ 31

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 5

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 14

*Meyerson v. Prime Realty Services, LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ........ 31

*Mikulsky v. Bloomingdale's LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ........ 19

*Mills v. Saks.com LLC*,
No. 1:23-cv-10638, 2025 WL 34828 ........ 8

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 23

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 25

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 3191910 (9th Cir. Oct. 23, 2025) .................................................................... 25

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) .................................................................................... 33

*NetJets Aviation, Inc. v. LHC Communications, LLC*,
537 F.3d 168 (2d Cir. 2008) ........................................................................................ 33

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........................................................................................ 21

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)........................................................................... 20

*Oganyan v. BioLife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)...................................................................... 5

*Ohanian v. Apple Inc.*,
No. 1:20-cv-5162, 2022 WL 826415 (S.D.N.Y. Mar. 18, 2022) ............................................. 34

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. 2022)................................................................................ 32

*Pattison v. Teladoc Health, Inc.*,
No. 23-cv-11305 (NSR), 2025 WL 1756364 (S.D.N.Y. June 25, 2025) ............................ 10, 14

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ...................................................................................... 10, 11

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025)......................................................................... 6

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Apr. 1, 2025)................................................................... 25

*Prozer v. U.S.*,
2014 WL 6686697 (D.S.C. Nov. 25, 2014)........................................................................... 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..................................................................... 23

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)........................................................................ passim

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025)..................................................................... 16, 17

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ........................................................................................ 3

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ............................................................ 24

*Semien v. PubMatic Inc.,*
No. 25-CV-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ............................ 6

*Shah v. Capital One Financial Corporation,*
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..................................................................... 16

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ............................... 22

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .............................. 16

*Torres v. Prudential Fin., Inc.*,
No. 3:22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ............................ 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................................... 3

*U.S. v. Lifshitz*,
369 F.3d 173 (2d Cir. 2004) ......................................................................................... 9

*Wallace v. Health Quest Sys., Inc.*,
2021 WL 1109727 (S.D.N.Y. 2021) ........................................................................... 32

*Warner v. Starkist, Co.,*
No. 1:18-CV-406, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ............................. 34

*Williams v. Facebook, Inc.,*
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ................................................................. 7, 17

*Xu v. Reuters News & Media Inc.*,
No. 24 Civ. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ................. 5, 6, 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................................................... 26

*Zaratzian v. Abadir,*
No. 10 CV 9049 VB, 2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014) ........................... 28

**STATUTES**

18 U.S.C. § 2510 ........................................................................................................... 25

18 U.S.C. § 2510(8) ........................................ 25

18 U.S.C. § 2511(1) ........................................ 25

18 U.S.C. § 2511(2)(d)........................................ 28

Cal. Bus. & Prof. Code §17200 ........................................ 13

Cal. Penal Code § 502........................................ 17

Cal. Penal Code § 502(a) ........................................ 15

Cal. Penal Code § 502(e)(1)........................................ 18

Cal. Penal Code § 632(a) ........................................ 21

GBL § 349........................................ 31, 32

**RULES**

Fed. R. Civ. P. 15........................................ 35

**OTHER AUTHORITIES**

2015 California Assembly Bill No. 929........................................ 25

# I. INTRODUCTION

Privacy rights do not vanish in digital spaces. Zeta[1] nonetheless built its billion-dollar advertising empire by secretly trailing consumers from site-to-site with invisible web-tracking technology – no less offensive than a man in a trench coat shadowing an individual from place-to-place and recording their every move. But unlike that trench-coated observer, Zeta's data collection machinery remains hidden from the consumers it tracks at all times.

Although Zeta calls its conduct an "ordinary retail practice," Zeta knows that characterization is false. *See* Motion to Dismiss, ECF No. 44 at 1 ("Motion" or "Mot"). For years, Zeta sold its services to advertisers and other third parties by misrepresenting that the data collected through its system was "opt-in only," until that claim was publicly disproven in a short-seller report. ¶¶ 6-9. To the dismay of consumers and investors alike, Zeta now confronts a storm of legal consequences from the same reprehensible conduct it once denied engaging in and only now seeks to label "ordinary." Mot. at 1.

Plaintiffs bring this action to obtain redress for Zeta's privacy violations and its unauthorized monetization of the personal data of nearly 245 million Americans. ¶ 13. There is no question that Zeta's collection of approximately 2,500 data points from Plaintiffs and Class members is privacy invasive, and Zeta makes no colorable defense of this practice in its papers. ¶¶ 28, 35, 42, 85, 112. Instead, Zeta's defenses fall into two narrow categories: (1) attempting to cram its conduct into lines of cases that plainly have no applicability here, including data breach actions and cases involving the limited collection of only IP addresses; (2) strained interpretations of its own business practices, like misclassifying its data collection practices as limited to

[1] All capitalized terms herein have the same meaning used in the First Amended Consolidated Class Act Complaint ("FAC" or "¶"). *See* ECF No. 35.

"keystrokes" and "publicly available" data. Mot. at 14, 16. In the absence of any credible defense, basic common sense and the privacy safeguards embodied in the law foreclose allowing Zeta to continue its misconduct. Zeta's Motion should therefore be denied in its entirety.

## II. FACTUAL BACKGROUND

Zeta's primary product is the Zeta Marketing Platform ("ZMP"), a data-driven advertising platform used by businesses, including 40 percent of the companies on the Fortune 100 list, to identify, profile, and target individual consumers. ¶ 10. To do this, ZMP maintains the "largest compilation of personal data relating to U.S. and international consumers in the world," consisting of dossier-like profiles containing "a comprehensive mix of proprietary, partner, and publicly available data. . . includ[ing] an average of more than 2,500 attributes per individual[.]" ¶ 9.

Zeta intercepts and collects this information primarily through hidden tracking technologies known as pixels, which are embedded in third-party websites. ¶¶ 11, 101-112. As Zeta admits, these pixels allow it to collect data across "a wide spectrum of industr[ies]" including "consumer & retail, telecommunications, financial services, business services and insurance[.]" Mot. at 15. But this is only part of the picture. The data Zeta collects and uses to build identifiable profiles is expansive and highly sensitive, including identifiable online content consumption, transaction and purchasing history, financial and household data, demographic information, multicultural data, psychographic data, television engagement information, and firmographic (employment) data. ¶ 87. Zeta further enriches these profiles by combining this intercepted data with advanced location targeting and algorithmic inferences designed to predict consumer intent, segment users into behavioral audiences, and forecast future decision-making. ¶¶ 90, 69, 120. These profiles are extraordinarily valuable: Zeta quantifies their worth using "average revenue per user" ("ARPU"), reflecting the revenue it generates from each individual whose personal data it

collects and exploits. ¶¶ 121–122. Zeta's business is therefore built on the systematic collection, aggregation, and commercialization of detailed personal dossiers on millions of consumers.

Despite the pervasive and involuntary nature of this data collection, Zeta has publicly represented that its "database [is] permission-based meaning everyone in the data cloud has opted-in." ¶ 94. This claim was false. Zeta quietly removed this "opt in" claim from its SEC filings, effectively acknowledging that the data underlying ZMP was not, in fact, obtained through consumer consent. ¶¶ 13, 94-96, 99. In reality, Zeta has been collecting massive troves of sensitive data to enrich itself and its clients—all without ever obtaining consent from individual consumers like Plaintiffs and Class members. ¶ 70. This conduct violates privacy expectations, as well as each of the laws described herein.

## III. <u>LEGAL STANDARD</u>

On a Rule 12(b)(6) motion, the court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## IV. <u>ARGUMENT</u>

### A. Plaintiffs' Injuries Confer Article III Standing

This case concerns at least two traditional harms recognized by federal courts to confer Article III standing since the Founding: "intrusion upon seclusion," *see, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021), and "public disclosure of private facts." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541–43 (2d Cir. 2024) (explaining the court has "no trouble" finding the disclosure of "personally identifiable information" to a third party establishes Article III standing). Although either one is sufficient, Zeta's unauthorized interception of Plaintiffs'

identifiable, private activity across the internet, and subsequent disclosure to advertisers with the sale of data profiles, satisfy both bases for Article III standing. *See* Section II.

