**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ZETA GLOBAL DATA PRIVACY LITIGATION

Case No. 1:25-cv-05780-PAE

THIS DOCUMENT RELATES TO:

*All Cases*
1:25-cv-05780-PAE
1:25-cv-05823-PAE

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT DOTDASH MEREDITH, INC.'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. Plaintiffs' Injuries Confer Article III Standing ..... 4

B. California Law Applies to California Plaintiffs and the California Subclass ..... 6

C. Plaintiffs' Complaint States Plausible Claims for Relief ..... 10

i. California's Unfair Competition Law ..... 10

ii. California's Comprehensive Computer Data Access and Fraud Act ..... 12

iii. California's Right to Privacy ..... 15

iv. California's Invasion of Privacy Act ..... 16

v. New York's General Business Law § 349 ..... 21

vi. Unjust Enrichment ..... 23

vii. Declaratory Relief ..... 24

D. DotDash Cannot Reserve the Right to Move to Compel ..... 25

V. CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adam v. CaringBridge, Inc.*,
No. 25-CV-06042-WHO, 2025 WL 3493565 (N.D. Cal. Dec. 5, 2025) ....................6

*Adams v. Tops Markets, LLC*,
No. 21CV753JLSHKS, 2023 WL 4828029 (W.D.N.Y. July 7, 2023)........................8

*AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*,
661 F. App'x 2 (2d Cir. 2016).........................................................................8

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016).........................................................23

*Bose v. Interclick, Inc.*,
No. 10 CIV. 9183 DAB, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)..................21

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)........................................................14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)...................................................13, 15

*Brown v. Google LLC*,
No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)..........................11

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)................5

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021)......................................................10, 11

*Cappello v. Walmart Inc.*,
No. 18-CV-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ....................11

*Cappello v. Walmart, Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019)........................................................10

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-CV-6824-CBM-PD, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ..18, 19

*Certicable Inc. v. Point 2 Point Commc'ns Corp.*,
No. 2:23-CV-5322 (NJC) (SIL), 2025 WL 622547 (E.D.N.Y. Feb. 26, 2025) .......25

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020) .......................................................... 26

*Cherkin v. PowerSchool Holdings, Inc.*,
No. 24-CV-02706, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ............................ 13

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009) .......................................................... 22

*Ciccone v. Cavalry Portfolio Servs., LLC*,
No. 21-CV-2428(JS)(JMW), 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ............ 5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......................................................... 20

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) .................................................. 22

*Cooper v. Bonobos, Inc.*,
No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ......................... 5

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d. 369 (S.D.N.Y. 2024) .......................................................... 21

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......................................................... 18

*CTI III, LLC v. Devine*,
No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26, 2022) ....... 14

*Custom Packaging Supply, Inc. v. Phillips*,
No. 215CV04584, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ............................ 14

*Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .............................................................. 11

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 10, 22

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......................................................... 18

*Doyle v. UBS Fin. Servs., Inc.*,
144 F.4th 122 (2d Cir. 2025) ...................................................................... 26

*Edelman v. Starwood Capital Grp., LLC*,
70 A.D.3d 246 (N.Y. 1st Dep't 2009) .......................................................... 23

*Epstein v. Epstein*,
843 F. 3d 1147 (7th Cir. 2016)....................7

*Erhart v. Bofl Holding, Inc.*,
387 F. Supp. 3d 1046 (S.D. Cal. 2019)....................14

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08–05780–JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)....................14

*First Choice Federal Credit Union v. Wendy's Co.*,
No. CV 16-506, 2017 WL 9487086 (W.D. Pa., Feb. 13, 2017) ....................25

*Frasco v. Flo Health, Inc.,*
349 F.R.D. 557 (N.D. Cal. 2025)....................6

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)....................3

*Gutierrez v. Converse Inc.,*
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)....................14

*Hazel v. Prudential Fin., Inc.*,
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)....................24

*Hu v. Whaleco, Inc*.,
779 F. Supp. 3d 265 (E.D.N.Y. 2024)....................6

*In re Arby's Restaurant Group Inc. Litigation*,
2018 WL 2128441 (N.D. Ga., Mar. 5, 2018)....................24

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ....................23

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................12, 15, 18

*In re GE/CBPS Data Breach Litig.*,
No. 20 CIV. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ....................11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................20

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021)....................25

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011) ....... 11

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....... 6

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....... 12, 14

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ....... 13, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....... 15

*In re Tiktok, Inc., Minor Priv. Litig.*,
No. MDL 3144-GW-RAOX, 2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) ....... 10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....... 4, 21

*Jensen v. Cablevision Systems Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ....... 26

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ....... 16

*Joiner v. NHL Enters., Inc.*,
No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ....... 8

*Joiner v. NHL Enters., Inc.*,
No. 23-CV-2083 (LAK), 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025) ....... 7

*Jones v. Abel*,
No. 25-CV-779 (LJL), 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025) ....... 8

*Jones v. Peloton Interactive, Inc.*,
No. 23-CV-1082-L-BGS, 2024 WL 3315989 (S.D. Cal. July 5, 2024) ....... 19

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....... 19

*Kane v. University of Rochester*,
No. 23-CV-6027, 2024 WL 1178340 (W.D.N.Y. March 19, 2024) ....... 23

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....... 24

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (Cal. 2006) ..... 6

*Kis v. Cognism Inc.*,
No. 22-CV-05322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ..... 11

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (Cal. 2011) ..... 10

*Lane v. Fein, Such & Crane, LLP*,
767 F. Supp. 2d 382 (E.D.N.Y. 2011) ..... 22

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ..... 7

*Liau v. Weee! Inc.*,
No. 23 CIV. 1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ..... 4

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ..... 5

*Lively v. Wayfarer Studios LLC*,
786 F. Supp. 3d 695 (S.D.N.Y. 2025) ..... 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..... 16

*M. H. v. Done Glob. Inc.,*
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ..... 17, 20

*Mahru v. Superior Ct.,*
191 Cal. App. 3d 545 (Cal. Ct. App. 1987) ..... 13

*Martinez v. Lvnv Funding, LLC*,
No. 14CV00677RRMST, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016) ..... 21

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..... 19

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..... 22

*Meta Pixel Tax Filing*,
724 F. Supp. 3d 987 ..... 11

*Meyerson v. Prime Realty Services, LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ..... 22

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................................................................5

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017)..........................................................................22

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.,*
171 F. Supp. 3d 107 (S.D.N.Y. 2016)................................................................25

*New Show Studios LLC v. Needle*,
2014 WL 2988271 (C.D. Cal. June 30, 2014)......................................................14

*Pattison v. Teladoc Health, Inc.*,
No. 23-CV-11305 (NSR), 2025 WL 1756364 (S.D.N.Y. June 25, 2025)...........7, 11

*People v. Gentry*,
234 Cal. App. 3d 131 (Cal. Ct. App. 1991) .........................................................13

