**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE AYERDI, R.E.A., and K.G., on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZETA GLOBAL HOLDINGS CORP., et al.,<br><br>Defendants. | Case No. 1:25-cv-5780-PAE |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**ZETA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. PLAINTIFFS' ALLEGED INJURIES ARE INSUFFICIENT. ..... 1

II. PLAINTIFFS' CLAIMS CANNOT SURVIVE ZETA'S MOTION ..... 4

A. The Court Should Apply New York Law. ..... 4

B. Plaintiffs' ECPA Claim Fails for Several Reasons. ..... 4

C. Plaintiffs Lack Standing to Bring a GBL Claim. ..... 5

D. Each of Plaintiffs' California Claims Should Be Dismissed. ..... 6

1. Plaintiffs Lack Statutory Standing Under the UCL. ..... 7

2. All of Plaintiffs' CIPA Claims Fail. ..... 7

3. Plaintiffs Have Not Established an Injury Under CDAFA. ..... 9

4. Plaintiffs' Invasion of Privacy Claims Fail. ..... 9

E. Plaintiffs' Unjust Enrichment Claim Fails. ..... 10

F. Plaintiffs' Request for Relief Under the DJA Should Be Denied. ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. CaringBridge, Inc.*,
2025 WL 3493565 (N.D. Cal. Dec. 5, 2025) ....4

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ....6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....2

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ....4, 5

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ....2

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ....5

*Epstein v. Epstein*,
843 F. 3d 1147 (7th Cir. 2016) ....4

*In re Facebook Priv. Litig.*,
572 F. App’x 494 (9th Cir. 2014) ....6

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ....4

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....2

*In re GE/CBPS Data Breach Litig.*,
2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ....7

*J.E. v. Chappaqua Cent. Sch. Dist.*,
2015 WL 4934535 (S.D.N.Y. Aug. 17, 2015) ....9

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ....4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....8

*Malinowski v. Int'l Bus. Machs. Corp.*,
2025 WL 965812 (S.D.N.Y. Mar. 31, 2025) ....................3

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ....................7

*Meyerson v. Prime Realty Servs., LLC,*
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ....................5

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022) ....................6

*Pattison v. Teladoc Health, Inc.*,
2025 WL 1756364 (S.D.N.Y. June 25, 2025) ....................4, 7

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Super. Ct., L.A. County Dec. 10, 2025) ....................8

*Rose v. Variety Media, LLC*,
2025 WL 2794920 (Super. Ct. L.A. Cnty. Sept. 24, 2025) ....................8

*Scharon v. Paramount Glob.*,
2025 WL 2996812 (Super. Ct., L.A. Cnty. Oct. 03, 2025) ....................8

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ....................5

*Variety Media LLC v. Superior Ct.*,
No. B350578 ....................8

*Wallace v. Health Quest Sys., Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ....................6

*Zaratzian v. Abadir*,
2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014) ....................4

Pursuant to Local Rule 7.1, Zeta submits this Reply Memorandum in Further Support of Zeta's Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion" or "Mot.").[1]

## INTRODUCTION

Plaintiffs' opposition ("Opposition" or "Opp.") to Zeta's Motion does not, and cannot, cure the FAC's fatal flaws. Rather, it obscures the law by making accusations about the "perversive and involuntary nature" of Zeta's business, but these statements do not salvage Plaintiffs' claims. Such characterizations, untethered to legal argument, do not change the fact that Plaintiffs have failed to meet the pleading requirements, both procedurally and on the merits. Contrary to Plaintiffs' assertions, the nature of the data allegedly collected is, in fact, of consequence to this Action. Plaintiffs' own cases underscore this reality. Plaintiffs cannot establish the requisite injury for purposes of standing or allege the elements of their claims on the merits predicated upon allegations that their visits to celebrity news and recipe websites were somehow intercepted.

