LOWEY DANNENBERG

April 20, 2026

**VIA ECF**
Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *In re Zeta Global Data Privacy Litig.*, No. 1:25-cv-05780-PAE (S.D.N.Y.)

Dear Judge Engelmayer:

Pursuant to Local Rule 37.2 and Your Honor's Individual Rules of Practice in Civil Cases 2(E), Plaintiffs R.E.A., K.G., and Diane Ayerdi (collectively, "Plaintiffs") in the above-referenced matter respectfully submit this letter motion requesting a conference to discuss the Parties' dispute regarding Dotdash Meredith Inc.'s ("Dotdash") as well as Zeta Global Corp.'s and Zeta Global Holdings Corp.'s (collectively, "Zeta" and, together, the "Defendants") to disclose whether they have adequately preserved relevant Electronically Stored Information ("ESI"), including what specific ESI they have preserved, from which systems, and which ESI they have not preserved and why. The Parties had their final meet and confer on this issue on April 6, 2026.

### I.     Nature of the Dispute

This class action case centers around the unlawful collection, use, and monetization of millions of individuals' private data. Plaintiffs allege that Zeta intercepts in real time Plaintiffs' and Class Members' IP addresses, email addresses, and other unique identifiers (¶ 109), as well as the substance of their private queries and searches, including from DotDash web properties. ¶¶ 109, 195.[1] Plaintiffs allege this data is used to create (or supplement existing) identifiable user profiles it maintains on consumers, which are used to deliver targeted advertisements. *Id.* ¶¶ 6, 57.

Because the consumers data in this case spans across a number of complex systems and platforms, Plaintiffs contacted Defendants at least as early as October 6, 2025, to ensure this data and other ESI was adequately preserved. Plaintiffs requested that Defendants identify each system with potentially relevant ESI, the ESI being preserved, the time period for which ESI is available, which ESI and/or ESI sources were not preserved, and whether any ESI has been lost or is no longer available. *See* Pls.' Oct. 6, 2025 Ltr. Plaintiffs followed up at least nine times between October 2025 and March 2026, and Zeta and Dotdash confirmed they would not provide this information during the Parties' April 6, 2026 meet and confer.

### II.     Legal Standard

"[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *See In the Matter of the Complaint of Specialist LLC*, No. 16-CV-2515 (KMK), 2016 WL 6884919, at *2 (S.D.N.Y. Nov. 22, 2016)

---

[1] "¶" refers to the First Amended Consolidated Class Action Complaint, ECF No. 35 ("Complaint").

1

 LOWEY DANNENBERG

(internal citation omitted). "It is the obligation of Defendants to preserve evidence and send preservation notices for its documents, not the other way around." *See Herman v. City of New York,* 334 F.R.D. 377, 382 (E.D.N.Y. 2020).

Issuing a preservation order is "sometimes necessary to prevent parties from engaging in conduct that thwarts proper discovery." *Toussie v. Allstate Ins. Co.*, No. 15-CV-5235 (ARR)(PK), 2018 WL 11451597, at *4 (E.D.N.Y. Aug. 15, 2018). In considering whether to issue a preservation order, courts often consider (1) the "level of concern" over the "existence" and "integrity" of evidence absent a preservation order; (2) any "irreparable harm" likely to result absent the entry of this order; and (3) whether the party has the "capability" to maintain this evidence, considering the "physical, spatial, and financial burdens." *Id.* at 3.

### III.    Argument

#### a.    Preservation Order is Needed to Address the Potential Ongoing Destruction of Highly Relevant ESI

The heart of this case is consumers' data in the possession of Zeta and Dotdash. ¶¶ 24-44, 67-93, 101-116. The Complaint explains how this data resides in multiple repositories, rather than one stagnant database. ¶¶ 64-74. For example, both Zeta and Dotdash would possess separate copies—and likely different versions—of relevant data. And, with respect to Zeta, this data flows across multiple distinct systems, including the Zeta Marketing Platform, Zeta's identity graph, its AI and machine learning engine, its demand-side and supply-side advertising platforms, and its Zeta Audiences segmentation tools. *Id.*

Neither Zeta nor Dotdash appear to appreciate the need to preserve data within their own systems. For instance, Dotdash has not identified any relevant repositories at all in its initial disclosures, an alarming discrepancy. Meanwhile, Zeta identified only the "Zeta Data Cloud" which is a generic title for its enterprise platform that contains multiple, separate repositories such as the Zeta Marketing Platform and its Customer Data Platform. It is unclear what data from which of these distinct repositories, if any, Zeta has preserved. This is because neither Zeta nor Dotdash will provide any detail about their preservation efforts, raising serious concerns that they have not taken adequate steps to preserve this ESI. *See Winfield v. City of New York*, No. 15CV05236LTSKHP, 2017 WL 5664852, at *7 (S.D.N.Y. Nov. 27, 2017) ("Collection, review, and production of ESI presents special challenges and requires "cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI."); *In the Matter of the Complaint of Specialist LLC*, No. 16-CV-2515 (KMK), 2016 WL 6884919, at *2 (S.D.N.Y. Nov. 22, 2016) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge North Am, Inc.*, 599 F.3d 102, 122 (2d Cir. 2010) (internal quotations marks omitted).)("[T]he prompt identification and preservation of evidence . . .is vital[]" because "[i]mportant evidence 'could be lost or compromised if not garnered quickly and preserved carefully.'").

