**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ZETA GLOBAL DATA PRIVACY LITIGATION

Case No. 1:25-cv-05780-PAE

THIS DOCUMENT RELATES TO:

*All Cases*
1:25-cv-05780-PAE
1:25-cv-05823-PAE

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

**PAGE**

FACTUAL BACKGROUND .......... 2
PROCEDURAL BACKGROUND .......... 3
LEGAL STANDARD .......... 4
ARGUMENT .......... 4
A. The Court May Reconsider its Rejection of Plaintiffs' Profiling Allegations .......... 4
B. The Court May Reconsider its Rejection of Plaintiffs' Data Collection Allegations .......... 7
C. The Court May Reconsider its Conclusion that Traceability is Lacking .......... 9
D. The Court Should Reconsider Dismissal Without Leave to Amend .......... 11
CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 5

*Cherkin v. PowerSchool Holdings, Inc.*,
No. 24-cv-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......... 10

*D'Antonio v. Cable News Network, Inc.*,
No. 24 CV 3132 (VM), 2026 WL 960032 (S.D.N.Y. Apr. 9, 2026) .......... 7

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017) .......... 6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 7, 9, 11

*Lau v. Gen. Digit. Inc.*,
No. 22-cv-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .......... 10

*Raymond A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*,
523 F. Supp. 3d 269 (E.D.N.Y. 2021) .......... 4

*Rice v. Wal-Mart Stores, Inc.*,
No. Civ. 02–390–B, 2003 WL 22240349 (D.N.H. Sept. 30, 2003) .......... 10

**STATUTES**

Cal. Code Civ. Proc. § 340(a) .......... 12

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 892A (1979)....................................................................11

Pursuant to Local Civil Rule 6.3, Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion for Reconsideration ("Motion"). Plaintiffs' Motion for Reconsideration should be granted for at least three reasons.

First, while the Court rejected Plaintiffs' allegations that they were profiled by Zeta as conjecture, Zeta Global Corporation's and Zeta Global Holdings Corporation's (collectively, "Zeta") own records confirm that it did, in fact, profile (at least) Plaintiff K.G. These records are attached as **Exhibit A** to the Declaration of Amanda Fiorilla in Support of Plaintiffs' Motion for Reconsideration ("Exhibit A") and show that Zeta uniquely identified Plaintiff K.G. through persistent identifiers, consistently tracked her location by city and state, as well as longitude/latitude coordinates, and placed Plaintiff K.G. in over 475 distinct audience segments in its ZMP Platform. Consistent with the First Amended Class Action Complaint's ("Complaint" or "FAC") allegations, this profile is extremely detailed, containing everything from highly sensitive health conditions ([redacted]) to political leanings ([redacted]), to her personality and behaviors ([redacted]), to even hobbies and interests. Plaintiffs respectfully request the Court reconsider its dismissal on 12(b)(1) grounds in light of this evidence.

Second, reconsideration is appropriate because the Court found Plaintiffs' privacy injuries stemming from the collection of their data (as opposed to profiling, above) were impermissibly vague and did not elaborate on the exact types of data collected for each Named Plaintiff. Opinion & Order, ECF No. 83 ("Order") at 10. Plaintiffs respectfully maintain their Complaint plausibly alleges the precise types of data Zeta intercepted and that DotDash allowed Zeta to collect. Further, Zeta's own public documents, combined with network traffic records, further confirms what data fields are collected and provide enough specificity to show a privacy injury sufficient to allege

Article III standing. These records are attached as **Exhibit B** and **Exhibit C** to the Declaration of Amanda Fiorilla in Support of Plaintiffs' Motion for Reconsideration ("Exhibit B" and "Exhibit C", respectively) , which also support reconsideration.

Finally, reconsideration is appropriate because the Court advised the Clerk of the Court to "close [the] case" despite making clear that dismissal shall be "without prejudice." Order at 23. As described herein, because several of Plaintiffs' claims have a one-year statute of limitations, closing the docket will in effect dismiss the Named Plaintiffs' claims *with prejudice* because it has been more than a year since the Complaint was filed. Thus, Plaintiffs respectfully request, at a minimum, reconsideration on this issue and ask that the Court grant Plaintiffs leave to amend rather than ordering the clerk to close the docket outright.