This is not speculation. Plaintiffs were able to demonstrate—at the pleading stage—that Zeta has tracked and profiled them by observing the network traffic sent to Zeta while Plaintiffs used certain websites and opened email correspondence, including those operated by, or sent from, Defendant DotDash.[2] Such surreptitious tracking, profiling, and monetization of Plaintiffs' private data has routinely been found sufficient to confer Article III standing, as it does here. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 599 (9th Cir. 2020) (finding standing where company "tracked" consumers' "browsing histories" to create detailed "profiles"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920, 923-25 (N.D. Cal. 2023) (standing established where the defendant "associates [users' browsing data] with their preexisting user profiles" to deliver "better, more targeted, advertisements to users").

Zeta's insistence that there can be no invasion of privacy unless Plaintiffs separately allege that they "received targeted advertisements" and were also "harmed" by these advertisements is not the law. Mot. at 8. Plaintiffs were injured the moment Zeta unlawfully intercepted and collected their private data. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("[D]epriving [the plaintiff] control of personal information regarding his digital activity and profile" is "sufficient to establish a concrete injury."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) ("[T]he root of the alleged injury" here is Plaintiffs' "inability to 'control or prevent the unauthorized exploration' of [their] private affairs."). To the extent Plaintiffs received any ads as a result—a fact which may only be

---

[2] The full scope of information contained in Plaintiffs' profiles is a subject for discovery because that information is not publicly available and solely in Zeta's possession.

identified in discovery—those are *additional* harms for which Defendants should also be liable.[3] But none of Plaintiffs' claims, or traditional Article III harms described above, require proof of targeted ads.

Zeta mischaracterizes this Court's decision in *Xu v. Reuters News & Media Inc.*, No. 24 Civ. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) as purportedly endorsing this heightened standard for alleged privacy harms. But in *Xu*, this Court found that the plaintiff could not rely on privacy harms to establish standing because the only data collected consisted of internet protocol ("IP") addresses given that plaintiff expressly disclaimed that any "content" (i.e., the substance of his activity) was ever intercepted. The opposite is true here: Plaintiffs allege the unauthorized collection of numerous types of data beyond only IP addresses, including context reflecting their activity on web properties, and its disclosure through the same of granular data profiles. The other IP-focused cases that Zeta cites are distinguishable for the same reason. *See* Mot. at 10-12 (citing *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025) (finding IP address collected from a single news website not sufficient to establish standing); *Oganyan v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) ("one-time collection of [] IP and email addresses" from a single website)).

The one-time data breaches cases that Zeta cites are also opposite as they involve an entirely different analysis of whether the plaintiffs faced an imminent risk of future harm (i.e., identity theft and fraud). *See* Mot. at 10 (citing *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *5, n. 4 (S.D.N.Y. Jan. 19, 2022) (evaluating future risk of fraud and noting that plaintiffs had "no allegations" they suffered a privacy harm); *De Medicis v. Ally Bank*, 2022 WL 3043669, at *5

[3] In any event, Plaintiffs' allegations that Defendants used their data to target ads are taken as true on the pleadings. ¶¶ 197, 208, 244; *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016) (accepting similar allegations "as true").

(S.D.N.Y. Aug. 2, 2022) (evaluating future risk of fraud); *Liau v. Weee! Inc.*, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (same)).

Zeta's reliance on *Popa v. Microsoft Corp.*, 2025 WL 2448824, at *1-2, 5 (9th Cir. Aug. 26, 2025), involving Pennsylvania's wiretapping statute, is also misplaced. Although the Court there found that the collection "pet-store preferences" from a ***single*** website was not privacy invasive, it expressly reaffirmed its prior holding that "tracking and collection practices" used to create "cradle-to-grave profile[s]" are privacy violations that establish Article III standing. *Id.* (citing *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 599 (9th Cir. 2020)). Zeta's conduct here falls squarely within *Facebook Tracking* and more recent profiling cases which also found Article III, and is nothing like the isolated collection of data from a pet store in *Popa*. See *Semien v. PubMatic Inc.,* No. 25-CV-03164-SI, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026) (distinguishing *Popa* because compilation of identifiable user profiles from their private "web-browsing activity across the internet" is "a more invasive injury.").

Plaintiffs also plead several other independently sufficient bases for Article III standing. Zeta's attacks on each of them are just as meritless.

***Unjust Benefits.*** Plaintiffs' "entitlement to [the] profits" Zeta gained from its unauthorized use and sale of their personal data also confers standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). Zeta's argument that Plaintiffs are not entitled to its "increase[ed] . . . revenue" ignores that these revenues were earned unjustly by misappropriating and selling Plaintiffs' data without consent. Mot. at 9. *Xu v. Reuters News & Media Inc.*, No. 1:24-cv-2466, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (Mot. at 9) does not support Zeta's position as it did not discuss this theory of standing, but merely noted in passing that increasing revenue through the collection of IP addresses alone would not be a sufficient "harm." This is

irrelevant, as Plaintiffs allege more than the collection of bare IP addresses, and Zeta admits it profits from this collection. Mot. at 15 ("Zeta's customers do not gain access to its products and services for free—in fact, its customers enter contracts for these very purposes.").

***Diminished Value.*** Zeta's own authority, *De Medicis v. Ally Bank*, 2022 WL 3043669, at *6 (S.D.N.Y. Aug. 2, 2022), recognizes that "lost value" of data may be a "cognizable economic harm," but found that the specific information allegedly disclosed there (i.e., usernames and passwords) did not have value because this information can be "easily changed at a moment's notice." *Id.* Here, by contrast, Plaintiffs allege that Zeta obtained immutable data (e.g., past web activity tied to persistent identifiers) that has objective value because data brokers, including Zeta itself, routinely buy and sell it. ¶¶ 4, 6, 72, 123.[4] Zeta's argument that these allegations confirming the "value of data" are not "connect[ed]" to Plaintiffs (Mot. at 10) ignores that Plaintiffs have pleaded that Zeta obtained the same data from them and sells that private data in its profiles.

***Harms to Devices and System Resources.*** Unauthorized consumption or utilization of Plaintiffs' device resources is another basis for standing. *See* ¶ 234 (alleging depletion of resources, including CPU time, storage, and bandwidth); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054 (N.D. Cal. 2012) (accepting similar allegations of "diminished and consumed iDevice resources, such as storage, battery life, and bandwidth" as establishing standing). Zeta's bare denial that this occurred (Mot. at 12) is counterfactual and must be rejected. Zeta's related argument that standing requires plaintiffs to calculate the precise amount of storage or data usage, or how that would throttle their devices, is inconsistent with the law. *See Williams v. Facebook, Inc.,* 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (noting that "Plaintiffs may face

[4] Zeta's citation to *D.H. v. City of New York*, 309 F. Supp. 3d 52, 68 (S.D.N.Y. 2018) lacks any relevance here, as that case involved whether the threat of an unlawful arrest of a transgender woman constituted an imminent risk of harm.

an uphill battle *proving*" their theory of Article III standing but that their *allegations* of consistent and systematic "depletion of device resources" are sufficient on the pleadings).