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ...............................................................................7, 8

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)................................................................19

*Rodriguez v. Ford Motor Co.,*
*722 F. Supp. 3d 1104 (S.D. Cal. 2024)* ...............................................................*17*

*Rodriguez v. Ford Motor Co.*,
722 F. Supp.........................................................................................................17

*Rodriguez v. Google LLC,*
*772 F. Supp. 3d 1093 (N.D. Cal. 2025)* ..............................................................*15*

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)..........................................................19

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................12

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024).................................................................................4

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) ....................................................................16

*Semien v. PubMatic Inc.*,
No. 25-CV-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .........................4

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)............................................................12, 15

*Shostack v. Diller*,
No. 15CIV2255, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016)..................................22

*Smidga v. Spirit Airlines, Inc.*,
No. 2:22-CV-1578, 2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) ............................16

*Smith v. Chase Manhattan Bank, USA, N.A.*,
293 A.D.2d 598 (N.Y. 2002)....................................................................................22

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)............................15

*Smith v. YETI Coo*lers, LLC,
754 F. Supp. 3d 933 (N.D. Cal. 2024). .....................................................................20

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)..........................................................................................6

*TD Auto Fin. LLC v. Cnty. of Putnam*,
No. 21 CIV. 9080 (AEK), 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023)...............24

*Tech. in P'ship, Inc. v. Rudin*,
894 F. Supp. 2d 274 (S.D.N.Y. 2012)......................................................................26

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ...........16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................................................................................................4

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .....................................................................................14

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..............................................................23, 24

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
No. 21-CV-04895-JST, 2022 WL 20184651 (N.D. Cal. July 7, 2022) ...................14

*Wallace v. Health Quest Sys., Inc.*,
2021 WL 1109727 (S.D.N.Y. 2021) .........................................................................23

*West v. Ronquillo-Morgan*,
526 F. Supp. 3d 737 (C.D. Cal. 2020) ......................................................................14

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ....................15

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................17

*Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ....................5

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ....................6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................16, 18

**STATUTES**

28 U.S.C. § 2201(a) ....................24

Cal. Penal Code § 502(a) ....................12

New York's General Business Law § 349 ....................21, 22

New York's General Business Law § 349(a) ....................21

**RULES**

Fed. R. Civ. P. Rule 15 ....................27

## I. INTRODUCTION

DotDash's[1] Motion to Dismiss ("Motion" or "Mot.") (ECF No. 49) asks this Court to treat Plaintiffs' allegations as if they involved nothing more than the routine disclosure of "basic information." *See* Mot. at 9. But that is not what the FAC actually says. Plaintiffs allege DotDash intentionally aided and conspired with Zeta to deploy tracking technology across DotDash web properties and within DotDash's own email communications, enabling the real-time interception and disclosure of Plaintiffs' and Class Members' identifiable data. This data includes Plaintiffs' identities, persistent identifiers, and the full content of their online activity—including the specific searches they performed, articles they viewed, and content they accessed. These interceptions occur contemporaneously with Plaintiffs' interactions with DotDash's websites and emails from their state of residence. The FAC further alleges that Zeta uses this intercepted data to build detailed identity profiles, which it provides (for profit) to third parties for targeted advertising and other commercial purposes—conduct DotDash knowingly enabled and from which it directly benefited. *See* ECF No. 44 at 15 (Zeta acknowledging "Zeta's customers do not gain access to its products and services for free—in fact, its customers enter contracts for these very purposes.").

This is precisely the type of intentional interception and commercial exploitation of private communications that courts consistently recognize as a concrete and highly offensive invasion of privacy—not a harmless "procedural" (Mot. at 7) technicality.

DotDash's Motion presents no legitimate basis to divert from this precedent. Indeed, the thrust of DotDash's Motion consists of simply *denying* the privacy-invasive nature of its conduct, the real-world harm it causes, and the nature of the data at issue. But DotDash cannot transform

[1] All capitalized terms herein have the same meaning used in the First Amended Consolidated Class Action Complaint ("FAC" or "¶"). *See* ECF No. 35.

Plaintiffs' allegations into non-content, or non-valuable discrete pieces of innocuous data, just by saying so. DotDash cannot avoid the dozens of cases holding this conduct actionable simply by citing inapposite cases involving *different* data or *different* conduct.

Finally, its bold argument that California Plaintiffs—who had their data intercepted from their residence in California and were harmed in that State—cannot avail themselves of California's laws designed expressly to protect them from this kind of privacy-invasive conduct, is equally erroneous. Nearly every Court to consider the issue has uniformly found that the locus of the tort and injury in such circumstances is California where Plaintiffs reside. DotDash's contention that this conduct occurs from its *headquarters* makes no sense from a factual or legal perspective and would have the practical effect of creating immunity for companies with headquarters outside California to persistently and routinely violate the constitutional and statutory rights granted to California citizens. That cannot be, and is not, the law.

Because DotDash's Motion depends on reframing Plaintiffs' well-pled allegations and ignoring controlling precedent, it provides no basis for dismissal.

## II. <u>FACTUAL BACKGROUND</u>

DotDash operates a variety of digital media properties, including People.com, where individuals can search and read content across a number of different topics, including entertainment, health, crime, human interest, and shopping. ¶ 103. DotDash also provides email newsletters, which provide additional content. *Id.*

Seeking to profit from individuals who visit its web properties and subscribe to its services, DotDash deliberately incorporated Zeta's tracking technology on both its websites and email correspondence. ¶¶ 46-47, 102-111. When Plaintiffs and Class Members interacted with DotDash's website or emails, this tracking technology immediately intercepted private data about the

individual and their interactions in real time, including their email address, IP address, device identifiers, as well as the specific content they viewed or searched. ¶¶ 104-105, 109-111.

DotDash used this technology knowing that it would enable Zeta to capture this information, and that Zeta would use this data to create persistent identity profiles tied to individual consumers. ¶ 46-47, 231, 248. It also knew Zeta sells access to these profiles to third parties, which are used to facilitate persistent user tracking across the web and targeted advertising based on each individual's habits, propensities, and prior behavior. ¶¶ 245-248. Indeed, as stated by Zeta itself, "Zeta's customers do not gain access to its products and services for free—in fact, its customers enter contracts for these very purposes." *See* ECF No. 44 at 15.

Plaintiff Ayerdi, in particular, is a California resident who subscribed to the People.com newsletter. ¶¶ 38, 102. While present in California, Plaintiff Ayerdi visited DotDash web properties and opened emails containing the People.com newsletter. ¶¶ 103-105. When Plaintiff Ayerdi took these actions, Zeta's tracking technology immediately intercepted her private data, including the content of her communications, from her location in California. *Id*. Zeta used this data to maintain an identifiable user profile on Plaintiff Ayerdi, and sold access to this profile to other third parties. ¶¶ 109-111.