Plaintiffs also seek to avoid the consequences of the New York forum they selected, by relying heavily on California district court cases to rebut Zeta's arguments on Article III standing. But Plaintiffs' authorities cannot overcome the on-point, in-Circuit authorities in Zeta's Motion that support dismissal. Plaintiffs fare no better on the merits. The Motion set forth a roadmap for Plaintiffs to attempt to address the FAC's myriad deficiencies, which this Court explicitly invited. Plaintiffs declined to do so and instead elected to rely on inapposite cases to argue that the FAC's allegations are adequate (they are not). The Court should dismiss the FAC with prejudice.

## ARGUMENT

### I. PLAINTIFFS' ALLEGED INJURIES ARE INSUFFICIENT.

The Opposition does not, and cannot, establish that Plaintiffs pleaded an adequate injury

---

[1] All capitalized terms have the same meaning used in Zeta's Motion to Dismiss (ECF No. 44).

that gives rise to Article III standing. Plaintiffs only point to one Second Circuit case to show that their alleged harms confer standing, but that case does not support their claim of injury here. (Opp. at 3.) In the first instance, the "central question" on appeal in *Salazar v. Nat'l Basketball Ass'n* was whether plaintiff was a "consumer" under the Video Privacy Protection Act[2] which is of no relevance here. 118 F.4th 533, 536 (2d Cir. 2024). When the Second Circuit subsequently analyzed standing, it found that "personally identifiable information" meant the plaintiff's "personal viewing information." *Id.* at 539. This included a record of videos he watched on NBA.com and his unique Facebook ID account number, which was unavailable to the public. *Id.* Thus, the Court deemed its disclosure analogous to the common law harm—public disclosure of *private* facts. *Id.* at 541–42 (emphasis added). Plaintiffs' attempt to liken their case to *Salazar* ignores that here, they allege a disclosure of certain *public* facts and other interactions that do not give rise to a privacy interest. (Mot. at 4); *see also Thomas v. PapaJohns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) ("[g]iven the nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space.")

Plaintiffs present no other in-Circuit authority to support their standing argument, and even their out-of-Circuit cases are distinguishable. *See e.g., Brown v. Google LLC*, 685 F. Supp. 3d 909, 920–21 (N.D. Cal. 2023) (plaintiffs used "incognito" web browsing tabs under the guise of enhanced privacy, but data was disclosed anyway); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (data collected after plaintiff affirmatively rejected the use of cookies). Moreover, other courts have rejected subsequent efforts to rely upon cases that

---

[2] This claim also provides more robust privacy protections than the laws Plaintiffs invoke here (e.g., more rigorous consent requirements, reflecting a greater privacy interest in the information). *See Salazar*, 118 F.4th at 553.

predate the Ninth Circuit's decision in *Popa* to salvage standing, as Plaintiffs attempt here. *See Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025).

Next, Plaintiffs' attempt to distinguish Zeta's in-Circuit authority is not compelling. Plaintiffs' accusation that Zeta mischaracterized this Court's decision in *Xu v. Reuters News & Media Inc.* is unfounded, as Zeta clearly explained that the data at-issue in *Xu* was limited to an IP address. (Mot. at 9.) Simply because the FAC's allegations go beyond the data at-issue in *Xu* does not make the Court's analysis in that case irrelevant. Indeed, *Xu* still informs whether Plaintiffs' abstract allegations of harm can survive here, as the FAC alleges that Zeta unlawfully collected IP addresses and other device or routing-type information. *See* 2025 WL 488501, at *3; (FAC ¶¶ 77, 109–111, 123, 217). Moreover, Plaintiffs' attempt to cherry-pick from the *De Medicis* case does not serve them. (Opp. at 7.) *De Medicis* recognizes that certain immutable data—birthdays, social security numbers ("SSN"), and driver's license numbers—might have value, but here, Plaintiffs have not alleged that Zeta collected such information. (*See generally* FAC.) Plaintiffs further misread the Motion as it relates to device harms. Zeta did not argue that Plaintiffs must "calculate the precise amount of storage or data usage" (Opp. at 7), but, they *must* plead facts to support the allegation that their devices or systems suffered harm. (Mot. at. 28–30.) They have not done so.