Given Defendants outright refusal to engage in a cooperative and transparent process on the scope of their preservation efforts, there is a substantial risk that relevant ESI—particularly data dispersed across these multiple, dynamic systems—is now lost, overwritten, or deleted. *See In re Adobe Data Tracking Litig.*, No. 25-03032-NW, ECF No. 80, Oct. 15, 2025 Hr'g Tr. 24:16-22 (ordering discussion between parties regarding sources of ESI because "in a data tracking case

 LOWEY DANNENBERG

. . . the risk is that if you waited [to address preservation issues] . . . things would be deleted, and you'd be in a position later of not being able to get any sort of remedy for the problems[.]").

### b. Potential Ongoing Destruction of Highly Relevant ESI Causes Irreparable Harm

Because Plaintiffs' and Class Members' data is the core evidence in this case, its loss is not merely prejudicial—it is irreparable. *See Bright Solutions for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125, at *3 (N.D. Cal. Sept. 2, 2015) (finding irreparable harm where a defendant failed to suspend "regular business practices" resulting in the "routine destruction" of user data). The potential destruction of this evidence will directly impact the viability of Plaintiffs' claims. This is because the data bears on central issues, including standing, liability, and class certification. For instance, Defendants will likely argue that class certification should be denied unless Plaintiffs can show the data collected from all Class Members is substantially similar to one another. *See In re Meta Pixel Tax Filing Cases*, No. 5:2022-cv-07557, ECF No. 288 (N.D. Cal. Mar. 30, 2026) (class data relevant to whether plaintiffs had standing and met predominance requirements). Defendants may also argue that, absent this data, Plaintiffs cannot establish what information was collected, transmitted, or used—effectively converting their own preservation failures into a merits defense. Thus, absent the relief requested by Plaintiffs, Defendants' failure to preserve relevant ESI threatens to permanently deprive Plaintiffs of the very evidence needed to prove their claims.

### c. Defendants Have the Capacity and the Financial Burden is Negligible

Both Defendants have the means and capacity to preserve this data. Dotdash (rebranded as People Inc.), is the largest digital and print publisher in America, with income from digital income alone at $1.1 billion in 2025. Meanwhile, Zeta Global Holdings Corp., a publicly traded corporation, and Zeta Global Corp., the operating company, boast more than $ 1.3 billion in revenue in 2025. Nor should there be any practical difficulty in preserving data on their own systems, given both entities (and, particularly, Zeta) are companies with significant technical operations. Dotdash operates a host of online publications and has the technical wherewithal to embed tracking technology on both its website and email correspondence. Meanwhile, Zeta is a massive tech company which certainly knows where data resides and how to store it. At no time has Zeta or Dotdash claimed they cannot or would not preserve this data on the basis of burden.

For these reasons, Plaintiffs request an order requiring Zeta and Dotdash to: (1) disclose the specific ESI they each have preserved; (2) identify the systems from which it is preserving this ESI; (3) identify the time period for which this ESI is available; and (4) disclose which ESI it has opted not to preserve, from what systems, and why it did not preserve this information.

Respectfully,

*/s/ Amanda Fiorilla*

Christian Levis
Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 110

3

 LOWEY DANNENBERG

White Plains, New York 10601
Tel.: (914) 997-0500
Fac.: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Gary E. Mason
Danielle Perry (Admitted *Pro Hac Vice*)
**MASON LLP**
5335 Wisconsin Avenue N.W., Suite 640
Washington, DC. 20015
Tel.: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com

*Interim Co-Lead Class Counsel*

Blake Hunter Yagman
**YAGMAN PLLC**
1050 30th St. NW
Washington, D.C. 20007
Tel: 929-709-1493
blake.yagman@yagmanpllc.com

*Interim Executive Committee Member*

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Tel.: (212) 350-8850
Fac.: (212) 350-8860
israel.david@davidllc.com

*Interim Executive Committee Member*

*Attorneys for Plaintiffs R.E.A., K.G., Diane Ayerdi, and the Putative Classes*

Per the Court's Individual Rule 2(C) governing discovery disputes, defendants' response to plaintiffs' letter is due April 24, 2026.  The Court does not invite replies.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 21, 2026
        New York, New York

4