## FACTUAL BACKGROUND

Plaintiffs' Complaint alleges that Zeta operates one of the world's largest consumer-surveillance operations, maintaining over 200 million dossier-like profiles on American consumers that it monetizes and sells to third parties. FAC ¶ 9. Zeta builds and enriches these profiles with data it obtains without consent, including by covertly intercepting data from third-party websites and email newsletters through tracking "pixels" and related technologies. *Id.* ¶¶ 11, 64. For example, Plaintiffs specifically allege that when they interacted with Zeta's clients' properties—such as the DotDash newsletters—Zeta's LiveIntent pixels intercepted and transmitted to Zeta a discrete, enumerated set of data:

1. Email addresses
2. Campaign identifiers
3. Unique impression IDs
4. Device, browser, and client information

5. IP addresses

6. Full names of articles and other content viewed or searched by Plaintiffs

7. Cookies and metadata

*Id.* ¶¶ 34, 108–111, 115. These interceptions are described in Paragraphs 101 through 112.

Separately, Plaintiffs allege that Zeta profiles them based on their online activity without their consent and that the data (above) contributes to these dossiers. By Zeta's own description, it maintains "one of the 'largest compilations of personal data relating to U.S. and international consumers in the world,'" consisting of dossier-like profiles containing "an average of more than 2,500 attributes per individual." *Id.* ¶ 9; *see also id.* ¶¶ 67–68. As alleged in the Complaint, no Plaintiff consented to Zeta spying on their online interactions or building online profiles tracking their private interactions, hobbies, interests, and behaviors. ¶¶ 30, 37, 44.

Both the collection of Plaintiffs' data and, separately, Zeta's profiling of Plaintiffs—each accomplished without Plaintiffs' knowledge or consent—are independently actionable legal wrongs. And both injuries are also fairly traceable to Defendants: DotDash enabled and facilitated the transmission of Plaintiffs' data to Zeta (*id.* ¶¶ 46–47, 108), which can be observed through network traffic, and Zeta did in fact profile Plaintiffs without their consent, as confirmed through Exhibit A. *Id.* ¶¶ 47, 109, 115.

## **PROCEDURAL BACKGROUND**

On August 5, 2026, the Court dismissed the Complaint for lack of Article III standing. *See* Order at 1. The Court found Plaintiffs failed to meet their burden of showing injury-in-fact and expressly rejected Plaintiffs' allegations that Zeta profiled Plaintiffs, including possessing up to "2,500" "pieces of information about . . . plaintiffs" as "conjecture" and purely hypothetical. *Id.* at 13.

Separately, with respect to Plaintiffs' privacy-related injuries stemming from Zeta's data collection itself, such as from DotDash web properties, the Court found that Plaintiffs did "not specify what information of [theirs] Zeta collected (or disclosed)." *See* Order at 10. Specifically, the Court found that Plaintiffs alleged the collection of "PII" but did not "elaborate" on *what* PII was collected and did not explain what "campaign identifiers, device and client information, [] unique impression IDs . . . browser . . . information" and "campaign context" meant. *Id.*

And, finally, the Court found Plaintiffs failed to plead traceability because, among other things, there was no showing that Zeta obtained their data through "legal wrongs" as opposed to other means. *Id.* at 17.

For the reasons described herein, Plaintiffs respectfully seek reconsideration and maintain that they have adequately shown actionable privacy injuries for purposes of Article III standing and that these injuries are traceable to Defendants' wrongdoing.

## LEGAL STANDARD

Reconsideration is proper where the moving party "can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *See Raymond A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*, 523 F. Supp. 3d 269, 275 (E.D.N.Y. 2021). The "major grounds" for reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.*

## ARGUMENT

### A. The Court May Reconsider its Rejection of Plaintiffs' Profiling Allegations

Plaintiffs respectfully request reconsideration of the Court's August 5, 2026 Order insofar as it rejected Plaintiffs' allegations that Zeta created dossier-like profiles without their consent and,

accordingly, found that Plaintiffs failed to plead injury in fact. *Compare* Order at 13 (finding that Plaintiffs merely "hypothesize[]" that Zeta "might" have "information about . . . plaintiffs" but rejecting the allegation as "conjecture."); *id.* at 15 (rejecting allegation that Zeta "track[s] and profile[s]" each plaintiff as too "general.") *with* FAC ¶¶ 26, 33, 40 (alleging for each specific Plaintiff that Zeta "created and/or supplemented a digital profile maintained by Zeta"); *id.* ¶¶ 30, 37, 44 (alleging, for each Plaintiff, that they did not consent to be "track[ed]" by Zeta); *id.* ¶ 71 (describing how Zeta "collects and ingests data from a massive number of sources" through which it "can uniquely identify specific consumers . . . and build persistent, individual-level user profiles").