***Zeta's Other Arguments.*** Zeta's argument that "loss [of] control" over Plaintiffs' data is insufficient to establish injury-in-fact is a repeat of its (incorrect) argument that Plaintiffs have not sustained privacy injuries. Mot. at 11-12. As is its argument that Plaintiffs allege only "bare" procedural violations of certain statutes. *See Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2023 WL 9019035, at *4 (C.D. Cal. Dec. 13, 2023) (finding the collection of "private browsing data" is not a "mere violation of a statute"). The cases Zeta cites, again involving only IP addresses or record information, are inapposite. Mot. at 11 (citing *Xu*, 2025 WL 488501, at *4 (no privacy violation where only IP addresses were collected); *Gabrielli*, 2025 WL 522515, at *3 (same); *Mills v. Saks.com LLC*, No. 1:23-cv-10638, 2025 WL 34828, at *4 (no privacy violation for monitoring when and where emails sent by the defendant were opened)).

***Traceability.*** There are no traceability issues here because each of Plaintiffs' alleged injury stems from Zeta's conduct. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935, 940 (N.D. Cal. 2023) (traceability established defendant "designed" its software to "match . . . customer identities" and create "customer profile[s]"). Zeta's contention that Plaintiff Ayerdi lacks standing because *other* data brokers have *also* managed to unlawfully obtain *some* of the data Zeta maintains in its 2,500 data point profile about Plaintiff Ayerdi (Mot. at 9) has nothing to do with traceability (or standing) at all. Plaintiff Ayerdi has standing to sue Zeta so long as there is a *single piece of data* that it collected, used, disclosed, or monetized without her consent. Zeta's inability to show otherwise or cite a single case adopting its position is dispositive.

Zeta's related claim that Plaintiff Ayerdi does not have an expectation of privacy because she chose to disclose that she's an opera singer, and *another* bad-acting data broker obtained some

of her information, also fails. Mot. at 5 (citing ECF Nos. 45-2, 45-3). The entire purpose of the right to privacy is for one to be able to control which information is disclosed. *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (recognizing the "depriv[ation] [of] control of personal information regarding [the plaintiff's] digital activity and profile" as the "concrete injury"). None of the cases Zeta cites even remotely support its proposition that by disclosing her interest in opera singing Plaintiff Ayerdi gave up all expectations of privacy or that one bad actor's conduct excuses another's. The two cases it cites merely involved law enforcement searches or seized devices that are plainly irrelevant. *See* Mot. at 9 (citing *Kunstler v. Ctr. Intel. Agency*, 2023 WL 8776339, at *7 (S.D.N.Y. Dec. 19, 2023) (finding no expectation of privacy over a physical device voluntarily given to the government but recognizing an expectation of privacy in searching and copying its contents); *Prozer v. U.S.*, 2014 WL 6686697, at *5 (D.S.C. Nov. 25, 2014) (no expectation of privacy against a police officer Googling a reality TV star's name)).[5]

### B. Plaintiffs' Complaint States Plausible Claims for Relief

#### i. California Law Applies to the California Subclass

Zeta's claim that California Plaintiffs do not have a right to assert California-specific claims is nonsense.[6] The Complaint specifically alleges that, with respect to the California Plaintiffs, their private communications were intercepted "*in California*" (¶ 190) because Zeta's technology collects communications and identifiers *from Plaintiffs' physical devices* "[i]mmediately" once that website loads on their device in California. ¶ 104. Because both the *locus* of the injury (i.e., privacy

---

[5] *U.S. v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004), is even more inapposite because it involved probation monitoring of computer use of a convicted sex offender.

[6] Zeta wastes significant space arguing that non-California residents, like Plaintiff R.E.A., cannot assert California claims, but these claims are alleged only on behalf of California residents.

harms) *and* the *locus* of the tort (i.e., the interception) occur in California, nothing bars the application of California law to the California Plaintiffs' and Subclass's claims.

This is consistent with how multiple courts, including in this district, have interpreted CIPA and similar statutes. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("[T]he privacy injury occurs at the point of interception without consent."); *Adam v. CaringBridge, Inc.*, No. 25-CV-06042-WHO, 2025 WL 3493565, at *4 (N.D. Cal. Dec. 5, 2025) (recognizing that pixels "intercept[]" data at the "browser in California" not at the location of "servers"); *Epstein v. Epstein*, 843 F. 3d 1147, 1150 (7th Cir. 2016) (holding interception of plaintiff's emails occurred when they were copied, not when the wrongdoer received them); *see also Pattison v. Teladoc Health, Inc.*, No. 23-cv-11305 (NSR), 2025 WL 1756364, at *6–*7 (S.D.N.Y. June 25, 2025) (sustaining CIPA, UCL, CLRA claims brought against a New York entity). The Third Circuit recently confronted this question and also concluded the relevant location was the point of interception. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022). In doing so, the Court rejected Zeta's argument here, finding that Defendants' interpretation of the statute (that the defendants' location or where servers are parked matters) because that would "lead to absurd results." *Id.* "Under this theory, companies could capture the data of people in other states as long as they parked their servers in a state with weak privacy protections. That would significantly undermine the privacy protection that is at the core of the [statute]." *Id.* at 132 n.10. That is exactly what Zeta advocates for here (Mot. at 20-21) and it should be rejected for the same reasons.

In light of this case law, it is unsurprising the sole authority Zeta can muster for the application of New York law to the California Plaintiffs' claims is one magistrate's report and recommendation. *See* Mot. at 20 (citing *Joiner v. NHL Enterprises, Inc.*, 2025 WL 2846431, at *1 (S.D.N.Y. Aug. 29, 2025)). But the choice of law analysis conducted in *Joiner*—concluding that

the state in which the defendant is headquartered should determine which states wiretapping and privacy laws should apply—would lead to the exact preposterous result cautioned against in *Popa*. Following its reasoning would mean any entity based in New York could violate California's constitutional and statutory protections without facing liability. Because that clearly is not the law, it is telling that no court has followed *Joiner*. This Court should not either.

But in any event, even if there were any doubt over whether California law can apply (and there is not), conducting a choice of law now would be entirely premature. It remains unknown where Zeta's employees or servers are actually located, which are all facts in Zeta's possession that will be revealed in discovery. The Court should not allow Zeta to short-circuit the type of fact-intensive analysis necessary to determine which law applies by hiding behind its corporate headquarters. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 735 (S.D.N.Y. 2025) (declining to conduct choice of law analysis between New York and California law on the pleadings when conduct "occurred at unspecified locations").

**ii. California Plaintiffs' Privacy Claims Are Plausible**

In considering common law intrusion upon seclusion claims and invasion of privacy claims under the California Constitution, courts consider whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See Facebook Tracking,* 956 F.3d at 601 (internal citations omitted). Both requirements are satisfied here.

***Reasonable Expectation of Privacy.*** Consumers have a reasonable expectation not to be surreptitiously identified and profiled across the internet. Zeta's interception and sale of Plaintiffs' browsing history, search queries, demographics, financial status, and purchase activities violates this expectation. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, at 1085-89 (N.D. Cal. 2025) (holding a company that "generate[s] uniquely identifying profiles" from users' internet

activity commits an intrusion upon seclusion); *Facebook Tracking*, 956 F.3d at 604 (same); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 970-72 (C.D. Cal. 2023) (same).

***Highly Offensiveness.*** Whether a privacy intrusion is highly offensive is a "factually intensive . . . inquiry" on which "courts must be reluctant to reach a conclusion at the pleading stage." *See Gabrielli*, 2025 WL 1939957, at *10. Courts have found that the surreptitious tracking and profiling of users' private and identifiable online activity, like here, to be highly offensive. *Id.* (rejecting argument that the collection of IP addresses and browsing histories is "not highly offensive" as a matter of law); *Riganian*, 791 F. Supp. 3d at 1088-89 (same); *Facebook Tracking*, 956 F.3d at 606 (denying motion to dismiss because the "surreptitious data collection" on third-party websites is highly offensive). Zeta's conduct is especially offensive here because it misrepresented that consumers "opted-in" to this data collection, and sold access to these profiles for profit. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (finding similar large-scale "disclosure and sale" of personal profiles highly offensive).