Plaintiff Ayerdi was never informed that DotDash had embedded third-party surveillance technology on its websites and emails, nor did DotDash obtain Plaintiffs' consent to intercept, disclose, and monetize their private communications and activity. ¶¶ 106-107, 112-114.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802

F.3d 437, 443 (2d Cir. 2015).

## IV. ARGUMENT

### A. Plaintiffs' Injuries Confer Article III Standing

As confirmed by the Supreme Court, "intrusion upon seclusion" is a "concrete" harm sufficient to confer Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). So too is "public disclosure of private facts." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541–43 (2d Cir. 2024) (where the "core allegation is that his personally identifiable information . . . was exposed to an unauthorized third party" . . . the court has "'no trouble' holding . . . that [plaintiff's] alleged harm is sufficiently concrete to withstand dismissal."). Here, Plaintiffs allege that DotDash facilitated the interception and use of Plaintiffs' identifiable data, including email addresses, internet protocol ("IP") addresses, device and user identifiers, and the full name of articles and other content viewed by Plaintiffs, so that a data broker (*i.e.,* Zeta) and other third parties (Zeta's customers) could profile and target Plaintiffs across the internet. This is more than sufficient to allege concrete harm and establish Article III standing. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949-52 (N.D. Cal. 2023) (finding the disclosure of non-anonymized data reflecting "specific web pages viewed" and other "behavior" from ESPN web properties sufficient to allege injury-in-fact); *Semien v. PubMatic Inc.*, No. 25-CV-03164-SI, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026) (finding Article III standing and denying motion to dismiss in an almost identical pixel tracking case).

DotDash attempts to bypass this precedent by relying on a string of inapposite data breach cases evaluating the separate issue of whether those breaches posed an "imminent" risk of identity theft or fraud by "malicious actors." *See Liau v. Weee! Inc.*, No. 23 CIV. 1177 (PAE), 2024 WL 729259, at *4-5 (S.D.N.Y. Feb. 22, 2024) (discussing the three *McMorris* factors for evaluating

whether a breach poses a "substantial risk of future identity theft or fraud"); *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *4-5 (S.D.N.Y. Jan. 19, 2022) (similar). But whether a data breach poses a potential for fraud says nothing about whether the intentional disclosure of private data is a concrete *privacy* harm for purposes of Article III standing. DotDash's reliance on *Ciccone v. Cavalry Portfolio Servs., LLC*, involving violations of the Fair Debt Collection Practices Act ("FDCPA") that also is not at issue here, fails for the same reason. *See* Mot. at 9 (citing *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (finding a debt-collector's conveyance of debt status to a mailing-vendor in violation of the FDCPA is a "different type of harm" than the "disclosure of private facts"). To be clear, this is not a mere data breach: it is a business model that DotDash has deliberately designed to pervasively acquire mass troves of data, not an incidental loss of data due to the failure to take adequate safeguards.

DotDash's reference to this Court's decision in *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) does not help its argument. As this Court (correctly) noted in that action, the *Reuters* plaintiffs lacked standing because they had expressly "disclaim[ed]" that the "content" of their communications were intercepted and were alleging purely "procedural" violations of CIPA based on the disclosure of only IP addresses. *Id.* at *3, 4 n.7. The other cases DotDash cites also failed to allege "content" under CIPA or otherwise failed to specify what "personal information" was allegedly disclosed. *See* Mot. at 8-10 (citing *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3–4 (C.D. Cal. Apr. 5, 2023) (relying on a "bare" procedural violation and failing to "identify any specific personal information" that was disclosure); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (failure to allege "what type of information" was allegedly disclosed); *Lightoller v.*

*Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding standing lacking where plaintiff failed to allege "any personal information" was disclosed); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061-62 (N.D. Cal. 2012) (finding geolocation data and "personally identifiable information" were not itself "content"). This plainly is not an issue here, as Plaintiffs clearly allege DotDash disclosed "content" (i.e., Plaintiffs' actual online activity, such as full-string URLs revealing what they viewed), as well as personal information. *See* ¶¶ 102-111.

**B. California Law Applies to California Plaintiffs and the California Subclass**

It is hard to imagine how California residents, who used web properties from their location in California, and had their private data intercepted from that state, somehow cannot avail themselves of California's laws protecting them from this type of privacy-invasive conduct occurring within California's own borders. Nearly every court to consider the issue has agreed they can. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 958 (N.D. Cal. 2024) (rejecting argument that California residents cannot bring CIPA claims because there is a "sufficient California nexus"); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (Cal. 2006) (finding CIPA applies to out-of-state entity's interception of a California resident's communication).

This is because the location of the tort (i.e., the unlawful interception) and the location of the injury (i.e., privacy harms) both occur within California.[2] *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("[T]he privacy injury occurs at the point of interception without consent."); *Adam v. CaringBridge, Inc.*, No. 25-CV-06042-WHO, 2025 WL 3493565, at *4 (N.D.

[2] DotDash's assertion that some courts determine choice of law by reference to a defendant's "terms of service" is inaccurate. Mot. at 12. Both cases it cites dealt with arbitration clauses, not choice of law issues. *See Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002).

Cal. Dec. 5, 2025) (recognizing that "Google and Meta pixels 'intercepted' plaintiff's information at her browser in California, rather than CaringBridge's servers in Minnesota"); *Epstein v. Epstein*, 843 F. 3d 1147, 1150 (7th Cir. 2016) (holding interception of plaintiff's emails occurred when they were copied, not when the wrongdoer received them).

New York courts have reached the same conclusion and have no problem applying California law to the claims of California residents. *See Pattison v. Teladoc Health, Inc.*, No. 23-CV-11305 (NSR), 2025 WL 1756364, at *6–*7 (S.D.N.Y. June 25, 2025) (sustaining CIPA, UCL, CLRA claims brought against a New York entity); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 44 (S.D.N.Y. 2025) (sustaining California resident's CIPA claim). This makes sense. As aptly put by the Third Circuit, to hold otherwise would allow defendants—who undoubtedly operate in other states and cause harm to those residents—to insulate themselves from liability so "long as they parked their servers in a state with weak privacy protections[.]" *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 n.10 (3d Cir. 2022). Because this would undermine a state's right to protect their own citizens and acts taking place within its own borders, this of course is not the law.