Finally, Plaintiffs misunderstand Article III's traceability requirement. Plaintiffs must plead facts showing that, if not for Zeta's conduct, they would have no injury. *See Malinowski v. Int'l Bus. Machs. Corp.*, 2025 WL 965812, at *4 (S.D.N.Y. Mar. 31, 2025). Plaintiffs have failed to do so. For instance, Plaintiff Ayerdi's purported injuries are not traceable merely because she alleges Zeta "collected, used, disclosed, or monetized," "*a single piece of data*" without her consent (Opp. at 8), because she posts the at-issue data online. (Mot. at 5.) Zeta does not argue that users forego *all* privacy rights by posting *anything* about themselves online. Because, however,

Plaintiff Ayerdi specifically alleges that Zeta unlawfully collected certain data that she herself disclosed online, injuries stemming from such disclosure are not traceable to Zeta. (*See id.*)

## II. PLAINTIFFS' CLAIMS CANNOT SURVIVE ZETA'S MOTION.

### A. The Court Should Apply New York Law.

Plaintiffs filed the FAC in a New York court against New York defendants and the Opposition does nothing to disturb the conclusion that these choices require the application of New York law. In fact, none of Plaintiffs' cited cases even conducted a choice of law analysis. (Opp. at 10.) *E.g.*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025) (no choice of law dispute); *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *6 (S.D.N.Y. June 25, 2025) (same); *Epstein v. Epstein*, 843 F. 3d 1147, 1150 (7th Cir. 2016) (same); *Adam v. CaringBridge, Inc.*, 2025 WL 3493565, at *3 (N.D. Cal. Dec. 5, 2025) (choice of law argument was "inapplicable to the current posture of the case"). Nor do Plaintiffs cite binding law suggesting this Court should reject a choice-of-law analysis. (Opp. at 10.) Plaintiffs' reliance on *Popa* is misplaced as it has no precedential effect and does not concern the application of California law in non-California court. (*Id*.) New York law applies. (Mot. 20-21; *see also* ECF 49, at 11–16.)

### B. Plaintiffs' ECPA Claim Fails for Several Reasons.

Plaintiffs' ECPA claim cannot survive Zeta's Motion. First, Plaintiffs argue that Zeta intercepted "contents" of communications by citing cases involving highly sensitive data, such as search queries related to personal health information ("PHI"). (*See* Opp. at 26.) Second, Plaintiffs misread in-Circuit authority, which they believe supports the position that parties who receive re-routed communications are not intended recipients, when these cases do not even discuss this issue. *See Zaratzian v. Abadir*, 2014 WL 4467919, at *9 (S.D.N.Y. Sept. 2, 2014) (discussing the scope of consent that *plaintiff* provided); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *5 (W.D.N.Y. Mar. 19, 2024) (no discussion of re-routing and crime-tort exception may apply due to

HIPAA violation). And, Plaintiffs do not meaningfully rebut that Zeta or the websites that use its technology consented to any alleged wiretapping, foreclosing their ECPA claim. (*See* Opp. at 28.)

The cases Plaintiffs use to argue that Zeta's consent is invalid under the crime-tort exception are misplaced. *See Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 382 (S.D.N.Y. 2024) (exception applied where plaintiffs pled a criminal HIPAA violation). Plaintiffs' reliance on *Riganian v. LiveRamp* also does not advance their position. (Opp. at 30.) While *Riganian* did apply the crime-tort exception, it is a non-binding case that discusses at length a more applicable authority—*In re DoubleClick Inc. Privacy Litigation*—which was decided in this District and supports dismissal here. *DoubleClick* explains that the crime-tort exception does not apply when, like here, a defendant's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites." 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001). Finally, Plaintiffs cite authority in support of their other claims (*see* Opp. at 16, 22), that undercuts their crime-tort exception argument. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (exception did not apply to third-party tool providers because plaintiffs did not allege they knew the website host had not obtained visitors' consent to the alleged interception). Here, Plaintiffs never allege that Zeta was aware that Horoscope.com, People.com, Allrecipes.com, or any other client did not obtain Plaintiffs' consent. (*See generally* FAC.) Thus, the crime-tort exception does not apply.