In reaching this conclusion, the Court converted a facial challenge to Plaintiffs' standing to a fact-based one.[1] On a facial challenge, the plaintiff has "no evidentiary burden" and the Court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim[.]" *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 58 (2d Cir. 2016). Only on a fact-based challenge does the Court consider evidence outside the pleadings and "make findings of fact in aid of its decision as to standing." *Id.* at 57. In such instances, the defendant typically proffers evidence beyond the pleadings and the plaintiff may either (1) "come forward with evidence of their own to controvert that presented by the defendant" or (2) "rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.*

Here, the Court treated the standing issue as a fact-based challenge: (1) the Court noted in

[1] Defendants' Motions to Dismiss do not expressly state whether they are facial or fact-based challenges, but they submitted no evidence of their own to dispute Plaintiffs' standing. At best Zeta submitted one Exhibit that was specific to Plaintiff Diane Ayerdi. Declaration of Whitney M. Smith in Support of Motion to Dismiss and Request for Judicial Notice, Ex. C, ECF No. 46-3. This, combined with the arguments in their brief, suggests their challenge was facial.

its Order that it "may consider evidence outside the pleadings, such as affidavits and exhibits"; (2) represented Plaintiffs "ha[d] the burden of proving by a preponderance of the evidence that [jurisdiction] exists"; and (3) rejected certain allegations rather than, like on a facial challenge, presuming that specific facts exist to support those assertions. *See* Order at 7, 13.

Because Defendants did not raise a fact-based challenge, but the Court treated it as one, Plaintiffs were deprived of an opportunity to present the evidence the Court found lacking in dismissing Plaintiffs' claims on Article III grounds. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (explaining that districts court should "give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction" and should be given "renewed notice of both the right to introduce such evidence" on a fact-based challenge and their "burden of proof to do so."). Plaintiffs' position is that this was an error or, alternatively, that the Court may properly consider the newly submitted evidence now given that it directly bears on Plaintiffs' constitutional standing.

Specifically, Exhibit A—which comes from Zeta's own records—confirms that Zeta did in fact profile, at least, Plaintiff K.G. Exhibit A is a downloaded copy of Plaintiff K.G.'s data from Zeta's "Personal Data Viewer."[2] Notably, this is not *all* the data Zeta maintains on Plaintiff K.G., but just *some* of her data that matches the "cookie[s] [and] mobile advertising ID" associated with just one of her devices.[3] This data shows Zeta collected and maintained a profile on Plaintiff K.G. reflecting (1) a single persistent identifier through which it profiled K.G.; (2) at least nine IPv6 addresses it identified as associated with K.G.; (3) that Zeta tracked Plaintiff K.G.'s location approximately 500 times by city, state, and longitude/latitude coordinate pairs; and (4) placed

[2] *Rights Request: Personal Data Viewer*, Zeta, https://zetaglobal.com/rights-request/ (last visited August 16, 2026).
[3] *Id.*

Plaintiff K.G. in at least 476 distinct audience segments. These audience segments reveal that Zeta profiled Plaintiff K.G., placing her in audiences/segments relating to sensitive health conditions (e.g., [redacted]), political ideologies and issues that interest K.G. (e.g., [redacted]), and her psychographic and behavioral observations (e.g., [redacted]).

In light of the above, Plaintiffs' allegations that Zeta did in fact profile them without consent are not unsupported "conjecture"—like the Court found—but supported by actual evidence. The existence of this evidence supports reconsideration of the Court's decision that Plaintiffs' profiling allegations should be disregarded and that they failed to meet their burden to show injury in fact. *See D'Antonio v. Cable News Network, Inc.*, No. 24 CV 3132 (VM), 2026 WL 960032 (S.D.N.Y. Apr. 9, 2026) (development and sale of "comprehensive profiles" sufficient to allege standing); *Inre Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (finding standing where company "tracked" consumers' "browsing histories" to create detailed "profiles").

**B. The Court May Reconsider its Rejection of Plaintiffs' Data Collection Allegations**

The Court's August 5, 2026 Order also found that Plaintiffs failed to "elaborate" on the exact types of data Zeta collected, including what types of "PII." *See* Order at 10. Plaintiffs, respectfully, maintain that this was error. The Complaint alleges that the types of PII Zeta collected, including through DotDash properties, include email addresses, IP addresses, and cookies "used to identify [Plaintiffs]." FAC ¶¶ 103–111. Plaintiffs also respectfully disagree that they fail to show the data collected was sufficiently "sensitive." Order at 18. As alleged in the Complaint, Zeta obtains—in addition to this identifiable data—the content of Plaintiffs' online communications, such as what they search and which articles they read. FAC ¶¶ 27, 34, 41, 104, 157. This is

sufficient to allege a privacy injury. *See Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (plaintiffs had Article III standing where defendant intercepted "information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events").