Nothing about this is "basic" or "routine." Mot. at 31-32. While Zeta (again) tries to equate its conduct with cases involving solely metadata or information from a single website, there is a material difference between these limited collection cases and Zeta's widespread profiling. Mot. at 31-32 (citing *Hammerling v. Google LLC*, 2022 WL 17365255, at *8-9 (N.D. Cal. Dec. 1, 2022) (metadata revealing the length of time and frequency on mobile apps); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (involving solely LinkedIn profile URLs and LinkedIn IDs disclosed by LinkedIn); *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (collection of data from a home appliance store's website alone not sufficient for standing purposes)). Zeta's reliance on *In re Google, Inc. Privacy Policy Litig.* is also misplaced. 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014). There, the plaintiffs' privacy claims were premised on

Google's "*commingling*" of user data it lawfully receives from its <u>*own*</u> "Google products." *Id*. at 987. Whereas Google was the intended recipient of the data in that action, here Zeta is a third-party interloper. *See* Section II. *In re iPhone Application Litig.* is similarly inapposite, involving plaintiffs who sought to hold Apple, who runs the iOS App Store, liable for what third-party software developers place in their own apps. 844 F. Supp. 2d 1040, 1049 (N.D. Cal. 2012). Nothing about the claims against Apple or Google resemble the facts alleged against Zeta here.

Zeta's emphasis on how *some* of the data it feeds into its profiles come from "publicly available" sources is also a red herring. Mot. at 3. Whatever data Zeta scrapes from public sources does not change that the bulk of this data comes from Plaintiffs' and Class members' private interactions or that profiling Plaintiffs and the Class for profit is inherently privacy invasive. Zeta cites no authority for its claim that the availability of some public information on the web waives an individual's right to privacy in this manner.

**iii. California Plaintiffs' UCL Claims are Plausible**

California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (Cal. 2011) (quoting § 17200). Zeta does not address any of the substantive elements of Plaintiffs' UCL claim, but solely whether they have UCL standing.

"[T]here are 'innumerable ways' to demonstrate" UCL standing. *Cappello v. Walmart, Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (quoting *Kwikset*, 51 Cal. 4th at 323). Among other theories, UCL standing can be based on (1) loss of personal information; or (2) a right to unjust profits and revenues derived from one's personal information. See *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 636 (N.D. Cal. 2021) ([T]he Ninth Circuit and a number of district courts. . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury

and had standing."); *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) ("Plaintiffs meet the UCL's statutory standing requirement because they allege that the [] Defendants took their data without compensating them for it and that the data has value to both companies and consumers."). Plaintiffs plausibly allege both theories. ¶¶ 184-185.

The cases Zeta cites as purportedly rejecting these theories (Mot. at 19–20) are inapposite for several reasons. For one, two of these cases it cites do not address whether an entitlement to unjust profits are sufficient to satisfy UCL standing at all. *See* Mot. at 19 (citing *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286–87 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) (noting the injury alleged "consists closely of the alleged disclosure"); *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (noting "mere misappropriation" by itself "does not establish compensable damages")). And while they do address whether loss of personal information is itself sufficient to allege UCL injury, their conclusion that it does not is belied by the weight of authority to hold the exact opposite. *See Calhoun v. Google LLC*, 526 F.Supp.3d 605, 636 (N.D. Cal. 2021) ([T]he Ninth Circuit and a number of district courts. . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Brown v. Google LLC*, No. 20-CV-03664, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (same); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024) (same); *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *7 (N.D. Cal. Aug. 23, 2024) (same) (citing cases)).

Courts outside the Ninth Circuit, including the Southern District of New York, have reached the same conclusion. *See Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *7 (S.D.N.Y. June 25, 2025) ("courts have recognized diminution of the value of private data by way

of improper disclosure to third parties as a recognizable form of economic harm sufficient to serve as the basis for a UCL claim." ); *In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903 (KPF), 2021 WL 3406374, at *7 (S.D.N.Y. Aug. 4, 2021) (approvingly citing *Marriott* for the proposition that loss of personal information constitutes economic injury); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."). These cases make sense. Data is undoubtedly one of the most valuable commodities, and to ignore its worth by claiming it is "abstract" (Mot. at 19) is to deny the practical realities of today's age.

The two cases Zeta cites for its claim that its unjust profits are insufficient to establish UCL standing are also inconsistent with the weight of the authority. Mot. at 19 (citing *Hazel v. Prudential Fin., Inc.,* No. 3:22-cv-07465, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (holding that even if the defendant "might have made money" that "does not mean that Plaintiffs have 'lost money or property'"); (*Doe I v. Google LLC,* 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (same)). The Ninth Circuit has expressly rejected this proposition. *See Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600 (rejecting suggestion that disgorgement of unjust profits requires plaintiff to have "directly expend his or her own financial resources."); *see also Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) (finding UCL standing where defendant made profits from misappropriated data). Given that Zeta itself acknowledges the profits it made from secretly profiling Plaintiffs' and the Classes (*see* Section II), its attempt to deny the existence of a cognizable economic injury premised on these profits lacks merit.

**iv. California Plaintiffs' CDAFA Claims Are Plausible**

CDAFA is a comprehensive statute designed to prevent "tampering, interference, damage, and unauthorized access" to "computer data and computer systems." *See* Cal. Penal Code § 502(a).

Like with the UCL, Zeta only challenges whether Plaintiffs have CDAFA standing (Mot. at 28-29), which requires "damage" or "loss." Plaintiffs plausibly allege two theories of damage or loss: (1) unjust profits; and (2) depletion of device resources.

Several courts have acknowledged that a plaintiff has CDAFA standing when an entity obtains "unjust profits" from data they misappropriated. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (finding that a "disgorgement theory" can satisfy CDAFA standing); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109-10 (N.D. Cal. 2025) (same); *see also Brown*, 685 F.Supp.3d at 940 (recognizing plaintiffs have a "stake in the value of their misappropriated data).

Almost none of the cases Zeta cites address disgorgement of unjust profits, but whether a plaintiff can have CDAFA standing based on bare "privacy invasions" or the idea that the mere act of taking data *diminishes* its value in a general sense. *See* Mot. at 29-30 (citing *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. (2023) (evaluating whether "privacy invasions" themselves can support CDAFA standing not unjust profits); *Doe v. County of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (evaluating diminution in value theory)). While these may be separate grounds to find CDAFA standing, they say nothing about whether unjust profits are sufficient.

Its reliance on *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025), which held unjust profits are not enough absent a corresponding loss, should also be rejected because that proposition is inconsistent with Ninth Circuit precedent. *See Facebook Tracking*, 956 F.3d at 600 ("California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources"). Like in *Facebook Tracking*, there is no question Zeta unfairly obtained

valuable data and sold that information for its own gain. *See* ¶¶ 117-124 (describing how Zeta's own CEO recognizes it obtains "value" from consumers' data and how Zeta calculates an "average revenue per user"). That alone is sufficient.

In any event, Plaintiffs separately have CDAFA standing because Zeta's unauthorized technology takes up device resources and lifespan by occupying local storage, impacting CPU load time, reducing device bandwidth, diminishing battery life, and wasting data usage which is limited by many internet service plans. ¶ 234. This is by virtue of how Zeta's technology works, which needs to place identifiers and cookies on Plaintiffs' devices and local storage to continue to track them consistently. *See Rodriguez*, 772 F. Supp. 3d at 1110 (holding "even small harms" like "depletion" of "bandwidth" establish CDAFA standing and do not require alleging a precise degree of impact); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (occupying "storage space" and resources and causing devices to "work slower" sufficient for CDAFA standing); *Williams v. Facebook, Inc.,* 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (finding "depletion of device resources" establishes CDAFA standing).