It is unsurprising, in light of this authority, that the sole pixel-related case DotDash cites is a single magistrate judge's report and recommendation, which was never objected to and not discussed in substance by the district court judge.[3] *See Joiner v. NHL Enters., Inc.*, No. 23-CV-2083 (LAK), 2025 WL 3126106, at *1 (S.D.N.Y. Sept. 29, 2025) (challenging only VPPA claims and whether leave to amend should be granted). No court has followed *Joiner*, which makes sense for at least two reasons. First, as a factual matter, the court concluded that the "install[ation]" of

[3] DotDash's suggestion that this case should be stayed until the *Joiner* appeal is resolved is moot. *See Joiner v. NHL Enterprises, Inc.*, No. 25-2789, ECF No. 30.1 (2d Cir. January 23, 2026) (withdrawing appeal).

the pixel by a "manager" was the "tortious conduct." *Joiner v. NHL Enters., Inc.*, No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431, at *11-12 (S.D.N.Y. Aug. 29, 2025). But pixels cannot intercept *anything* until an individual visits a website where a pixel is present (i.e., when the website visitor views the website from their location). Second, the analysis—concluding that the state where the defendant is headquartered should have their own state laws apply regardless of where the interception occurred—would lead to the exact preposterous result cautioned against in *Popa*. Following this reasoning would mean any entity based in New York could violate California's constitutional and statutory protections without facing liability. Because that result would be "absurd" from both a factual and legal perspective, the Court should not follow *Joiner*. *See Popa*, 52 F.4th at 132 n.10.

Of the three other cases DotDash cites, *Adams v. Tops Markets, LLC*, No. 21CV753JLSHKS, 2023 WL 4828029, at *5 (W.D.N.Y. July 7, 2023) *supports* Plaintiffs' position here because it applied the law of the state where plaintiff "viewed" and "bought" the underlying product, just like the California Plaintiffs "viewed" content from their domicile in California. Another case has no relevance at all, because it applied a "presumpt[ion]" for false statements that are disseminated nationwide and there were no relevant conduct aside from a non-operative choice of law clause. *See Jones v. Abel*, No. 25-CV-779 (LJL), 2025 WL 2821370, at *9 (S.D.N.Y. Oct. 3, 2025). There is no applicable presumption here, and Plaintiffs have demonstrated most (if not all) contacts point to California. And the third case, *AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016), exclusively alleged misrepresentation claims, which occurred in New York. The same is not true here, where the claim emanates from California, where the wrongful conduct (i.e., the interception) took place.

But in any event, even if there were any doubt over whether California law can apply (and

there is not), conducting a choice of law now would be entirely premature. Neither DotDash (nor Zeta) make any attempt to substantiate what conduct (if any) occurred in New York beyond relying on their corporate headquarters. While Plaintiffs maintain that *where* the pixel was installed is irrelevant (despite *Joiner*)—because the pixel cannot possibly fire until the California Plaintiffs interact with a website from California—it is currently unknown where or who personally installed Zeta's pixel, if it was ever modified, where Zeta's servers are located, and so on. These are all facts in Defendants' possession that will be revealed in discovery, and the Court should not allow Defendants to side-step this fact-intensive analysis by hiding behind their corporate headquarters. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 735 (S.D.N.Y. 2025) (declining to conduct choice of law analysis between New York and California law on the pleadings when conduct "occurred at unspecified locations").

Indeed, despite how adamant Defendants are on conducting a choice-of-law analysis now, they both strategically omit that nearly every individual they identify in their initial disclosures (aside from Plaintiffs) are not located in New York. Specifically, DotDash identified only one individual in its initial disclosures with knowledge concerning its "incorporation of Zeta's Liveintent pixel onto Dotdash publications' email newsletters that were sent to [Plaintiffs] Ayerdi, R.E.A. and K.G. and onto Dotdash publications' websites as accessed by [Plaintiff] Ayerdi, R.E.A. and K.G." *See* Declaration of Amanda Fiorilla ("Fiorilla Decl.") ¶ 6. That individual is Patrick McCarthy, who does not reside in New York, but in the State of Oregon. *Id.* ¶¶ 6-7.[4]

Meanwhile, Zeta has only identified two individuals in its initial disclosures, Gareth Evans and Philip Markert. *Id.* ¶¶ 8-11. Both individuals are listed as potentially having knowledge of

[4] DotDash identified only one other individual, whose knowledge is limited to affirmative defenses, terms of service, and privacy policies, named Cara Hall. While she appears to reside in New York, she is not identified as having knowledge about the Zeta pixel.

"Zeta's technology used on the websites . . . and [an] understanding of Zeta's products." *Id.* ¶¶ 9-10. Mr. Evans resides and works at Zeta in the United Kingdom, and Mr. Markert resides and works at Zeta from the Atlanta metropolitan area. *Id.* ¶¶ 12-13. Thus, by Defendants' own disclosures, there is apparently ***no individual in the New York area*** that has any knowledge or involvement in the use of Zeta's pixel whatsoever.

This requires rejecting Defendants' argument that only New York law can govern the claims at issue or, at a minimum, deferring this argument until discovery is complete.

### C. Plaintiffs' Complaint States Plausible Claims for Relief

#### i. California's Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (Cal. 2011) (quoting § 17200). DotDash only challenges whether Plaintiffs have standing to bring UCL claims. Mot. at 18-19.

"[T]here are 'innumerable ways' to demonstrate economic injury," *Cappello v. Walmart, Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (quoting *Kwikset*, 51 Cal. 4th at 323). Relevant here, Plaintiffs allege: (1) loss of objectively valuable personal information; and (2) a right to recover DotDash's unjust profits and revenues derived from that information. *See Calhoun v. Google LLC*, 526 F.Supp.3d 605, 636 (N.D. Cal. 2021) ([T]he Ninth Circuit and a number of district courts . . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) ("Plaintiffs meet the UCL's statutory standing requirement because they allege that the [] Defendants took their data without compensating them for it and that the data has value to both companies and consumers.").

This is the prevailing trend. *See In re Tiktok, Inc., Minor Priv. Litig.*, No. MDL 3144-GW-

RAOX, 2025 WL 3628598, at *21 (C.D. Cal. Nov. 5, 2025) (emphasizing that "'the prevailing trend' is to recognize a property interest in personal information," and "agree[ing] with the growing number of courts" that plaintiffs have a property interest in personal information) (collecting cases)); *Calhoun*, 526 F.Supp.3d at 636 ([T]he Ninth Circuit and a number of district courts . . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Brown v. Google LLC*, No. 20-CV-03664, 2021 WL 6064009, at *16-17 (N.D. Cal. Dec. 22, 2021) (same); *Meta Pixel Tax Filing*, 724 F. Supp. 3d 987, 1024-25 (same); *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *7 (N.D. Cal. Aug. 23, 2024) (same) (citing cases)); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information.") (collecting cases)).

Courts in this District have reached the same conclusion. *See Pattison*, 2025 WL 1756364, at *7 ("[C]ourts have recognized diminution of the value of private data by way of improper disclosure to third parties as a recognizable form of economic harm sufficient to serve as the basis for a UCL claim."); *see also In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *7 (S.D.N.Y. Aug. 4, 2021) (approvingly citing *Marriott* for the proposition that loss of personal information constitutes economic injury).