**C. Plaintiffs Lack Standing to Bring a GBL Claim.**

The FAC does not plausibly allege an injury that gives rise to a GBL claim. In the Opposition, Plaintiffs cite to several inapposite cases where PHI and/or SSNs were disclosed—neither of which are alleged to have been collected by Zeta, and both of which are treated with greater privacy protections than the data at issue here. *E.g.*, *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *13 (N.D. Cal. July 22, 2025) (concerning disclosure of prescriptions and PHI);

*Cooper*, 742 F. Supp. 3d. at 383–84 ("New York courts have held that a privacy injury can be the basis for a § 349 claim 'where confidential, individually identifiable information—***such as medical records or a social security number***—is collected without the individual's knowledge or consent.'") (emphasis added); *Meyerson v. Prime Realty Servs., LLC*, 796 N.Y.S.2d 848, 850 (N.Y. Sup. Ct. 2005) (SSNs are confidential information); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *1 (S.D.N.Y. Mar. 23, 2021) (data breach case concerning health insurance forms and SSNs); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *1 (E.D. Pa. May 24, 2022) (data breach case with no GBL claim, where medical diagnosis, prescription, treatment, and physicians disclosed).[3] Plaintiffs' remaining cases are otherwise distinguishable. *See Bose v. Interclick, Inc.*, 2011 WL 4343517, at *8 (S.D.N.Y. Aug. 17, 2011) (defendant allegedly circumvented plaintiffs' web browser privacy settings); *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (no GBL claim alleged). Finally, arguments relating to the content of Zeta's SEC filings are irrelevant. Plaintiffs never allege they reviewed such filings, which are directed to Zeta investors. (*See generally* FAC.) Thus, the FAC fails to demonstrate an injury under the GBL.[4]

### D. Each of Plaintiffs' California Claims Should Be Dismissed.

Plaintiffs argue that the FAC does not bring California claims on behalf of Plaintiff R.E.A., a non-California resident. (Opp. at 9, n. 6.) This is not credible. Plaintiff R.E.A. cannot avoid an adverse ruling by mischaracterizing the FAC, which clearly defines "Plaintiffs" as all three named Plaintiffs—Ayerdi, K.G., and R.E.A. (FAC at 1.) It brings California claims on behalf of those

---

[3] Ironically, in the same section that Plaintiffs criticize Zeta for analogizing to data breach cases, they themselves cite data breach cases. (*See* Opp. at 32–33.) Plaintiffs' effort to distinguish this authority on this basis fails because these cases consider analogous disclosures of personal information (unlike Plaintiffs' cases), and provide generally applicable guidance regarding privacy violations.

[4] Plaintiffs further argue that their purported GBL injury is "confirmed" by the allegation that Zeta quantifies the "average revenue per user" for each individual. (Opp. at 32.) But, Plaintiffs fail to explain how the sheer calculation of what revenue a person's data generates diminishes the value of that data.

"Plaintiffs" and a non-existent California subclass. (*Id.* ¶¶ 175, 187, 199, 211, 223, 238, 250.) The Opposition does not, and cannot, identify *any* point in the FAC stating California claims are not brought on behalf of Plaintiff R.E.A. (*See generally* Opp.) The Motion thus defeats Plaintiff R.E.A.'s California claims, and the claims brought by Plaintiffs Ayerdi and K.G. for other reasons.

1. Plaintiffs Lack Statutory Standing Under the UCL.

Plaintiffs contend that they have standing under the UCL because Zeta has allegedly earned unjust profits, which somehow caused Plaintiffs an economic injury. (Opp. at 13.) They rely on several cases that carry no force here, either because of the specific nature of the data at issue or because the injury induced a transaction by Plaintiffs, or both. *See e.g., Pattison*, 2025 WL 1756364, at *7 (injury pertained to medical services bargained for and PHI shared in violation of HIPAA); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *1 (S.D.N.Y. Aug. 4, 2021) (data breach involving financial data, with no UCL claim); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 492 (D. Md. 2020) (data breach case finding standing for UCL claim where plaintiffs allegedly paid a price premium on hotel rooms booked). Here, Plaintiffs do not allege a price premium or lost benefit-of-the-bargain theory in connection with their UCL claims (*see generally* FAC), which were relevant to above cases' analyses. Without more, their allegations of purported unjust profits (or any other harm) do not confer UCL standing.