Exhibit C, attached hereto, is a copy of a .har file containing actual network traffic from People.com proving this data is intercepted from Plaintiffs' and Class Members' devices directly to Zeta. As shown therein, when a consumer views or searches for an article such as "How to Help a Friend With Cancer According to Mom Undergoing Treatment" this information is received by Zeta, along with a persistent device/user ID ("duid"), other cookies such as the Facebook "fbp" cookie, which is directly linked to an individual's Facebook profile, and IP address. This example is consistent with the Complaint's allegations that—every time Plaintiffs searched or read content on DotDash web properties, the content of what they viewed was transmitted to Zeta, whether they read articles on breast cancer or recalls for baby clothing. *Id.* ¶¶ 27, 34, 41, 64, 77, 104, 109.

Separately, attached as Exhibit B are Zeta's own webpages. This elaborates on at least one of the terms the Court found were undefined or unexplained in the Complaint. *See* Order at 10 (noting that plaintiffs do not "elaborate" on terms such as unique impression ID, campaign identifiers, device and client information, and browser information). For instance, Campaign ID is defined by Zeta as a "unique, system-generated identifier assigned to every Campaign when the Campaign is launched[.]" Ex. B at 7. Thus, it is an identifier used to track advertising campaigns, confirming Zeta did in fact facilitate "targeted advertising"—not merely that this is a possibility. *Compare* Order at 14 (contending that Plaintiffs "could" have been exposed to "targeted advertising" but did not adequately allege that they actually "received any targeted advertising") *with* FAC ¶ 194 (alleging Zeta uses the profiles it maintained on Plaintiffs and Class Members to

facilitate targeted advertising). Zeta's other developer-facing webpages confirm it collects much of the data alleged in the Complaint, including "URL[s]", "device type", and "browser type." *See* Ex. B at 2.

Plaintiffs' position is their allegations, either considered alone or with Exhibits B and C, make clear that Zeta obtained more than non-descript PII, but the actual content of Plaintiffs' private online activity, which supports a finding of injury-in-fact.

**C. The Court May Reconsider its Conclusion that Traceability is Lacking**

Additionally, the Court held that traceability was lacking because it was possible that Zeta obtained Plaintiffs' data through means other than "legal wrongs" and that Plaintiffs failed to allege a "concrete pleading to the effect that private data that plaintiffs had not willingly relinquished was transferred from partner websites to Zeta." Order at 17. Plaintiffs respectfully maintain that this conclusion was manifest error or, at a minimum, should be reconsidered in light of the evidence presented above.

As alleged in the Complaint, Plaintiffs did not consent or agree to Zeta obtaining, accessing, or using *any* of their data. FAC ¶¶ 30, 37, 44, 113, 128, 159. Every time Plaintiffs visit a website that incorporates Zeta's technology in the background, they suffer a privacy intrusion because Zeta had no legal right to spy, monitor, or surveil them or their online interactions. This is traceable to Zeta because it is Zeta whose technology takes and uses their data, and likewise traceable to Defendant DotDash on DotDash properties because DotDash enabled Zeta to perform this big-brother tracking. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935, 940 (N.D. Cal. 2023) (traceability established where the defendant "designed" its software to "match[ ] individual customer identities . . . and combin[e] them into a single consistent and accurate customer profile").

Whether Plaintiffs shared some of this data with third parties, for instance, *solely* their email address with DotDash to subscribe to newsletters, does not constitute a "relinquish[ment]" of *all* privacy interests against Zeta collecting and profiling Plaintiffs against their will based on their online activity. *See Cherkin v. PowerSchool Holdings, Inc.*, No. 24-cv-02706-JD, 2025 WL 844378, at *3 (N.D. Cal. Mar. 17, 2025) (finding the "mere" disclosure for "bona fide . . . purposes" does not relinquish a right to privacy in that information and how it "will be used . . . and by whom"); *Rice v. Wal-Mart Stores, Inc.*, No. Civ. 02–390–B, 2003 WL 22240349, at *3 (D.N.H. Sept. 30, 2003) ("[s]imply because plaintiffs voluntarily provided [the defendant] with confidential information does not permit [the defendant] to use that information however it desires without potentially intruding upon the[ir] privacy rights[.]"); *Lau v. Gen. Digit. Inc.*, No. 22-cv-08981-RFL, 2024 WL 1880161, at *3 (N.D. Cal. Apr. 3, 2024) (rejecting argument that there is no "intrusion" when a plaintiff voluntarily uses software that provides their data to the defendant because they "did not expect" it to be used for profiling and advertising). Plaintiffs respectfully contend this conclusion was an error, particularly in light of Exhibit A detailing how hyper-specific and intrusive Zeta's profiling is. Plaintiffs never authorized anyone to collect or create dossiers like this about them.