Zeta's counterfactual theory that these harms are not cognizable because its software operates on the web browser, rather than a physical device, must be rejected. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). CDAFA is not limited to physical devices (Cal. Penal Code § 502 (protecting computers, computer systems, networks, and computer software)) and nothing about the fact that Zeta's software is web-based means that it cannot cause CDAFA damage or loss. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (finding similar web-based pixel technology causes damage or loss under the same theory presented here).

Finally, its claim that damage or loss is limited to "expenditures to verify that their computers and data were not damaged by unlawful access" (Mot. at 29) is also wrong. While it

cites *Doe I*, 741 F. Supp. 3d at 846 for this proposition, the actual statutory language cited in that case only says this is only *one type* of compensatory damages that can be recovered under CDAFA. *See* Cal. Penal Code § 502(e)(1) ("Compensatory damages *shall include* any expenditure . . . to verify that a computer system, computer network, computer program, or data was or was not altered.") (emphasis added)). Any suggestion that this non-inclusive list of *damages* limits what qualifies as "damage or loss" for *standing* is belied by CDAFA's plain language and the multitude of cases to find CDAFA standing based on unjust profits or loss of device resources.

**v. CIPA Section 631 Claims Are Plausible**

Plaintiffs allege that Zeta violated sub-parts (2)-(4) of Section 631(a) by intercepting full-string URLs revealing their private searches, queries, and behaviors (*see* Section II), and using this data to compile highly specific, comprehensive user profiles, share these profiles with customers, and facilitate their targeted advertising campaigns through the ZMP Platform. *See* Section II. Multiple courts have found similar allegations sufficient to plead CIPA 631 violations. *See Riganian*, 2025 WL 2021802, at *10-11 (finding second clause of Section 631(a) sufficiently alleged based on similar identity profiling practice); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1228 (C.D. Cal. 2024) (finding violation of third clause established where defendant provides the data to third party "for 'profit'"); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding violation of fourth clause established where defendant "transmit[s] a user's website communications to third-party companies to facilitate ad retargeting"). This Court should reach the same conclusion here.

Zeta argues that its conduct cannot violate CIPA 631 because the "content" protected by CIPA is limited to "message[s]" that are "conveyed" "in [a] conversation." Mot. at 13-14, 22-23. This is false. Courts applying CIPA 631 consistently interpret "content" to include web and app

activity, such as personal or behavioral data and search queries reflecting an individual's activity on web properties. *Riganian*, 2025 WL 2021802, at *10 (sustaining Section 631 claim where the identifying information and behavioral data together constituted "intercepted content"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) ("content" includes an individual's "search[es]" because they "could divulge a user's . . . queries[] and habits on third-party websites"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("personal search queries" convey content); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076-77 (N.D. Cal. 2023) (URLs that include the person's query or search term are "content"). That is precisely the type of "content" Plaintiffs allege Zeta intercepted (*see* Section II), and thus their claims are plausibly pled for the same reason.

The cases Zeta relies on merely address different data that is nothing like what Plaintiffs allege here. For instance, in *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020), the court found plaintiffs failed to allege "contents" because "user names and passwords" are "record information" not data revealing users' searches, queries, or other activities. Likewise, *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) dismissed claims based on the alleged collection of "button clicks" and "mouse movements" because those actions too were not communications. Zeta's conduct here of collecting full-string URLs reflecting Plaintiffs' searches, queries, and habits (*see* Section II) is the opposite of Zeta's own examples.

Zeta's separate claim that it could not intercept contents while "in transit" because "internet communications travel so quickly" (Mot. at 23) also fails. This argument ignores that Zeta's tracking technology intercepts Plaintiffs' communications "*prior to or at the same time* that the communications were received by the intended recipient," i.e., the web property's operator. ¶¶ 193, 206. There is no question that this is true because of how Zeta's technology works: it begins

tracking Plaintiffs and intercepting information for Zeta "[i]mmediately upon" Plaintiffs visiting each website. ¶ 104 (Zeta starts tracking Plaintiffs' use of the websites). These allegations are more than sufficient for CIPA's "in transit" requirement at this stage. *Riganian*, 791 F. Supp. 3d at 1091-92 (finding allegations that the defendant's event listeners intercept communications "simultaneously" and "connects" these points into "identity profile[s]" in "real time" sufficient to plead in transit requirement) *Casillas v. Six Flags Ent. Corp.*, No. 2:25-CV-6824, 2025 WL 3684543, at *8 (C.D. Cal. Dec. 15, 2025) (finding allegations that cookies are used to transmit data in "real time" sufficient to plead the "in transit" requirement). The cases Zeta cites address *different* types of technology or were at *different* procedural postures, neither of which impact the plausibility of Plaintiffs' allegations here at the pleading stage. *See* Mot. at 23 (citing *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014) (no interception when using credentials to access an email account); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877–78 (9th Cir. 2002) (no interception where messages were already posted to a bulletin board); *Torres v. Prudential Fin., Inc.*, No. 3:22-cv-07465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (summary judgment decision where communications were already on the server and only accessed by "superusers").

Zeta's throwaway consent argument comes nowhere close to meeting its burden of establishing this affirmative defense. Mot. at 24; *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (consent is "an affirmative defense for which defendant bears the burden of proof"). Consent is only effective if the defendant has made disclosures that "explicitly notify" the user of "the particular conduct" or "substantially the same conduct" and the defendant "did not exceed the scope of that consent." *Id.* Here, Plaintiffs alleged that they were not aware of the existence of Zeta due to the surreptitious nature of its technology and certainly did not consent to its

omnipresent tracking and profiling practices. ¶¶ 112-115, 126-128; *See Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1106 (N.D. Cal. 2025) (plaintiff could not have consented or opted out where he "expressly alleges a 'surreptitious collection' of data"). The sole policy Zeta mentions, the All Recipes privacy policy (Mot. at 24), made no mention of Zeta, nor of its invasive profiling of users and its sharing of data with all Zeta customers. *See* ECF No. 45-5; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 792 (general disclosure about data sharing insufficient to create consent for specific wiretapping practices).[7] And even if this policy did contain adequate disclosures (and it does not), this single website policy would only affect data Zeta intercepted from that site; it has no impact on the data Zeta unlawfully collected from Plaintiffs on every other site they visited. This is plainly inadequate to establish consent.

Finally, Zeta's only challenge to Plaintiffs' clause (3) and (4) claims is that there is no predicate violation of clause (2). Mot. at 24. The Court should sustain these claims given that Plaintiffs have sufficiently alleged their clause (2) claim, as explained above.

**vi. CIPA Section 632 Claims Are Plausible**

CIPA Section 632 prohibits intentionally using a "recording device" to "eavesdrop" or "record [a] confidential communication" without consent. Cal. Penal Code § 632(a). Similar to invasion of privacy claims, a communication is "confidential" if the individual has an "objective[ly]" reasonable expectation that he or she would not be "overheard or recorded." *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023).

[7] In any event, the sign-in-wrap interface Zeta relied on (ECF No. 45-4) is insufficient to establish assent to the privacy policy or terms of service. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016) (no assent where the statement "by placing your order, you agree to [the terms]" — found in a small gray font that was neither "bold" nor "capitalized" — was below the button "Place your order").

The use of tracking technology to intercept and compile identifying information and consumers' private interactions across the internet to develop user profiles readily meets these requirements. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023) (sustaining § 632 claim premised on tracking technology that collects individuals' identifying information and browsing data to create user profiles); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (similar).