DotDash's cases are not to the contrary. For one, *Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019) expressly acknowledged that the complaint "could proceed . . . if Plaintiffs' personal information had inherent economic value" and the "disclosure of such data constitutes a loss of money or property." It only found that the bare "unauthorized release" of personal information *by itself* is insufficient under the UCL. *Id*. But unlike *Cappello*—and two other decade old cases DotDash cites (Mot. at 19 (citing *In re Google*

*Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 n.14 (N.D. Cal. 2011) (alleging only a "loss of personal information"); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (same))—Plaintiffs here do not allege solely a disclosure of data generally, but that the data at issue has objective economic value. ¶¶ 117-124 (describing how Zeta's own CEO recognizes it obtains "value" from consumers' data and how Zeta calculates an "average revenue per user").[5]

But in any event, none of these cases addresses Plaintiffs' disgorgement of profits theory, which is a separately viable basis to satisfy UCL's standing requirement. DotDash cites only one case on this issue, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025), which held that unjust profits are not enough absent a corresponding loss. However, this decision is inconsistent with the Ninth Circuit's decision in *Facebook Tracking*, and should not be followed here. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) ("California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources"). Like in *Facebook Tracking*, Plaintiffs have plausibly alleged that DotDash and Zeta have profited from Plaintiffs' private information for which California law recognizes an express entitlement to recoup those gains. ¶¶ 117-124. This is enough to establish UCL standing.

**ii. California's Comprehensive Computer Data Access and Fraud Act**

CDAFA is a comprehensive statute designed to prevent "tampering, interference, damage, and unauthorized access" to "computer data and computer systems." Cal. Penal Code § 502(a).

[5] DotDash also cites *Ruiz*, which is inapplicable because it dealt with a stolen laptop, not the intentional disclosure of valuable data to profit from it. *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (rejecting argument that a stolen laptop had personal information on it satisfied UCL standing requirement)

Across Plaintiffs' CDAFA claims, DotDash presents just two arguments: (1) that CDAFA only applies to literal hacking and requires "overc[o]m[ing] technical or code-based barriers"; and (2) that Plaintiffs have not alleged adequate damage or loss (i.e., CDAFA standing). Mot. at 23-26. Both of these arguments fail.

***Hacking & Code-Based Barriers.*** Contrary to DotDash's claim, nothing in CDAFA limits its purview to literal hacking. *See People v. Gentry*, 234 Cal. App. 3d 131, 133 (Cal. Ct. App. 1991) (explaining "[o]ne of the legislative purposes" of CDAFA is to prevent "browsers and hackers . . . outsiders who break into a computer system to obtain or alter the information."); *Mahru v. Superior Ct.,* 191 Cal. App. 3d 545, 549 (Cal. Ct. App. 1987) (rejecting that this "brief declaration of purpose was intended to summarize every act covered by the statute" and argument that CDAFA only applies to "hackers").

Several courts have applied CDAFA to the same technology at issue in this case or those similar to it. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (finding allegations that tracking technology places "cookie[s]" on their "devices" and "redirect[s]" data to defendant's own servers sufficient to state CDAFA claim); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939-40 (N.D. Cal. 2023) (finding that plaintiffs sufficiently pled access when websites running defendants technology instructed plaintiffs' browsers to direct information to defendant). There is simply no support for DotDash's limited take on what conduct CDAFA proscribes.

DotDash's separate claim that CDAFA requires circumventing code-based barriers is also wrong. This proposition was explicitly rejected by the Ninth Circuit over a decade ago. *See Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706, 2025 WL 844378, at *6 (N.D. Cal. Mar. 17, 2025) ("Ninth Circuit precedent makes clear that is not necessary to constitute a violation

of CDAFA") (citing *United States v. Christensen*, 828 F.3d 763, 788–89 (9th Cir. 2015)); *Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046, 1057 (S.D. Cal. 2019) ("[S]ection 502 does not require that [defendant] 'hack' into [plaintiff's] computer system or overcome code-based barriers for him to be potentially liable for the unauthorized taking or destruction of [plaintiff's] data."); *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, No. 21-CV-04895-JST, 2022 WL 20184651, at *5 (N.D. Cal. July 7, 2022) (rejecting the same argument); *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 746 (C.D. Cal. 2020) (same); *CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508, at *4-5 (E.D. Cal. May 26, 2022) (same)).

It is unsurprising that nearly every case DotDash cites either predates this pivotal decision or fails to acknowledge this change in the law. Mot. at 23-25 (citing *Gutierrez v. Converse Inc.,* 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (quoting *In re iPhone Application Litig.*, 2011 WL 4403963, at * 12 (standing for outdated technical barrier requirement); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014) (same); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (same); *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780–JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (same)).

But even if this were a requirement (and it is not), Plaintiffs' allegations that DotDash and Zeta secretly assign identifiers and cookies, and use hidden technology to usurp their private information and override their privacy choices (¶¶ 100, 104-114, 232), would meet this requirement. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021) (finding allegations that code was "hidden" itself satisfies "technical or code based" barrier requirement).

***CDAFA Standing.*** Plaintiffs have CDAFA standing because they allege (1) depletion of device resources, including CPU load time, storage, bandwidth, and battery life; and (2)

entitlement to unjust profits. *See Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (finding "depletion of device resources" establishes economic injury); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109-10 (N.D. Cal. 2025) (holding "even small harms" like "depletion" of "bandwidth" establish CDAFA standing); *Meta Healthcare*, 713 F. Supp. 3d at 656 (finding use of storage and device resources sufficient for CDAFA standing); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (finding that a "disgorgement theory" can satisfy CDAFA standing); *see also Brown*, 685 F. Supp. 3d at 940 (recognizing plaintiffs have a "stake in the value of their misappropriated data"); *Facebook Tracking*, 956 F.3d at 600 (under California law an individual has a "stake in unjustly earned profits" from their misappropriated data).

That DotDash does not address how its use of Zeta's tracking technology depletes device resources is dispositive. And its argument that unjust profits are insufficient—by relying on *Shah*, 768 F. Supp. 3d at 1047—fails for the reasons stated in Section IV.C.i.

**iii. California's Right to Privacy**

In considering intrusion upon seclusion and invasion of privacy claims under the California Constitution, courts consider whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See Facebook Tracking*, 956 F.3d at 601. Courts routinely find that the disclosure of identifiable data reflecting user's private browsing activity, such as the articles they searched or viewed through full-string URLs, for purposes of profiling and targeting individual consumers, satisfies both these elements. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (finding "Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique 'search terms' or the 'particular document within a website that a person views'" and sustaining privacy claims); *In re Meta Pixel*

*Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) ( "Case law also supports plaintiffs' position that individuals maintain a reasonable expectation of privacy in detailed URLs.").