2. All Three of Plaintiffs' CIPA Claims Fail.

***Section 631.*** The Opposition—for the first time—states that Plaintiffs only allege Zeta has violated subsections (2)–(4) of CIPA Section 631(a), and not subsection (1). Again, Plaintiffs attempt to revise the FAC to avoid an unfavorable result. California law is clear that subsection 631(a)(1) does not apply to internet communications (Mot. at 21–22), and the Court should dismiss on that basis. Plaintiffs' other arguments are unpersuasive. Even if their ordinary website interactions are "contents" (they are not, *see* Mot. at 22–23), the FAC pleads no facts supporting

the allegations that Zeta intercepted such contents "prior to or at the same time" that they were received. (FAC ¶ 193.) As to consent, Plaintiffs argue that they could not have consented to the alleged conduct because the All Recipes privacy policy, for instance, does not mention Zeta by name. (Opp. at 20–21.) Consent is valid even if a privacy policy is not so "highly granular" that it identifies tool providers. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025).

***Section 632.*** Plaintiffs' accusation that Zeta misstates the law is without merit as it clearly argues that "*[s]ome* courts have applied a presumption" that internet communications are not confidential. (Mot. at 25; *see* Opp. at 22.) Even if the Court does not apply this presumption, Zeta's wealth of case law shows that the types of data which are confidential under Section 632 are not at issue here. (*See* Mot. at 25 (collecting cases).) Plaintiffs do not argue otherwise.

***Section 638.*** Plaintiffs argue that the *Sanchez v. Cars.com, Inc.* case, which forecloses their Section 638 claim, is an "outlier" that the Court should disregard. (Opp. at 24.) Not so. *Sanchez* is consistent with other California courts. *See Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *3, *5 (Super. Ct., L.A. County Dec. 10, 2025) (Section 638 does not apply to "the routine operation of commercial websites or analytical software"); *Scharon v. Paramount Glob.*, 2025 WL 2996812, at *2 (Super. Ct., L.A. Cnty. Oct. 03, 2025) (dismissing similar claim without leave to amend). Plaintiffs present no basis to ignore these rulings on an issue of California law.

In any event, since Zeta filed its Motion, an appeal on the issue of whether Section 638 applies to website technologies was accepted on an interlocutory basis by the California Court of Appeal. *See Variety Media LLC v. Superior Ct.*, No. B350578. *Variety* concerns the same theory here: routine website tools constitute "pen registers" or "trap and trace devices" under Section 638. *See Rose v. Variety Media, LLC*, 2025 WL 2794920, at *1 (Super. Ct. L.A. Cnty. Sept. 24, 2025). If Plaintiffs' Section 638 claim survives, Zeta intends to move to stay pending *Variety*'s outcome.

3. Plaintiffs Have Not Established an Injury Under CDAFA.

Plaintiffs attack the Motion as it relates to their CDAFA claim in two ways, and neither are persuasive. First, Plaintiffs make new allegations in the Opposition that are not present in the FAC, including that Zeta's purported "unjust profits" gives rise to standing. (Opp. at 16.) Plaintiffs then contend that Zeta's case law does not address this harm—but that is because Plaintiffs did not allege that they seek disgorgement of profits in connection with their CDAFA claim. (*See* FAC ¶¶ 223–237.) It is well-established that a plaintiff cannot assert new facts in opposition to a motion to dismiss. *J.E. v. Chappaqua Cent. Sch. Dist.*, 2015 WL 4934535, at *7 (S.D.N.Y. Aug. 17, 2015).

Second, Plaintiffs regurgitate their conclusory allegations about how Zeta purportedly impacts device resources. (Opp. at 17.) Again, the FAC fails to provide any factual support for such allegations; namely, it never once identifies the types of devices that were harmed or any experiences Plaintiffs have had regarding bandwidth, depletion, storage space, or slow processing. (*See id.*; *see generally* FAC.) All of these are facts that should be readily within Plaintiffs' control. Accordingly, Plaintiffs lack statutory standing to pursue their CDAFA claims.