Plaintiffs also do not agree with the Court's separate finding that the Complaint "pleads ignorance about how the named plaintiffs' data traveled to Zeta[.]" *See* Order at 16. The Complaint alleges, in great detail, how Zeta obtains their data and profiles Plaintiffs, including examples specific to the DotDash web properties. FAC ¶¶ 26, 33, 40, 64, 76-79, 103-112. The allegation the Court points to merely notes that—because Zeta's conduct is done in secret (i.e., in the background through code)—"Consumers" *generally* "still are not publicly aware of how and where Zeta collects data" such that "consumers cannot detect" this conduct and are unaware of Zeta's presence

when visiting websites. Plaintiffs, through their counsel, however, have plausibly alleged precisely how this tracking takes place. And Exhibit C—actual network traffic from a DotDash web property—and Exhibit A—examples of actual profiling—further confirm this. Plaintiffs respectfully request the Court revisit this conclusion, which misinterprets this allegation.

Plaintiffs also seek reconsideration of the Court's conclusion that, because Zeta *supplements* the profiles it maintains on Plaintiffs with data from "other data aggregators" that this means Plaintiffs cannot trace Zeta's conduct to "legal wrongs." Order at 16. As noted above, Plaintiffs allege that Zeta has no right to collect any of their data or profile them in any manner. This would include data obtained from other data aggregators. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 941 (N.D. Cal. 2023) (finding injury fairly traceable to data broker that aggregated and sold plaintiffs' data alongside data from third-party brokers, since a causal chain "does not fail simply because it has several 'links'"). But in any event, even if this was not considered a "legal wrong" (which it is), it does not simultaneously authorize the collection and profiling of data through other means that *are* legal wrongs, such as through the Zeta pixel. *See* Sections A and B; *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150-51 (3d Cir. 2015) (explaining consent to one form of data collection does not authorize separate, undisclosed tracking). Plaintiffs have shown this conduct is traceable to Zeta by showing both that Zeta obtains their data through these means and profiles them. *See* Exhibit A, C.

**D. The Court Should Reconsider Dismissal Without Leave to Amend**

Lastly, Plaintiffs seek reconsideration of the Court's Order directing the Clerk of the Court to "close [the] case" despite making clear that dismissal shall be "without prejudice." Order at 23. Plaintiffs originally filed this case on July 15, 2025, and allege that they discovered Zeta's conduct shortly before the Complaint was filed. Given that it has been more than a year since the Complaint

was filed, if the docket is closed, the Named Plaintiffs will no longer be able to pursue claims with a one-year statute of limitations, such as their CIPA claims. *See* Cal. Code Civ. Proc. § 340(a). Thus, Plaintiffs respectfully request reconsideration on this issue and ask the Court to grant Plaintiffs leave to amend rather than ordering the clerk to close the docket outright.

## CONCLUSION

For the reasons described above, Plaintiffs respectfully request reconsideration of the Court's August 5, 2026 dismissal.

Dated: August 19, 2026

*/s/ Amanda Fiorilla*
Christian Levis
Amanda Fiorilla
Rachel Kesten
Yuanchen Lu
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Gary E. Mason
Danielle Perry (Admitted *Pro Hac Vice*)
**MASON LLP**
5335 Wisconsin Avenue N.W., Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com

*Interim Co-Lead Class Counsel*

Blake Hunter Yagman
**YAGMAN PLLC**
1050 30th St. NW
Washington, D.C. 20007
Tel: 929-709-1493
blake.yagman@yagmanpllc.com

*Interim Executive Committee Member*

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Tel.: (212) 350-8850
Fac.: (212) 350-8860
israel.david@davidllc.com

*Interim Executive Committee Member*

*Attorneys for Plaintiffs R.E.A., K.G., Diane Ayerdi, and the Putative Classes*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 3,490 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 19, 2026

*/s/ Amanda Fiorilla*