Zeta's argument that Section 632 does not apply because Plaintiffs' communications online are "presumpti[vely]" not confidential simply misstates the law.[8] Mot. at 24. This is not a close call: "California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023); *Griffith*, 697 F. Supp. 3d at 971 (C.D. Cal. 2023) (same). And the communications Zeta intercepts and records without consent are undoubtedly private in nature, including transactions, financial health indicators, property ownership, cultural and ethnic data, psychographic data, TV engagement data, and employment and professional attributes. ¶ 87. Even if some of that information were separately publicly available, the fact that the aggregate profiles Zeta constructs predominantly contain private information is sufficient to plead a 632 claim. *See Smith*, 2025 WL 1085169, at *5 (sustaining CIPA 632 claims because "plaintiffs have alleged that they had a reasonable expectation of privacy in their personally identifiable browsing history" and an expectation not to have that information "bundled" into profiles); *see also* Section IV.B.ii.

The cases Zeta relies on deal with web site owners collecting information about their

[8] Zeta's hyperfocus on its collection of data from cooking and "celebrity gossip" websites (Mot. at 26) ignores that these are solely examples and that Zeta's data collection—as alleged in the Complaint—extends far beyond that, touching on data reflecting nearly every aspect of an individual's life.

customers from their *own web properties* and are nothing like Zeta's secret recording of Plaintiffs' communications alleged here. *See* Mot. at 25 (citing *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (defendant accessed messages on its own platform); *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) (same); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (involving mouse movement collected through session replay technology).[9]

**vii. CIPA Section 638 Claims Are Plausible**

CIPA § 638.51 prohibits the use of "pen register[s]" and "trap and trace device[s]" without a court order. *See* CIPA § 638.51. Consistent with its statutory definitions in CIPA § 638.50, several courts have recognized that modern technology that records identifying information like IP addresses is pen register or trap and trace devices. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) ("[T]he Trackers qualify as a 'device or process' because they constitute 'software that identifies consumers, gathers data, and correlates that data.'"); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts individuals' IP addresses are pen registers); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025) (holding Meta Pixel, which operates similarly to Zeta's technology, constitutes a pen register). Zeta's technology meets this definition because it intercepts Plaintiffs' Zeta ID, IP address, email address, physical address, phone numbers, and unique user identifiers (¶¶ 77-79, 109-111, 217), which is sufficient to state a Section 638.51 claim.

Ignoring these cases, Zeta's argues that CIPA § 638.51 simply does not apply to "software

[9] Zeta's reliance on cases where courts have recognized a reasonable expectation of privacy in health data, while true, does not mean all other forms of data are not protected. Mot. at 25 (citing *M.G. v. Therapymatch, Inc.*, 2025 WL 1447432, at *2 (N.D. Cal. May 19, 2025); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. Jul. 22, 2025); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

deployed on websites" at all. Mot. at 27. But this is contradicted by its own authority. For instance, *Casillas v. BOP LLC*, did not reject § 638.51's application to internet communications altogether, as Zeta claims, but rather found that the defendant's receipt of only IP addresses—a *necessary part* of every internet communication—was insufficient by itself under § 638.51. No. 24STCV15581, 2025 WL 2161288, at *5 (Cal. Super. June 18, 2025). Meanwhile, *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025), which found CIPA is limited exclusively to telephones, is an outlier decision that should be disregarded. Multiple courts have already examined and rejected its reasoning as being inconsistent with the statute's plain language and legislative intent. *See Riganian*, 791 F. Supp. 3d at 1094 (N.D. Cal. 2025) (refusing to follow *Sanchez* as inconsistent with the statutes "expansive, plain language"); *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025) (same). This makes sense: if the legislature intended to limit § 638.51 to telephones, it would have done so. Indeed, it has used this more limiting language for *other* CIPA provisions in the past. *See* §§ 638.52(c) and 638.52(d)(1) (applying only to telephone wires).

Zeta's best remaining hope is to advocate for a loophole—that it cannot be held liable under Section 638 because it intercepts both identifying information (under CIPA § 638.51) and contents (under CIPA § 631). Mot. at 26-28. But violating both provisions is not a way out of CIPA liability. *See Meta Pixel Tax Filing*, 793 F. Supp. 3d at 1153-54 (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 791 F. Supp. 3d at 1092-94(allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11-12 (N.D. Cal. Jul. 14, 2025) (same). Indeed, the legislature would not have crafted a list of enumerated exceptions if intercepting content

avoided liability. *See* § 638.51(b) (listing exceptions). The legislative history further confirms this, suggesting that CIPA § 638.51's use of the phrase "but not the contents" was only intended to make clear that a court order under its purview does *not* include the *right* to intercept "content[s]" because that type of conduct requires a "much higher standard of scrutiny" and "higher standard of probable cause." *See* 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session. In other words, the legislature did not intend to convey immunity to a defendant who is intercepting *both* addressing information and content. *See id*.[10]

Zeta cites one state court case that held otherwise (*Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025)), and two decisions by a single federal judge that followed that holding (*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. Jun. 24, 2025) and *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025)),[11] these decisions, respectfully, do not appreciate the escape-valve such an exception creates for conduct *worse* than what their own holdings say the statute prohibits.

**viii. ECPA Claims Are Plausible**

The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq*., prohibits the intentional interception of any electronic communication and the subsequent disclosure or use of the contents of an unlawfully intercepted communication. 18 U.S.C. § 2511(1); ¶¶ 153–166. Plaintiffs have adequately alleged that Zeta violated ECPA because Zeta intercepts the contents of electronic communications for both tortious and criminal purposes.

[10] Zeta's loophole analysis also contradicts its position on CIPA 631. If Zeta truly is immune from liability under Section 638 for a double violation, as it contends, then that means it must have violated Section 631 and Plaintiffs claims must proceed.

[11] The Ninth Circuit did not evaluate *Mitchener* or *Kishnani* substantively as the appeals were voluntarily dismissed. *Mitchener v. CuriosityStream, Inc.*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025); *Kishnani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 2943080, at *1 (9th Cir. Oct. 3, 2025).

**a. Plaintiffs Allege Contents of Communications Were Intercepted**

The ECPA defines the "contents" of an electronic communication as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). This "'refer[s] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Zeta clearly intercepts the contents of electronic communications, including details of Plaintiffs' searches, queries, and other activities on web properties, that fall squarely within this definition. ¶¶ 84, 87.

Zeta's attempt to rewrite Plaintiffs' allegations as only involving the interception of "keystrokes, clicks, open time, read time, and scrolling" (Mot. at 14) is not a basis to dismiss Plaintiffs' ECPA claims. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (finding the "search queries" data at issue constitutes contents because it was "more than" "basic [] information" like "keystrokes" and "mouse clicks"). This plainly is not what Plaintiffs allege. ¶¶ 79-89, 101-111.

The cases Zeta relies on are also inapposite, as the plaintiffs there either only pled the collection of "basic" metadata (not content) or did not sufficiently plead the collection of anything at all. Mot. at 13-14 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) ) (involving "basic identification and address information"); s*ee also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–1083 (C.D. Cal. 2021) (involving IP address, browser type, and keystrokes collected by session replay technology, which was never designed to capture substantive information); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (plaintiff did not describe "what information . . . was intercepted" except a "vague[]" reference that "guest records" were collected)). *Griffith v. TikTok,*

*Inc.* is further off the point because that case passed the pleading stage. See 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023) (sustaining ECPA and CIPA claims). The opinion Defendant cites is court's denial of class certification *after discovery* once plaintiffs could not provide "information about the nature or extent of their browsing activity" that defendant intercepted. No. 5:23-cv-00964, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024).

**b. Zeta Is Not a Party to the Communications**

Zeta's separate claim that it was a party to Plaintiffs' private communications with third parties makes little sense. Mot. at 14. At no point in time did Plaintiffs or any Class Members intend to communicate with Zeta, it was a third party "interloper" surreptitiously eavesdropping on Plaintiffs in the background. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (rejecting the same argument).[12]

That these communications are ultimately routed to "Zeta's servers" does not change that it was not the "intended recipient." Mot. at 14-15. If that were true, no party could ever be held liable under the ECPA because these communications are *always* re-routed to the unlawful wiretapper. Its reliance on *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) for this proposition fails, as that case merely found that someone sitting physically "at the table" in the same room "during the conversation" cannot be considered a non-party. It says nothing about whether re-routing communications secretly to one's own server is an exception to ECPA liability.