DotDash's own authority confirms the same. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024) (noting that courts have found the collection of individual's "identity" and the "name[s]" of specific "web page[s]" they viewed for purposes of "compil[ing] . . . profiles" to be an intrusion upon seclusion). DotDash tries to analogize its conduct to the limited "Session Replay Code" that recorded "mouse movements, clicks, keystrokes" from a pizza-ordering website in *Papa Johns*, but nothing about the conduct in *Papa Johns* is comparable to the private data DotDash disclosed to a large data broker, both from its website and in private emails, revealing Plaintiffs' and Class Members' identities and full-string URLs of articles and other content they viewed. *Id*. The other cases DotDash cites are equally distinguishable, as they too involve session-replay technology that is not at issue here or the limited collection of only anonymized data or non-content. *See* Mot. at 27-28 (citing *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 524-25 (C.D. Cal. 2021) (involving session replay technology on Nike's website); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (same on Lululemon's website); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1017 (N.D. Cal. 2012) (involving "[]anonymize[d]" Linked ID and the URL of Linkedin profile pages); *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (involving only "user and device identifiers" that do not qualify as "content" by themselves); *Smidga v. Spirit Airlines, Inc.*, No. 2:22-CV-1578, 2024 WL 1485853, at *5 (W.D. Pa. Apr. 5, 2024) (involving session replay that sworn statement showed did not record any "personalized data")).

**iv. California's Invasion of Privacy Act**

CIPA Section 631 imposes liability on any person who intercepts, uses, and learns the

content of a communication while the same is in transit, as well as liability on any person who aids, agrees, employs, or conspires with another to engage in this conduct.

DotDash is liable under CIPA's fourth clause because it intentionally installed and utilized Zeta's wiretapping technology, enabling Zeta to both intercept identifiable communications and use them to profile Plaintiffs' and Class Members. *See M. H. v. Done Glob. Inc.,* No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (imposing CIPA liability under the fourth prong where the entity "purposefully installed the[] tracking technologies . . . to optimize its own advertising and marketing").

DotDash's contention—that it cannot be liable under CIPA's fourth clause unless it *directly* violated one of CIPA's first three clauses—is illogical. Mot. at 20. CIPA's fourth clause exists to impose liability on any individual who aids and abets CIPA violations but does not themselves perform the wiretapping. The two cases DotDash cites confirm this. *See* Mot. at 20 (citing *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113-14 (S.D. Cal. 2024) (explaining plaintiff must allege that the defendant, Ford Motor Company, "aided, agreed with, employed, or conspired" with a separate entity, in that case, LivePerson, who themselves committed the "unlawful acts" to state a claim under CIPA's fourth clause); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (explaining CIPA's fourth clause "targets one who 'aids, agrees with, employs, or conspires with' ***another party*** that violates any of the prior three clauses.") (emphasis added).[6] If DotDash had to commit the wiretap

[6] DotDash's improper use of brackets in quoting from *Rodriguez*—which replaced the name of the third-party wiretapper with the word "[Defendant]"—is how it reaches this nonsensical conclusion. *Compare Rodriguez v. Ford Motor Co.*, 722 F. Supp. at 1113 ("To state a claim under this clause, Plaintiff must allege [***LivePerson***] has violated one of the first three clauses of section 631(a)") *with* Mot. at 20 ("Plaintiff[s] must allege [***Defendant***] has violated one of the first three clauses of section 631(a)").

itself (like it baselessly asserts), there would be no separate violator for it to "aid" or "conspire[]" with under CIPA's fourth prong, rendering that provision meaningless. Its separate challenges to specific subsections of Plaintiffs' CIPA claims also fail.[7]

***CIPA § 631(2).*** DotDash's contention that Plaintiffs do not allege "contents" cannot be reconciled with the Complaint, which alleges that Zeta intercepts full-string URLs reflecting the precise articles viewed and other user activity, both from the People.com website and in their private emails. ¶¶ 101-116. The Ninth Circuit, and countless district court decisions, have confirmed these types of full-string URLs that reveal private "interests, queries, and habits" qualify as "content." *See Facebook Tracking*, 956 F.3d at 605 (holding full-string URLs are content because they "could divulge a user's personal interests, queries, and habits"); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076-77 (N.D. Cal. 2023) (URLs that include the person's query or search term are "content"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("personal search queries" convey content); *Casillas v. Six Flags Ent. Corp.*, No. 2:25-CV-6824-CBM-PD, 2025 WL 3684543, at *5 (C.D. Cal. Dec. 15, 2025) (finding "search queries" and "browsing habits" are "content"). The sole case DotDash cites—*Yoon*, 549 F. Supp. 3d at 1082–83 (C.D. Cal. 2021)—itself recognized that both "email content" and "URLs containing search terms" (like here) qualifies as "content" under CIPA but held that the session replay recordings in that case failed to meet this requirement. This case does not involve session replay recordings.

DotDash's separate argument that Plaintiffs cannot meet CIPA's "in transit" requirement because DotDash *itself* does not perform the interception again misunderstands the nature of CIPA § 631(2)-(3) claims. Mot. at 21-22. It is enough that Plaintiffs allege that DotDash *aids and*

[7] Plaintiffs do not dispute that CIPA § 631(1) only applies to telephones.

*conspires* with Zeta, who itself performs the immediate interception of contents of communications in real-time. *See* ¶¶ 46-47, 101-111, 195. Several cases confirm this. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091-92 (N.D. Cal. 2025) (finding technology that "intercept[s]" and "connect[s]" the "identifying points of data" into an "identity profile" in "real time" satisfies CIPA's in transit requirement); *Casillas*, 2025 WL 3684543, at *8 (finding "real time" interception to learn "browsing activities and private communications" satisfies in transit requirement) (citing cases).

DotDash's reliance on cases where communications were intercepted only *after* the transmission was complete (i.e., communications "at-rest") does not somehow transform Plaintiffs' allegations into one of those fact patterns. *See* Mot. at 21-22 (citing *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) (dismissing CIPA claim where the "transcripts" at issue were "retrieved and created" only after they had reached the defendant's "server"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (dismissing CIPA where the communications were already received by the recipient and then "copie[d]" to a clipboard before they were intercepted by the defendant); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA where plaintiffs tried to "mask" that "their theory is essentially one of recording *and then* transmission") (emphasis added)).

***CIPA § 631(3).*** The third prong of § 631(a) imposes liability where a person "uses, or attempts to use, in any manner, or for any purposes, or to communicate in any way, any information so obtained" as outlined in the first two clauses. Plaintiffs plausibly allege claims under CIPA § 631's third prong because they allege Zeta uses the intercepted communications to create identifiable user profiles, train machine learning models, and facilitate targeted advertising through its RTB service. *See Jones v. Peloton Interactive, Inc.*, No. 23-CV-1082-L-BGS, 2024 WL

3315989, at *5 (S.D. Cal. July 5, 2024) (third clause established where the defendant "uses intercepted communications to improve . . . its proprietary machine learning software"). DotDash does not substantively address this subsection, other than repeating its assertion that Plaintiffs have failed to establish a claim under the first or second CIPA subsections. Mot. at 22. Because Plaintiffs have plausibly alleged claims under CIPA § 631's second prong, this argument fails.[8]

***CIPA § 631(4).*** DotDash is liable under CIPA § 631's fourth prong because it intentionally and purposefully installed Zeta's wiretapping technology on its web properties for the express purpose of intercepting Plaintiffs' and Class Members' communications. *See Done Glob. Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (imposing CIPA liability under the fourth prong where the defendant "purposefully installed these tracking technologies . . . to optimize its own advertising and marketing").