4. Plaintiffs' Invasion of Privacy Claims Fail.

Plaintiffs' common law and Constitutional privacy claims fail. First, Plaintiffs do not rebut Zeta's argument that New York does not recognize these claims. (*See generally* Opp.) As such, they concede that Plaintiff R.E.A. has no viable invasion of privacy claim. As for Plaintiffs Ayerdi and K.G., the Opposition relies on cases that do not, in fact, support the argument that the facts as alleged in the FAC establish a reasonable expectation of privacy or amount to highly offensive conduct. For instance, in *Riganian*, the court found there was a reasonable expectation of privacy in plaintiff's highly sensitive data, such as PHI and sexual orientation. 791 F. Supp. 3d at 1085–89. And unlike here, the plaintiff in *Riganian* actually alleged that defendant compiled such data about them. *Id.* Here, Plaintiffs neither claim that Zeta collects the types of highly-sensitive data

that warrants a reasonable expectation of privacy, nor that Zeta collected such data about them, personally. (*See generally* FAC.) Finally, the FAC's allegation that Zeta violated the law by collecting "personally identifying information," which Plaintiffs themselves (not Zeta) defined as including publicly available data, is not a "red herring." (Opp. at 13.) Plaintiffs lodge multiple *privacy* claims against Zeta. It is not highly offensive for Zeta, or any other party, to collect and/or aggregate data that is public (*e.g.*, *not private*.). (*See* Mot. at 32.)

**E. Plaintiffs' Unjust Enrichment Claim Fails.**

Plaintiffs do not dispute, and therefore concede, that New York law applies to their unjust enrichment claim. (*See generally* Opp.) And there is no meaningful dispute that this claim is duplicative of Plaintiffs' GBL claims. (*See id.* at 33–34.) Plaintiffs make the nonsensical argument that they "allege distinct damage" for their unjust enrichment claim (disgorgement of profits) because they do not pursue that damage on any claims brought on behalf of the non-existent nationwide class. (Opp. at 34.) None of Plaintiffs' cited authorities stand for the proposition that damages are distinct when sought only by a putative subclass of plaintiffs. (*See id.*) Plaintiffs do not explain how the disgorgement of profits they seek for their California invasion of privacy claims are "distinct" from their unjust enrichment claim. (*Compare* FAC ¶¶ 247, 263 *with* ¶ 273.)

**F. Plaintiffs' Request for Relief Under the DJA Should Be Denied.**

Plaintiffs claim they are entitled to declaratory judgment and injunctive relief regardless of their other claims' success. (Opp. at 35.) Plaintiffs, again, ignore binding Second Circuit authority that stands for the contrary. (*See id.*; Mot. at 34). Plaintiffs offer no justification for their request to apply miscellaneous out-of-circuit decisions (*see* Opp. at 35), in lieu of its own Circuit's findings. Plaintiffs are not entitled to relief under the DJA, absent any other active legal claims.

## CONCLUSION

For the foregoing reasons, Zeta respectfully requests dismissal of the FAC with prejudice.

Dated: March 20, 2026

KELLEY DRYE & WARREN LLP

By: */s/ Whitney M. Smith*
Whitney M. Smith
Danielle J. Terracciano
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
wsmith@kelleydrye.com
dterracciano@kelleydrye.com

Lauri A. Mazzuchetti*
7 Giralda Farms, Ste. 340
Madison, NJ 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com

**pro hac vice forthcoming*

*Counsel for Defendant Zeta Global Holdings Corp.*

**<u>TYPE-VOLUME CERTIFICATION</u>**

Pursuant to Local Civil Rule 7.1, the undersigned counsel of record hereby certifies that this memorandum contains 3,467 words, which complies with the word-count limitations of Local Civil Rule 7.1(c). This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

By: *<u>/s/ Whitney M. Smith</u>*
Whitney M. Smith