Its reference to the Third Circuit's decision in *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015), which did reach the unsettling conclusion that re-routing communications makes one an intended recipient, is also misplaced. The First,

[12] Zeta's argument that Plaintiffs do not allege it was not a party is wrong. ¶ 203 ("Plaintiffs and California class members did not reasonably expect a third party to collect . . . their information").

Seventh, and Ninth Circuit have all rejected this argument as inconsistent with the ECPA's plain text. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 608 (9th Cir. 2020) (rejecting party argument in line with First and Seventh Circuit). And while the Second Circuit has yet to decide the issue, it has routinely sustained wiretap claims against individuals who re-route communications intended for another to themselves or another third party. *See Zaratzian v. Abadir,* No. 10 CV 9049 VB, 2014 WL 4467919, at *9 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 694 F. App'x 822 (2d Cir. 2017) (finding a husband who automatically directed his wife's emails to himself violated the Wiretap Act); *Kane v. Univ. of Rochester,* No. 23-CV-6027-FPG, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (sustaining Wiretap Act violations where an entity used the Facebook Pixel to reroute communications to Facebook).

**c. The Crime-Tort Exception Applies**

But even if Zeta were a party—or its customers who use its technology consented to Zeta's interception (Mot. at 15)—the one-party consent rule still would not apply under the crime-tort exception. *See* 18 U.S.C. § 2511(2)(d)) (explaining one party consent does not apply if the interception is "for the purpose of committing any criminal or tortious act"). This is because Zeta intercepted Plaintiffs' communications for the purpose of committing at least two independent torts: the invasion of Plaintiffs' privacy and unauthorized disclosure of private information through the sale of data profiles.

As explained in Section IV.B.ii, these fundamental privacy violations are plausibly alleged because Zeta's conduct of secretly intercepting individuals' private communications, aggregating them into massive data profiles, and selling them without consent violates Plaintiffs' reasonable expectation not to be profiled or surveilled and, without a doubt, is highly offensive. Given that the aggregation and sale of this private data is Zeta's entire business (*see* Section II), Plaintiffs

have also plausibly alleged that this was the primary purpose of Zeta's conduct, such that the crime-tort exception applies. *See Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 382 (S.D.N.Y. 2024) (applying crime-tort exception where plaintiff plausibly alleged the defendant disclosed private data "for commercial ends"). Indeed, Zeta was so dedicated to its unlawful scheme that it mispresented in public filings for years that the data it sold was "opt in" only, confirming that monetizing this unauthorized for-profit surveillance network was its "primary motivation." *See* Section II.

Zeta's argument that Plaintiffs fail to meet this standard because the tortious purpose must be separate from the "act of recording itself" misses that this is plainly what is alleged here. Mot. at 16. It is not merely that Zeta acted unlawfully in intercepting Plaintiffs' private communications, but that it did so with the tortious purpose of selling and disclosing them to customers for profit. Mot. at 15 (Zeta admitting it does not provide its "products and services for free" and enters actual "contracts for these very purposes"). Indeed, its ***own authority*** recognizes this would be sufficient to meet the crime-tort exception. Mot. at 16 (citing *Caro*, 618 F.3d at 100 (acknowledging that the tort of the disclosure of private facts "require[s]" the tortfeasor to take a separate "affirmative step or steps beyond the recording" that could meet the crime-tort exception, but that plaintiff did not argue this tort applied)); *see also In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (finding the exception applies where the defendant had a "tortious purpose" of "spy[ing] on plaintiffs" and "collect[ing] their personal information without consent or compensation").

Zeta's equally bold claim that the collection, disclosure, and use of private data is "not unlawful" because it *also* uses "publicly available data" (Mot. at 16) is novel but also wrong. Even assuming Zeta's scraping public webpages were lawful (which is disputed), this does not make

Zeta's separate collection, compiling, and sale of _non_-public information somehow permissible or non-tortious. *See Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046, 2025 WL 2776356, at *10 (N.D. Cal. Sept. 16, 2025) (finding the disclosure of identifying information tied to a publicly available Facebook profile is unlawful under VPPA). Its equally erroneous claim that there are "diminished expectation[s] of privacy on the internet" somehow nullifies its tortious purpose also fails. *See* Section IV.B.ii (explaining Plaintiffs have a reasonable expectation of privacy).

No case it cites supports either of these proposition, and each merely found that a profit motive _absent_ any additional harms would be insufficient to invoke the crime-tort exception or failed to allege any independently tortious conduct at all. *See* Mot. at 16-17 (citing *Joiner v. NHL Enters., Inc.*, No. 23-CV-2083, 2025 WL 2846431, at *9 (S.D.N.Y. Aug. 29, 2025) (declining to apply exception based on a "pecuniary motive" when there are no "particular harm flowing" to the plaintiff from sharing which "hockey highlight reels they watched"); *In re DoubleClick*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (finding that alleging "by virtue of its tortious acts" that a defendant "must have had a tortious purpose" insufficient to meet the exception); *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (plaintiff "offer[ed] nothing to show" a tortious intent but only that a tort was committed). The same is not true here, when Zeta's only purpose of collecting what it intentionally misrepresented to be "consented-to" data was to get data in a privacy invasive manner so it could sell it for profit. *See Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (applying crime-tort exception where purpose of interception was to create privacy-invasive user profiles).

Finally, Zeta's suggestion that the crime-tort exception only applies to "sensitive information" like medical information falling under HIPAA (Mot. at 16-17) is also incorrect. *See Riganian*, 791 F. Supp. 3d at 1090 (applying crime-tort exception in analogous case) (citing cases);

*Castillo v. Costco Wholesale Corp.,* No. 2:23-CV-01548, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (applying crime-tort exception where purpose of interception was to serve "targeted advertisements for financial gain" and separately evaluating HIPAA violations as an independent basis to apply the exception). Nothing in ECPA's crime-tort exception limits its purview to the illicit use of only "sensitive" or "HIPAA" protected data. *See Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) ("[I]f, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.").

**ix. GBL Section 349 Claims Are Plausible**

GBL § 349 prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). Zeta's Motion only addresses the injury element of Plaintiffs' claim and therefore concedes that its conduct is misleading in a material way and directed at consumers. *See* Mot at 17-18; *Martinez v. Lvnv Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016) (finding defendants "essentially concede" plaintiff "adequately pled" elements of GBL claim that it did not raise argument for).

As several courts have found, privacy harms, including those caused by the surreptitious recording or interception of information as well as the disclosure of that information, are cognizable injuries under GBL § 349. *See, GoodRx Holdings, Inc.,* at *11 ("Plaintiff […] has statutory standing [for his injuries] because the surreptitious collection of his [] information is a privacy violation and[,] therefore, a compensable harm under [N.Y.] GBL § 349"); *Cooper v. Mount Sinai Health Systems, Inc.,* 742 F. Supp. 3d. 383-384 (S.D.N.Y. 2024) ("a privacy injury can be the basis for a [GBL] § 349 claim where [] confidential, individually identifiable information […] is collected without the individual's knowledge or consent."); *Bose v. Interclick,*

*Inc.*, 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of GBL § 349.]"); *Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy invasion claim … may be stated under GBL § 349") (collecting cases).

In line with (and in many ways worse than) these examples, Plaintiffs here allege that, Zeta constructed "persistent, individual-level user profiles" (¶ 71) for over 200 million consumers (¶ 76) reflecting nearly every single aspect of their private lives. ¶¶ 79–80. That private data was then disclosed without authorization to third parties who pay to access these profiles. ¶¶ 91-93. These privacy harms from the unlawful interception and subsequent disclosure of Plaintiffs' and the Class's private data support Plaintiffs' GBL claim.