DotDash's contention that it somehow did not know Zeta's technology would intercept the content of Plaintiffs' and Class Members' communications is untenable. Unlike in *Smith v. YETI Coolers, LLC*, which DotDash relies on, this is not a case where a defendant intended to use a *general* service and had no idea that the third party would use its access to unilaterally engage in unlawful wiretapping. 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (finding no liability under CIPA where defendant used a "fraud prevention service[]" and there were no facts the defendant knew that third-party fraud prevention service would use software to illegally intercept customers' financial data). Here, the only purpose of Zeta's technology is to perform this wiretapping function. And not only did DotDash install this technology on its website and email correspondence for this express purpose, but Zeta also *provided* DotDash with access to this data so it could serve targeted

---

[8] The opposite was true in the two cases DotDash cites. *See* Mot. at 22 (citing *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 822 (N.D. Cal. 2020)).

advertising. And if that were not enough, as Zeta itself admits in its brief "Zeta's customers do not gain access to its products and services for free—in fact, its customers enter contracts for *these very purposes* . . . consumer-facing businesses *solicit Zeta's allegedly unlawful intercepting activity*." *See* ECF No. 44 at 15 (emphasis added). Any claim DotDash did not know what it and Zeta were doing is plainly unbelievable in light of these facts. *See James*, 701 F. Supp. 3d at 954 (finding the defendant acted with "intent" for purposes of CIPA when it entered an agreement to incorporate the wiretapping software on its web properties).

**v. New York's General Business Law § 349**

GBL § 349 prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). DotDash's Motion only addresses the injury element of Plaintiffs' claim and therefore concedes the remainder of Plaintiffs' GBL claims. *See* Mot. at 16-18; *Martinez v. Lvnv Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016) (finding defendants "essentially concede" plaintiff "adequately pled" elements of GBL claim that it did not raise argument for).

Here, Plaintiffs allege two independently viable theories of injury under the GBL: (1) privacy harms stemming from DotDash's disclosure and use of their identifiable, private data; and (2) pecuniary harm from Defendants' monetization of this information.

DotDash's argument that privacy violations are not acceptable injuries under the GBL is plainly inaccurate. *See Cooper v. Mount Sinai Health Systems, Inc.*, 742 F. Supp. 3d. 369, 383-384 (S.D.N.Y. 2024) ("[A] privacy injury can be the basis for a [GBL] § 349 claim" where "confidential, individually identifiable information" "is collected without the individual's knowledge or consent."); *Bose v. Interclick, Inc.*, No. 10 CIV. 9183 DAB, 2011 WL 4343517, at

*9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized . . . privacy violations as injuries for purposes of [GBL § 349.]"); *Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy invasion claim . . . may be stated under GBL § 349") (collecting cases); *GoodRx Holdings, Inc.,* 2025 WL 2052302 at *13 (finding defendant's "disclosing and intercepting" of plaintiffs' "sensitive data" violate GBL § 349).

The cases DotDash cites simply involve different *conduct* (like fraud or debt collection practices) or different *data* that was not sufficiently sensitive to constitute a privacy violation. *See* Mot. at 17-18 (citing *Shostack v. Diller*, No. 15CIV2255, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) (seeking to hold credit company liable for an "unquantifiable injury to a privacy interest" following bad actors use of PII to obtain a credit line); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390-91 (E.D.N.Y. 2011) (involving debt collector practices where plaintiff failed to allege "any quantifiable damage"); *Cohen v. Casper Sleep Inc*., 2018 WL 3392877, at *7 (S.D.N.Y. Jul. 12, 2018) (plaintiff failed to allege any of the alleged information from the mattress website "was particularly sensitive"); *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598 (N.Y. 2002) (no discussion of privacy harms but whether mailed solicitation is itself harmful); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 607 (S.D.N.Y. 2009) (involving only the disclosure of one's email address); *Mount v. PulsePoint*, *Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017) (plaintiff failed to show "that the data collected would or could be associated with individual users (or some other alleged factual basis for a cognizable privacy injury)"). This case does not involve credit fraud or debt collection. And the data here is both identifiable and inherently sensitive, revealing private browsing activity and the content each Plaintiff viewed, queried, or searched. *See* Section II; *see also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1038 (N.D. Cal. 2019) (distinguishing *PulsePoint* and sustaining GBL claims where plaintiff alleged the data is "identifiable" and used

to "track, profile, and target" class members). Nothing more is required.

But in any event, as noted above, the pecuniary value of this data would itself be sufficient to allege GBL injury. *See Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8 (S.D.N.Y. 2021) ("Allegations that a plaintiff's private information has lost value may plead a cognizable economic injury"); *see also, e.g., In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (reversing district court's dismissal of claims where plaintiffs plead lost value of PII); ¶ 165. Here, Zeta itself has quantified the value of each user's data based on an "average revenue per user" and licenses this data for between $70,000 to $110,000 per license. ¶¶ 120-122. This establishes its pecuniary value, and DotDash fails to cite any authority rejecting this theory for GBL injury.

#### vi. Unjust Enrichment

Both New York and California recognize that a defendant's improper monetization of a plaintiff's valuable private data is an unjust benefit that, under principles of equity and good conscience, should not be retained. *See, e.g., Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 455 (S.D.N.Y. 2016) (sustaining unjust enrichment claim where plaintiff "conferred benefits on [defendant] by providing [defendant] with their [identifying] information" and "[d]efendant unjustly retained those benefits") (collecting cases); *Kane v. University of Rochester*, No. 23-CV-6027, 2024 WL 1178340, at *15 (W.D.N.Y. March 19, 2024) (sustaining unjust enrichment claim where plaintiffs would not have used defendant's services "had they known about Defendant's disclosure of their Private Information"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (sustaining unjust enrichment claims to "recover the gains" the defendant "realized" from its misappropriation of the plaintiffs' data); ¶¶ 267-273.

The two cases DotDash cites plainly do not apply, as they both failed to allege any *improper* or *unjust* obtainment of benefits. *See* Mot. at 28 (citing *Edelman v. Starwood Capital Grp., LLC*,

70 A.D.3d 246, 250 (N.Y. 1st Dep't 2009) (dismissing unjust enrichment claim where plaintiff himself had "abandoned" plan to acquire a property and could not "blame" the defendant for choosing not "participating in [an] auction"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 946 (N.D. Cal. 2023) (dismissing unjust enrichment claim where data was not obtained "in a manner contrary to expectations")). The opposite is true here, where the benefits DotDash obtained are directly attributable to the unauthorized disclosure of Plaintiffs' private data through hidden tracking technology.