Though not required, Plaintiffs also allege that Zeta caused economic harm, which is an independent basis for recovery under the GBL. *See Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8 (S.D.N.Y. 2021) ("[a]llegations that a plaintiff's private information has lost value may plead a cognizable economic injury."); *see also, e.g., In re Facebook Priv. Litig.,* 572 F. App'x 494 (9th Cir. 2014) (reversing district court's dismissal of claims where plaintiffs plead lost value of PII); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *13 (E.D. Pa. 2022) (denying motion to dismiss after finding allegations of lost value of PII plausibly constitute injury). This is confirmed by the fact that Zeta's entire billion-dollar business model relies on the collection and sale of this data (¶¶ 117-124), and Zeta's own quantification of the "average revenue per user" ("ARPU") for each individual in its system. *Id.*

Not a single case cited by Zeta rejected either of these theories as a matter of law, but were simply different cases (such as data breaches) involving different types of data (such as usernames). Mot. at 18 (citing *De Medicis,* 2022 WL 3043669, at *6 (data breach where plaintiffs

failed to show that "usernames and passwords" have economic value, such as by alleging the "existence of a market"); *Bonobos*, 2022 WL 170622, at *3–4 (data breach where plaintiff failed to show anyone would have "bought [his stolen data]" including his address, encrypted password, and last four digits of his credit card) (internal citation omitted); *Braynina v. TJX Companies, Inc.*, No. 1:15-cv-5897, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016 (evaluating whether travel expenses are a cognizable injury under the GBL in price premium case)). Whether there is a privacy injury in a limited data breach, or whether there is value in the last four digits of a credit card number, says nothing about whether Zeta's creation of identifiable user profiles containing objectively private data satisfies the GBL's injury requirement.

Zeta's reliance on *Cohen v. Casper Sleep*. 2018 WL 3392877, at *7 is even more off point. There, Judge Pauley cited favorably the Second Circuit's decision in *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017), where the Court acknowledged that the collection of "confidential, individually identifiable information" is a sufficient privacy injury for purposes of the GBL. Plaintiffs in *Cohen* failed to clear this hurdle because their case primarily concerned "mouse clicks and keystrokes" to "de-anonymize[]" users. 2018 WL 3392877, at *1-2. The same is not true here, where Plaintiffs allege that Zeta collects the content of their private communications and thousands of identifiable data points. *See Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369, 384 (S.D.N.Y. 2024) (sustaining GBL claims where defendant collected "individually identifiable information" and "confidential" data).

**x. Unjust Enrichment Claims Are Plausible**

Zeta's only challenge to Plaintiffs' unjust enrichment claims is that they are purportedly duplicative of Plaintiffs' GBL claim and "other" unidentified "statutory claims." Mot. at 33-34.

This is wrong. The Second Circuit has held that "two claims are duplicative of one another

if they 'arise from the same facts . . . and *do not allege distinct damages*.'" *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (emphasis added). Here, Plaintiffs allege distinct damage in their unjust enrichment cause of action (disgorgement of profits), which is not a remedy sought on a nationwide basis for any other claim. Courts have declined to dismiss unjust enrichment claims when it, like here, addresses a different type of damages theory. *See Warner v. Starkist, Co.*, No. 1:18-CV-406, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) (denying motion to dismiss because unjust enrichment's elements were different than the other causes of action pled in the operative complaint); *In re Credit Default Swaps Auctions Litig.*, 710 F. Supp. 3d 895, 948 (D.N.M. 2023) (denying motion to dismiss because alleged unjust enrichment damages did not overlap with other claims). Zeta's own authority recognizes that when "distinct damages" are sought under principles of unjust enrichment such claims are not duplicative. *See* Mot. at 34 (citing *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 586 (S.D.N.Y. 2024)).

The other cases Zeta cobbles together involve the opposite scenario, where there either was no explanation of how the theories differed or where the plaintiff's legal claims and unjust enrichment were truly dependent on the same theories and damages. See Mot. at 33-34 (citing *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (damages for GBL and unjust enrichment were the same); *Gay v. Garnet Health*, 7:23-cv-06950, 2024 WL 4203263, at *6 (S.D.N.Y. Sept. 16, 2024) (claims for breach of fiduciary duty and breach of confidentiality were duplicative of unjust enrichment claim and alleged the same "damages suffered"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) (plaintiffs failed to show how the VPPA and unjust enrichment claim "differ"); *Ohanian v. Apple Inc.*, No. 1:20-cv-5162, 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) ("[a]ll of the claims" were "based on the [same] theory" of a single misrepresentation and "identical"); *Afriyie v. NBCUniversal Media, LLC*, 775

F. Supp. 3d 791, 813 (S.D.N.Y. 2025) (dismissing unjust enrichment claim because it mirrored other claims that the Court found subject to dismissal)). The same is not true here, as only Plaintiffs' unjust enrichment claim addresses Zeta's disgorgement of profits on a nationwide basis.

#### xi. Claims Declaratory Judgment Act Are Plausible

The Declaratory Judgment Act ("DJA") "specifically allows a plaintiff to seek declaratory relief regardless of the other claims brought." *Hart v. TWC Productions and Technology LLC*, 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021). Here, a declaratory judgment and injunctive relief is appropriate because Zeta continues to collect and sell access to Plaintiffs' data. Courts routinely allow declaratory relief and injunctions when plaintiffs allege they are at risk of future harm, like here. *See, e.g., In re Arby's Restaurant Group Inc. Litig.*, No. 1:17-CV-0514, 2018 WL 2128441, at *14-15 (N.D. Ga., Mar. 5, 2018) (sustaining claim for declaratory judgment where defendant contained to maintain an "inadequate security system"); *First Choice Federal Credit Union v. Wendy's Co.*, No. CV 16-506, 2017 WL 9487086, at *5 (W.D. Pa., Feb. 13, 2017) (similar).

Zeta's only argument is that Plaintiffs' claims pursuant to the DJA should be dismissed because Plaintiffs' other causes of action fail. Because Plaintiffs plausibly allege each of the causes of action raised herein, this is not a basis to dismiss Plaintiffs' claims pursuant to the DJA.

## V. CONCLUSION

For the reasons set forth herein, the Court should deny the Motion with respect to all counts. Should the Court be inclined to grant the motion, either in full or in part, Plaintiffs respectfully request that this dismissal be without prejudice and that Plaintiffs be given leave to replead. *See* Fed. R. Civ. P. 15; *see also Agerbrink v. Model Service LLC*, 155 F.Supp.3d 448, 452 (S.D.N.Y. 2016) (explaining leave to amend "should be freely granted.").

Dated: February 19, 2026

Respectfully submitted,

By: <u>*/s/ Amanda Fiorilla*</u>
Amanda Fiorilla
Christian Levis
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 110
White Plains, New York 10601
Tel.: (914) 997-0500
Fac.: (914) 997-0035
*clevis@lowey.com*
*afiorilla@lowey.com*

Gary E. Mason
Danielle Perry (*Admitted Pro Hac Vice*)
**MASON LLP**
5335 Wisconsin Avenue N.W., Suite 640
Washington, DC. 20015
Tel.: (202) 429-2290
*gmason@masonllp.com*
*dperry@masonllp.com*

*Interim Co-Lead Class Counsel*

Blake Hunter Yagman
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
1330 Ave. of the Americas, Suite 23A
New York, New York 10019
Tel.: (929) 709-1493
*byagman@sshhzlaw.com*

*Interim Executive Committee Member*

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Tel.: (212) 350-8850
Fac.: (212) 350-8860
*israel.david@davidllc.com*

*Interim Executive Committee Member*

*Attorneys for Plaintiffs R.E.A., K.G., Diane Ayerdi, and the Putative Classes*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 11,536 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2026

*/s/ Amanda Fiorilla*