Finally, DotDash's argument that Plaintiffs must show a "financial loss" separate from the loss of their valuable data is wrong. Mot. at 29. DotDash's own cited authority confirms this. *Id.* (citing *Facebook, Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 803 ("[E]ven if the plaintiffs suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that Facebook realized from its allegedly improper conduct"). The only other case it cites did not involve any unjust enrichment claims and is thus irrelevant. *Id.* (citing *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (evaluating UCL)).

**vii. Declaratory Relief**

The Declaratory Judgment Act (the "DJA") provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Whether considered a remedy (Mot. at 29 (citing *TD Auto Fin. LLC v. Cnty. of Putnam*, No. 21 CIV. 9080 (AEK), 2023 WL 6295116, at *13 (S.D.N.Y. Sept. 27, 2023)) or cause of action, Plaintiffs are entitled to declaratory relief to address DotDash's continued disclosure and monetization of Plaintiffs' and the Classes' data. *See, e.g., In re Arby's Restaurant Group Inc.*

*Litigation*, 2018 WL 2128441, at *14-15 (N.D. Ga., Mar. 5, 2018) (motion to dismiss cause of action for declaratory judgment denied where "Plaintiffs made specific allegations that they would be harmed without declaratory relief because [Defendant] has not taken steps to address their allegedly inadequate security system. This is enough to survive a motion to dismiss."); *First Choice Federal Credit Union v. Wendy's Co.*, No. CV 16-506, 2017 WL 9487086, at *5 (W.D. Pa., Feb. 13, 2017) ("At this early stage of this litigation and based on these allegations [regarding having an adequate remedy at law to address a future breach], the Court is not inclined to foreclose [this type of] relief as a possible remedy.").

While DotDash argues that this relief is duplicative because some of the California Plaintiffs' claims may include declaratory or injunctive relief (Mot. at 29-30), these claims are alleged only on behalf of the California Subclass. Because there is no claim that would provide this relief nationwide, Plaintiffs' request pursuant to the DJA cannot be considered fully duplicative. *See Certicable Inc. v. Point 2 Point Commc'ns Corp.,* No. 2:23-CV-5322 (NJC) (SIL), 2025 WL 622547, at *3 (E.D.N.Y. Feb. 26, 2025) (reinstating declaratory judgment claims where "they are not mirror images" of the other claims); *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.,* 171 F. Supp. 3d 107, 123 (S.D.N.Y. 2016) (finding declaratory judgment action is not duplicative because the claims sought "distinct relief"). This is distinguishable from *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 976 (N.D. Cal. 2021), that DotDash cites, because there the UCL claim was pled nationwide. *See* 2020 WL 3883723 (alleging California UCL claims on behalf of nationwide class).

### D. DotDash Cannot Reserve the Right to Move to Compel

It is axiomatic that any party seeking to compel an individual to arbitration must do so in the first instance. This case has been pending since July 14, 2025, and DotDash has never

mentioned the possibility of seeking to compel Plaintiffs to arbitration at any point in time, including during the Parties' 26(f) conference. Instead, DotDash chose to stay silent and proceeded to file its Motion to Dismiss to litigate this case on the merits.[9] Having done so, DotDash has waived its right to compel Plaintiffs to arbitration. *See Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 131 (2d Cir. 2025) (defendants waived their right to arbitrate by "seeking dismissal in the District Court" first, as they "availed themselves of the District Court's authority to resolve the claims").

DotDash cannot excuse its delay—and strategic choice to first file a motion to dismiss—under the guise that it has "not been able to ascertain" whether Plaintiffs can be compelled to arbitration because it does not have their email addresses. Mot. at 4 n.1. At any point in time DotDash could have requested this information from Plaintiffs but did not do so. Indeed, its Co-Defendant Zeta did in fact request this information but abandoned its request when asked if this information would be used beyond preservation purposes. *See* Declaration of Amanda Fiorilla ¶¶ 3-5. DotDash was on this email chain and could have—but did not—request this information itself. *Id.* Thus, even if DotDash needed Plaintiffs' email addresses to evaluate arbitration, it had an obligation to promptly seek that information and cannot now use its lack of that information as an excuse for failing to move to compel.[10] *Tech. in P'ship, Inc. v. Rudin*, 894 F. Supp. 2d 274, 279 (S.D.N.Y. 2012), aff'd, 538 F. App'x 38 (2d Cir. 2013) (refusing to excuse delay in moving to

---

[9] Zeta also attempts to reserve its rights to compel arbitration in a footnote. *See* ECF No. 44 at 24 n.3. While it is unclear how Zeta can compel arbitration for individuals it has no direct relationship with, its request should be rejected for the same reason.

[10] Neither case DotDash cites suggests this type of delay is appropriate. Mot. at 4-5 (citing *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020*), objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021) (compelling unnamed class members post class certification); *Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (evaluating implication of arbitration provision for satisfy Rule 23 factors)).

arbitrate where defendant "had . . . knowledge of" the requisite information and "was on notice of" its right to arbitrate).

## V. CONCLUSION

For the reasons set forth herein, this Court should deny the Motion with respect to all counts that DotDash seeks to dismiss. Should the Court be inclined to grant the motion or any part of it, Plaintiffs respectfully request that this dismissal be without prejudice and that Plaintiffs be given leave to replead. *See* Fed. R. Civ. P. Rule 15.

Dated: February 19, 2026

Respectfully submitted,

By: */s/ Amanda Fiorilla*
Amanda Fiorilla
Christian Levis
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 110
White Plains, New York 10601
Tel.: (914) 997-0500
Fac.: (914) 997-0035
*clevis@lowey.com*
*afiorilla@lowey.com*

Gary E. Mason
Danielle Perry (*Admitted Pro Hac Vice*)
**MASON LLP**
5335 Wisconsin Avenue N.W., Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
*gmason@masonllp.com*
*dperry@masonllp.com*

*Interim Co-Lead Class Counsel*

Blake Hunter Yagman
**SCHONBRUN SEPLOW HARRIS**

**HOFFMAN & ZELDES LLP**
1330 Ave. of the Americas, Suite 23A
New York, New York 10019
Tel.: (929) 709-1493
*byagman@sshhzlaw.com*

*Interim Executive Committee Member*

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Tel.: (212) 350-8850
Fac.: (212) 350-8860
*israel.david@davidllc.com*

*Interim Executive Committee Member*

*Attorneys for Plaintiffs R.E.A., K.G., Diane Ayerdi, and the Putative Classes*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,597 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2026

*/s/ Amanda Fiorilla*